In re )
)
ROBERT SCOTT SUPER, ) Case No. 8:26-bk-04258-CPM
) Chapter 13
Debtor. )
)

**GENESIS ALTERNATIVE FINANCE IV LLC
AND GENESIS ALTERNATIVE FINANCE V LLC'S MOTION
TO DISMISS CHAPTER 13 CASE AND TO BAR REFILING FOR 180 DAYS**

Creditors Genesis Alternative Finance IV LLC and Genesis Alternative Finance V LLC

(collectively, "**Genesis**"), by and through their undersigned counsel, hereby move this Court

pursuant to 11 U.S.C. §§ 105(a), 349(a), and 1307(c) to dismiss this Chapter 13 case for cause,

and further request that the Court bar the Debtor from refiling any bankruptcy petition for a period

of 180 days pursuant to 11 U.S.C. §§ 105(a) and 109(g). In support of this Motion, Genesis states

as follows:

**INTRODUCTION**

1.      This is the Debtor's second bankruptcy filing in approximately five weeks. The

Debtor, Robert Scott Super ("**Debtor**"), filed his first petition on April 13, 2026, Case No. 8:26-

bk-03006-CPM, under Chapter 13. He then voluntarily dismissed that case on April 30, 2026. Less

than three weeks later, on May 19, 2026, the Debtor filed the instant case under Chapter 13.

2.      Both of the Debtor's bankruptcy filings were made on the eve of a trial regarding

damages in *Genesis Alternative Finance IV LLC et al. v. Lint Chiropractic P.C. et al.*, Case No.

24-010404-CB (the "**State Court Action**"), Wayne County Circuit Court, Michigan (the "**State

Court**"). Pre-Petition, the State Court found the Debtor personally liable for breach of contract

1

and conversion, with Genesis seeking damages in excess of $5.7 million. The State Court originally scheduled a trial on the amount of damages for April 14, 2026, and was rescheduled to May 20, 2026. Further, On April 7, 2025, the State Court found Lint Chiropractic P.C., Diagnostic Chiropractic MI, P.C., Supplies Plus MI, LLC (the "Entity Defendants") in contempt of court and imposed $10,000 in sanctions against The Entity Defendants, none of which has been paid.

3.      The State Court Action arises from Debtor's systematic diversion and conversion of funds belonging to Genesis. The State Court found that Debtor accepted approximately $2.4 million in loan advances from Genesis secured by medical receivables, then transferred $2.35 million of those proceeds—nearly the entire amount—to shell entities he owned and controlled, or directly to himself. Ex. A, Opinion and Order at 13-14; Ex. B, Receiver's Report ¶¶ 36-37. Additionally, the Entity Defendants (defined below) collected approximately $572,751.57 on secured receivables that should have been remitted to Genesis and instead wrongfully retained those funds. Ex. A, Opinion and Order at 20-21; Ex. B, Receiver's Report ¶ 21. Debtor also caused the unauthorized withdrawal of $777,698.24 from a bank account established for Genesis's benefit under a court-approved servicing agreement, of which only $400,000.00 was returned. Ex. A, Opinion and Order at 4. The State Court pierced the corporate veil and held Debtor personally liable, finding that his corporations were "mere instrumentalities" used "to subvert justice," that no corporate formalities were followed, that the entities were undercapitalized, and that the Entity Defendants were "a sham." Ex. A, Opinion and Order at 17-18. The State Court-appointed receiver confirmed these transfers and found that Debtor refused to produce bank statements for the recipient entities in order "to shield further discovery by the Receiver regarding the substantial transfers made from the Defendants to MI Medical Management." Ex. B, Receiver's Report ¶ 25.

4.　　These serial chapter 13 bankruptcy filings are a transparent attempt to delay proceedings in the State Court Action and constitute bad faith warranting dismissal with a bar on refiling. Moreover, the Debtor has made material misrepresentations to this Court in connection with the instant petition, as set forth below.

**JURISDICTION AND VENUE**

5.　　This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105(a), 109(g)(1), 349(a), and 1307(c), and Federal Rule of Bankruptcy Procedure 9014.

**FACTUAL BACKGROUND**

**A. The State Court Action**

6.　　On July 19, 2024, Genesis filed a complaint against the Entity Defendants, the Debtor, and Richard Geller in the State Court, alleging breach of contract, statutory and common law conversion, and other claims arising from Defendants' failure to repay approximately $2.4 million in loan advances secured by medical receivables. Ex. A, Opinion and Order dated February 26, 2026.

7.　　The underlying facts are as follows: Beginning in 2021, Genesis provided approximately $2.4 million in funding to the Entity Defendants under written No-Fault Auto Advance Security Agreements, supported by thirteen promissory notes. Under these agreements, the Entity Defendants agreed to pay Genesis specified "Return Amounts" within fifteen months of the commencement date of each promissory note. *Id.*

8.　　The Entity Defendants, led by their principal Debtor, accepted those funds, pledged security interests, and executed promissory notes—then transferred nearly all of the loan proceeds

3

to other entities owned and controlled by Debtor, or to Debtor personally. Ex. A, Opinion and Order at 13-14; Ex. B, Receiver's Report ¶¶ 36-37. Specifically, of the $2.38 million advanced by Genesis, $2.35 million was transferred out from the Entity Defendants to other Debtor-related entities or to Debtor personally. Ex. B, Receiver's Report ¶ 36. The loan advances never remained in the Entity Defendants' accounts for more than a few days. Ex. B, Receiver's Report ¶ 37.

9. The Entity Defendants recorded Genesis's advances as "Business Income" rather than as loans, and the management service agreements offered to justify the transfers had blank financial terms. Ex. B, Receiver's Report ¶¶ 26, 41. The funds were primarily sent to MI Medical Management and Medical Capital Solutions—entities owned and controlled by Debtor—and were used to pay Debtor's personal expenses. Ex. A, Opinion and Order at 13; Ex. B, Receiver's Report ¶ 37.

10. Meanwhile, the Entity Defendants collected approximately $1.4 million on the secured receivables, of which approximately $870,000 was remitted to Genesis and approximately $572,751.57 was retained by the Entity Defendants—funds that belonged to Genesis. Ex. A, Opinion and Order at 20-21; Ex. B, Receiver's Report ¶ 21.

**B. The Court's Appointment of a Receiver and Sanctions**

11. On January 8, 2025, the State Court appointed Charles D. Bullock as receiver (the "**Receiver**") over the Entity Defendants. Ex. C, Order for Receivership dated January 8, 2025.

12. The Receiver found that Debtor refused to produce bank statements for the Entity Defendants that received the loan funds, and that this refusal was "to shield further discovery by the Receiver regarding the substantial transfers made from the Defendants to MI Medical Management." Ex. B, Receiver's Report ¶ 25. The Receiver further concluded that "it is appropriate that the Court order the expansion of his powers in order to assume full control of the

Defendants' assets and to pursue claims against third parties in order to recover fraudulent transfers and/or any other claims in law or equity available." Ex. B, Receiver's Report at 12.

13. On April 7, 2025, the State Court found the Entity Defendants in contempt of court and imposed $10,000 in sanctions against the Entity Defendants. Ex. D, Order for Sanctions dated April 7, 2025. To date, none of the sanctioned amount has been paid.

**C. The February 26, 2026 Opinion and Order**

14. On February 26, 2026, the State Court issued its Opinion and Order granting Genesis's Motion for Summary Disposition in part. The State Court found:

a. The Entity Defendants are liable for breach of contract (Counts I and IX) for failing to repay the Return Amounts owing under the Underlying Agreements and the Agreement Regarding Servicing.

b. The Entity Defendants are liable for statutory conversion and common law conversion (Counts III and IV) for wrongfully retaining $572,751.57 in collections that should have been remitted to Genesis.

c. Super [(i.e., Debtor)] shall be held personally liable for the damages sought, because his corporations were "mere instrumentalities" used "to subvert justice," no corporate formalities were followed, the entities were undercapitalized, and the Entity Defendants were "a sham." Ex. A, Opinion and Order at 17-18.

15. The State Court specifically noted that Defendants provided "no factual predicate" for their arguments and that Debtor had "failed to overcome his burden to produce evidence to contradict Genesis' claim." The Court ordered the parties to submit supplemental briefs on damages by April 8, 2026.

16.     Genesis has sought total damages including breach of contract damages of $3,211,221.73, trebled statutory conversion damages of $1,718,254.71, prejudgment interest, sanctions, and attorneys' fees, in an amount exceeding $5.7 million. The State Court has not yet determined the final damages amount and the issue of damages was set for trial just one day after the Petition Date of Debtor's instant Chapter 13 bankruptcy case. Ex. E, Plaintiffs' Brief on Damages.  Defendants have not provided a damages brief or contested the amount of damages sought.

**D. Debtor's Serial Bankruptcy Filings**

17.     Trial in the State Court Action was originally scheduled for April 14, 2026. Just one day before trial, on April 13, 2026, Debtor filed his first voluntary petition under Chapter 13, *pro se*, in this Court (Case No. 8:26-bk-03006-CPM), triggering the automatic stay which resulted in a stay of the State Court Action damages trial.

18.     On April 30, 2026—just seventeen days later—Debtor voluntarily moved to dismiss that case.

19.     Following dismissal of the first bankruptcy case, trial in the State Court Action was rescheduled to May 20, 2026. Then, on May 19, 2026—again one day before trial—Debtor filed the instant Chapter 13 petition pro se (Case No. 8:26-bk-04258-CPM). This is his second bankruptcy filing in approximately five weeks, and the second time he has filed a bankruptcy on the eve of trial.

**E. Misrepresentations in the Current Petition**

20.     In the instant petition, at Question 9 ("Have you filed for bankruptcy within the last 8 years?"), the Debtor answered "No." This is false. Debtor filed Case No. 8:26-bk-03006-CPM in this same Court on April 13, 2026—barely five weeks before the instant filing.

21.     Furthermore, the Debtor represented in the instant petition that he filed without the assistance of an attorney and signed the pro se declaration page. This representation contradicts Debtor's attorney's statements in the State Court Action that he had in fact been assisted by an attorney in his filing. This misrepresentation appears designed to avoid the certifications required of debtor's counsel regarding the accuracy of the petition.

## ARGUMENT

### A. Dismissal Is Warranted for Cause Under 11 U.S.C. § 1307(c)

22.     Section 1307(c) of the Bankruptcy Code provides that a court may dismiss a Chapter 13 case "for cause." The list of causes enumerated in § 1307(c) is not exhaustive, and "[t]here is abundant authority for the notion that a bankruptcy court has the power to dismiss a Chapter 13 petition upon a finding that the debtor did not bring it in good faith." *Alt v. United States (In re Alt)*, 305 F.3d 413, 418 (6th Cir. 2002) (citing *In re Banks*, 267 F.3d 875, 876 (8th Cir. 2001); *In re Lilley*, 91 F.3d 491, 496 (3d Cir. 1996)). The Eleventh Circuit is in accord, holding that "cause" for dismissal of a bankruptcy case includes a lack of good faith in filing the petition. *Piazza v. Nueterra Healthcare Physical Therapy, LLC* (*In re Piazza*), 719 F.3d 1253, 1271 (11th Cir. 2013). "Chapter 13 requires the debtor 'to be honest, forthcoming, truthful, and frank.' Whether the debtor has been forthcoming with the bankruptcy court and the creditors is properly considered in deciding whether dismissal for lack of good faith is appropriate." *Alt* at 421 (citing *In re Love*, 957 F.2d 1350, 1357 (7th Cir. 1992)).

23.     An individual who files a bankruptcy case in bad faith "is not a member of the class of 'honest but unfortunate debtor[s]' that the bankruptcy laws were enacted to protect." *Marrama v. Citizens Bank*, 549 U.S. 365, 373-74 (2007). Additionally, dismissal on bad faith grounds is warranted where the evidence shows a debtor's "deliberate acts or omissions that constitute a

7

misuse or abuse of the provisions, purpose, or spirit of the Bankruptcy Code." *In re Piazza* 719 F.3d at 1272 (11th Cir. 2013) *(quoting In re McDow,* 295 B.R. 69, 74 (E.D. Va. 2003)).

24.     The Eleventh Circuit applies a parallel inquiry, directing courts to consider factors evidencing "an intent to abuse the judicial process" and showing that the petition was filed "to delay or frustrate the legitimate efforts of secured creditors," including whether the debtor's real dispute is with a single creditor that can be resolved in a pending action in another forum and the timing of the petition. *In re Phoenix Piccadilly, Ltd*., 849 F.2d 1393, 1394-95 (11th Cir. 1988). Each of these factors weighs heavily in favor of dismissal here.

25.     Cause for dismissal exists based on the following:

a.     ***Serial filings to delay state court proceedings.*** Debtor has filed two bankruptcy petitions in five weeks, each triggered by imminent litigation deadlines in the State Court Action. The first was filed the day before the originally scheduled trial; the instant case was filed the day before the rescheduled trial date of May 20, 2026. This pattern of filing, dismissing, and refiling bankruptcy cases on the eve of trial is precisely the type of abuse the Bankruptcy Code is designed to prevent. Courts routinely dismiss cases filed to delay pending litigation. *See In re Phoenix Piccadilly, Ltd.,* 849 F.2d 1393, 1394-95 (11th Cir. 1988) (bad faith shown where petition is filed to delay or frustrate a secured creditor whose dispute can be resolved in a pending action in another forum)*; In re Zick,* 931 F.2d 1124, 1129 (6th Cir. 1991). There is no material change in Debtor's financial circumstances between the two filings that would justify the instant petition. Rather, the only intervening event was the rescheduling of the State Court trial—and Debtor filed again the day before that rescheduled date.

b. ***Material misrepresentations and lack of candor.*** Section 521 of the Bankruptcy Code requires a debtor to file statements and schedules disclosing all assets, liabilities, and other information pertinent to the debtor's financial affairs. *See also* Fed. R. Bankr. P. 1008 (requiring verification of all petitions, schedules, and statements). Debtor falsely represented in the instant petition, under penalty of perjury, that he had not filed for bankruptcy within the last eight years—when in fact he filed Case No. 8:26-bk-03006-CPM in this very Court barely five weeks earlier. Debtor also represented that he filed without the assistance of an attorney, despite statements to the contrary in the underlying State Court Action. Courts have consistently held that a debtor's false oaths and material omissions in bankruptcy filings warrant dismissal. *See Alt*, 305 F.3d at 421; *In re Feldman,* 597 B.R. 448, 458-60 (Bankr. E.D.N.Y. 2019) (petition inaccuracies meant to mislead the court evidence bad faith, and a debtor cannot escape responsibility for misstatements made under oath by blaming counsel)*; In re Khan*, 172 B.R. 613, 625 (Bankr. D. Minn. 1994). In addition, Debtor has failed in both bankruptcy cases to file his schedules and statements from which creditors and the Court could ascertain information about his assets or actual financial position in these filings (and, in one case, dismissing prior to the deadline for completing his schedules and statements). This Court should not countenance a filing premised on demonstrable falsehoods and failure to disclose material information about his financial affairs.

c. ***The debt arises from fraud, conversion, and bad faith conduct.*** The debts underlying this case are not the debts of an "honest but unfortunate debtor." *Marrama*, 549 U.S. at 373-74. Rather, the State Court Action has established through judicial findings that Debtor diverted $2.35 million of loan proceeds to himself and his shell entities,

recorded those proceeds as "Business Income" rather than loans, wrongfully retained $572,751.57 in collections belonging to Genesis, caused the unauthorized withdrawal of $777,698.24 from a court-supervised bank account, refused to cooperate with the court-appointed Receiver, failed to pay court-ordered sanctions of $10,000, and was found to have used his corporate entities as "mere instrumentalities" to "subvert justice." Ex. A, Opinion and Order at 13-14, 17-18, 20-21. These findings demonstrate a consistent pattern of fraudulent conduct and deliberate abuse of legal processes of which this bankruptcy filing is merely the latest chapter.

**B. The Debtor's Conversion Liability Is Likely Nondischargeable**

26. Even if this case is not dismissed, the Debtor's primary obligations to Genesis are likely nondischargeable, further underscoring that this filing serves no legitimate bankruptcy purpose and is instead being used solely as a delay tactic.

27. Section 523(a) of the Bankruptcy Code excepts from discharge debts obtained by "false pretenses, a false representation, or actual fraud" (§ 523(a)(2)(A)), debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" (§ 523(a)(4)), and debts "for willful and malicious injury by the debtor to another entity or to the property of another entity" (§ 523(a)(6)).

28. The State Court found that Debtor's conduct constituted both statutory and common law conversion—the intentional and wrongful exercise of dominion over Genesis's property for Debtor's own personal use. Ex. A, Opinion and Order at 20-22. Under Michigan law, "[c]onversion is an intentional tort in the sense that the converter's actions are willful," and "[g]ood faith, mistake, and ignorance are not defenses to a claim of conversion." *Magley v. M & W Inc.*, 325 Mich. App. 307 (2018); *Foremost Ins. Co. v. Allstate Ins. Co.*, 439 Mich. 378, 391 (1992).

The conversion damages of $572,751.57 (trebled to $1,718,254.71 under MCL 600.2919a) arise directly from Debtor's willful misappropriation of Genesis's funds for his own use—precisely the type of debt Congress intended to except from discharge.

29.     Moreover, the breach of contract damages of $3,211,221.73 arise from loan agreements under which Debtor accepted funds, pledged security interests, and executed promissory notes—then diverted nearly the entire amount to himself through sham entities. The Court found that Debtor's corporations were used "to subvert justice" and that the entities were "a sham." Ex. A, Opinion and Order at 17-18. If this case is not dismissed, Genesis intends to pursue a nondischargeability action against Debtor in this Court. This filing therefore cannot accomplish the Debtor's apparent goal of evading his obligations.

### C. A 180-Day Bar on Refiling Is Appropriate

30.     In addition to dismissal, Genesis requests that this Court bar Debtor from refiling any bankruptcy petition for a period of 180 days.

31.     Pursuant to 11 U.S.C. § 109(g)(1), an individual may not be a debtor if, during the preceding 180 days, such individual's case was voluntarily dismissed following the filing of a request for relief from the automatic stay. Additionally, under 11 U.S.C. § 105(a), this Court has broad equitable authority to enjoin a debtor from refiling where the debtor has engaged in serial filings in bad faith. *See In re Casse*, 198 F.3d 327, 337-38 (2d Cir. 1999); *see also Bunyan v. Remick, No.* 8:18-BK-1250-RCT, 2019 WL 4805428, at *6 2019 U.S. Dist. LEXIS 169985, at *13 (M.D. Fla. Oct. 1, 2019) (recognizing that under §§ 105 and 349 a court may extend the prejudice period barring refiling beyond the 180 days specified in § 109(g) where cause exists, and inferring bad faith from a pattern of dismissals and refilings in unchanged circumstances).

11

32.     A bar on refiling is particularly warranted here because Debtor has demonstrated a clear pattern: file a bankruptcy petition on the eve of trial, obtain the benefit of the automatic stay to delay the State Court Action, then dismiss the case when it has served its purpose—only to refile again before the next trial date. Without a bar on refiling, there is every reason to expect Debtor will continue this cycle. Debtor has shown no good faith intention to reorganize his debts; he has filed no schedules with supporting detail, has made material misrepresentations in his petition, and has offered no viable plan for repayment. The sole purpose of this and the prior filing has been to invoke the automatic stay to delay proceedings in the State Court Action.

33.     Given Debtor's demonstrated willingness to file, dismiss, and refile bankruptcy petitions to evade his creditors and delay state court proceedings, a bar on refiling for 180 days is necessary to prevent continued abuse of the bankruptcy system and to allow the State Court Action to proceed to its conclusion.

### CONCLUSION

For the foregoing reasons, Genesis respectfully requests that this Court enter an order:

a.     Dismissing this Chapter 13 case for cause under 11 U.S.C. § 1307(c);

b.     Barring the Debtor from refiling any bankruptcy petition for a period of 180 days pursuant to 11 U.S.C. §§ 105(a) and 109(g); and

c.     Granting such other and further relief as this Court deems just and proper.

Dated: June 2, 2026

Respectfully submitted by,

FURR AND COHEN, P.A.
2255 Glades Road, Suite 419A
Boca Raton, Florida 33431
(561) 395-0500
(561) 338-7532 – facsimile

By */s/ Jonathan T. Crane*

Jonathan T. Crane, Esq.
Florida Bar No. 1039351
E-mail: jcrane@furrcohen.com
***Local Counsel for Attorney Michael
Pomeranz for Creditors Genesis
Alternative Finance IV LLC and Genesis
Alternative Finance V LLC***


TAFT STETTINIUS & HOLLISTER LLP

By: *_/s/ Michael Leo Pomeranz_*
Michael Leo Pomeranz (P84908)
27777 Franklin Rd., Suite 2500
Southfield, MI 48034
Tel.: 248-351-3000
mpomeranz@taftlaw.com

# <u>EXHIBIT LIST</u>

**Exhibit A:**    Opinion and Order dated February 26, 2026, Genesis Alternative Finance IV LLC et al. v. Lint Chiropractic P.C. et al., Case No. 24-010404-CB (Wayne County Circuit Court)

**Exhibit B:**    Receiver's Report and Recommendation dated March 28, 2025

**Exhibit C:**    Order for Receivership dated January 8, 2025

**Exhibit D:**    Order for Sanctions dated April 7, 2025

**Exhibit E:**    Plaintiffs' Brief on Damages dated April 8, 2026

**Exhibit F:**    Voluntary Petition under Chapter 13, Case No. 8:26-bk-03006-CPM (filed April 13, 2026)

**Exhibit G:**    Motion to Dismiss, Case No. 8:26-bk-03006-CPM (filed April 30, 2026)

**Exhibit H:**    Voluntary Petition under Chapter 13, Case No. 8:26-bk-04258-CPM (filed May 19, 2026)

**Exhibit I:**    Final Pre-Trial Order dated March 13, 2026, Genesis Alternative Finance IV LLC et al. v. Lint Chiropractic P.C. et al., Case No. 24-010404-CB

<u>**PROOF OF SERVICE**</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by

U.S. Mail and/or CM/ECF to all parties listed below on this 2nd day of June 2026.


Dated: June 2, 2026                  FURR AND COHEN, P.A.
2255 Glades Road, Suite 419A
Boca Raton, Florida 33431
(561) 395-0500
(561) 338-7532 – facsimile

By */s/ Jonathan T. Crane*
Jonathan T. Crane, Esq.
Florida Bar No. 1039351
E-mail: jcrane@furrcohen.com
*Local Counsel for Attorney Michael*
*Pomeranz for Creditors Genesis*
*Alternative Finance IV LLC and Genesis*
*Alternative Finance V LLC*


**By Notice of Electronic Filing:** All parties registered with CM/ECF to receive electronic notices.

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.
- **Daryl Smith**  jwflecf@trustee13.com
- **United States Trustee - TPA7/13**  USTPRegion21.TP.ECF@USDOJ.GOV
- **Giselle Velez**  gvelez@raslg.com

**EXHIBIT A**

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

GENESIS ALTERNATIVE FINANCE IV LLC,
and GENESIS ALTERNATIVE FINANCE V LLC,

    Plaintiffs,                      Case No. 24-010404-CB

-v-                                  Hon. Annette J. Berry

LINT CHIROPRACTIC, PC, DIAGNOSTIC
CHIROPRACTIC MI, PC, SUPPLIES
PLUS MI, LLC., ROBERT SUPER, and
RICHARD GELLER,

    Defendants.

---

## OPINION AND ORDER

At a session of said Court held in the Coleman A. Young Municipal Center, Detroit, Wayne County, Michigan,   2/26/2026 on this:_____

PRESENT: Hon. Annette J. Berry
                        Circuit Judge

This civil matter is before the Court on a motion for summary disposition filed by Plaintiffs Genesis Alternative Finance IV LLC and Genesis Alternative V LLC (collectively "Genesis"). For the reasons stated below, the Court grants in part and denies in part the motion.

### I. BACKGROUND

On July 19, 2024, Genesis filed a complaint against Lint Chiropractic, PC, Diagnostic Chiropractic MI, PC, Supplies Plus MI, LLC, Robert Super, and Richard

Geller. On August 12, 2025, Plaintiffs filed an amended complaint containing nine counts: (1) Breach of Contract (as to Agreement Regarding Servicing); (2) promissory estoppel (in the alternative to breach of contract); (3) statutory conversion; (4) common law conversion; (5) embezzlement of a security; (6) promise made in bad faith; (7) indemnification and attorneys' fees under the Underlying Agreements; (8) appointment of a receiver; and (9) breach of contract (as to the Underlying Agreements).

Defendants Lint Chiropractic, PC ("Lint") and Diagnostic Chiropractic MI, PC ("Diagnostic") are professional corporations with offices located in Southfield, Michigan. Supplies Plus MI, LLC ("SPM") is a Michigan limited liability company also located in Southfield, Michigan. Lint, Diagnostic, and SPM provide chiropractic services and medical and surgical products to individuals who are injured in automobile accidents and are subject to what is commonly known as the Michigan No-Fault Act, MCL 500.8101, *et seq*, and later bills for those medical and surgical services. Defendant Robert Super is an individual, and principal of Diagnostic, Lint, and Supplies Plus, who resides in Tampa, Florida and conducts business in Wayne County, Michigan. Robert Super is a chiropractor. Defendant Richard Geller is an individual and has been describe as General Counsel for Diagnostic, Lint and Supplies Plus.

By way of background, in 2021, Defendants sought funding from Genesis and Genesis provided Defendants approximately $2.4 million in funding under three agreements: (a) No-Fault Auto Advance Security Agreement between Genesis and Lint, dated May 18, 2021 and September 14, 2021; (b) No-Fault Auto Advance Security Agreement between Genesis and SPM, dated December 9, 2021; and (c) No-Fault Auto

2

Advance Security Agreement between Genesis and DCM, dated December 9, 2021(collectively, "the Underlying Agreements"). In short, Defendants accepted the funds, pledged security interests, and executed promissory notes.

Under the agreements, Genesis provided advance capital to Defendants, in exchange for which, Defendants assigned to Genesis property rights in and to medical receivables. The receivables are medical bills incurred by Defendants' patients and payable by insurance companies under the No-Fault Act. Defendants provided Genesis a first priority security interest on specific receivables, which are identified in UCC 1s that have been filed. Defendants pursued collection of certain receivables, but failed to pay Genesis what they owe.

Genesis then sued Defendants in a prior case, Case No. 22-013065-CB, seeking repayment of the loan. In that case, the parties entered into an agreement named "Agreement Regarding Servicing" after the Court[1] appointed a receiver. Also, in that case, after the parties stipulated to dissolve the first receivership and temporary restraining order, the parties participated in mediation. After mediation, the Court entered a stipulated order regarding a monthly reconciliation process. The order required that each Defendant deposit all funds collected on any secured account into the specific bank account designated for that Defendant. According to Genesis, Defendants disregarded its required obligations under the Second Interim Stipulated Order. For example, Genesis alleges that Defendants wired $80,000.00 out of the bank account, with no notification to or permission from Genesis. Ultimately, Defendants restored the $80,000 to the account.

---

[1] Case No. 22-013065-CB was originally presided over by the retired judge, Hon. David A. Groner. That case was then reassigned to this Court.

Thus far, Defendants have only repaid $824,882.07. According to Genesis, Defendants have collected approximately $1.4 million and have retained about $570,000.00, which should have been paid to Genesis pursuant to the Underlying Agreements.

In July 2023, Genesis executed an agreement with Quantum ("Genesis-Quantum Agreement"). Under this agreement, Quantum, as a servicer, began to work with Defendants to service, administer, and collect on the accounts. Defendants represented that they were cooperating with Quantum. Quantum and Defendants (referred to as "Providers") then entered into the above mentioned "Agreement Regarding Servicing." The agreement expressly names Genesis as a third-party beneficiary that is entitled to enforce the terms of the agreement. The agreement also provided that Quantum was permitted to monitor and collect outstanding amounts owed by Defendants under the Underlying Agreements. The Agreement Regarding Servicing obligates Defendants to provide reconciliation reports and settlement statements. According to Genesis, with the Agreement Regarding Servicing in place along with Defendants' apparent cooperation, the parties agreed to dismiss the prior case. The Court entered a stipulated order dismissing the case without prejudice.

The instant action again arises out of the loan made by Genesis to Defendants in the amount of $2.4 million. It essentially is a claim regarding Defendants' failure to abide by the Agreement Regarding Servicing. The Agreement Regarding Servicing provides in pertinent part:

> 2. Without limitation of, or modification or waiver of, any of the terms or provisions of the Transaction Documents …Providers hereby acknowledge and agree as follows:

4

(a) Each Provider shall ensure that Servicer has access to its billing systems…

(b) <u>Each Provider shall cause all Collections to be remitted directly to the Bank Account, and shall not deposit or at any time comingle the same with any other funds of Providers.</u> Each Provider shall provide Servicer and Genesis at all times with real-time view-access to the Bank Account. Distributions from the Bank Account shall only be made once Servicer, on behalf of Genesis, has provided written disbursement instructions to Providers setting forth Servicer's approval of the Collections Reconciliation Report and the amounts and manner in which such Collections should be disbursed ("Distribution Confirmation"). …

(c) Each Provider shall provide to Servicer and Genesis, on or before the fifteenth (15th) day of each month, and consistent with the Order, a full Collection Reconciliation Report identifying all Collections received by Providers during the immediately preceding month in respect of the Secured Receivables.

\*\*\*

(e) Within five (5) business days of any settlement of a Claim, Providers shall send to Servicer and Genesis a full and complete settlement statement from the applicable Claims Counsel…

\*\*\*

5. This Agreement shall be binding upon and inure to the benefit of Servicer, Providers and their respective successors and assigns; provided, however, that <u>Genesis shall be an express third-party beneficiary of this Agreement and shall be entitled to enforce there (sic) terms hereof</u> …

\*\*\*

8. <u>SERVICER AND EACH PROVIDER HEREBY IRREVOCABLY WAIVE ALL RIGHT TO TRIAL BY JURY</u> IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT.

[Plaintiffs' Motion, Exhibit 7] [Emphasis added].

In addition, in this case, the Court entered an order appointing Charles D. Bullock as receiver. The Court's order provided in relevant part:

- Genesis has demonstrated at least an apparent right, title, or interest in certain accounts receivable held by Defendants

- Genesis has demonstrated that some or all of those accounts or their revenue-producing potential appear to be in danger of waste, loss, dissipation, or impairment

[Plaintiffs' Motion, Exhibit 8].

The Court's order also provided in relevant part:

A. Defendants will execute and either will send or will cause to be sent letters of direction to all collections counsel substantially in the form of Exhibit 1 to this Order.

\*\*\*

C. Any disagreement concerning amounts due to Plaintiffs will not excuse payment of undisputed amounts.

[Id] [Emphasis added].

Receiver Bullock issued his report on March 28, 2025. His relevant findings included the following:

### Introduction

The loan advances never remained in the Defendants' accounts for more than a few days. Rather, the Defendants made transfers out of their respective bank accounts, either the same day, or in close proximity to, the date Plaintiffs advanced the funds. When questioned regarding these transfers, Dr. Super identified the recipients all as entities he owned and controlled. Further, in support of the alleged "management fees," Dr. Super provided only two management service agreements -- both of which lacked financial terms and both of which show Dr. Super on both sides of the transaction.

\*\*\*

18. The Receiver discussed each of the files with Dr. Super and representatives Genesis, and …both parties agreed as to the amounts advanced by Genesis and the remaining principal balance of the loan amounts outstanding.

\*\*\*

20. The Receiver's analysis shows that GAF V advanced approximately $2.1 million to Defendants and GAF IV advanced approximately $300,000 solely to Lint Chiropractic, for a total of approximately $2.4 million. The amount of these advances were (sic) verified via a review of Defendants' bank statements and detailed general ledgers, as well as transaction dates and banking information provided by Genesis

21. To date, Defendants have collected approximately $1.4 million related to the subject suits, of which, approximately $870,000 has been remitted to Genesis and approximately $570,000 has been retained by the Defendants. <u>Based on the forgoing, the remaining principal balance owed to Genesis, exclusive 0f any agreed upon returns, is approximately $1.5 million</u>.

\*\*\*

24. When the Receiver requested copies of bank statements to corroborate this position, Dr. Super refused to provide them, claiming that the request was outside of the purview of the instant litigation.

25. … <u>The Receiver is of the firm belief that Dr. Super's refusal to provide the requested bank statements is to shield further discovery by the Receiver regarding the substantial transfers made from the Defendants to MI Medical Management.</u>

26. … there is no record of a loan amount due to Genesis in either the Defendants' detailed general ledgers or tax returns. Rather (and remarkably), the <u>Defendants' recorded Genesis' advances as "Business Income" in their books and records, rather than a loan.</u>

27. In sum, it appears the parties are in agreement regarding the data included in the Accounting Criteria and that Genesis is owed no less than $1.5 million …

c. *The Defendants are unlikely to satisfy the debts owed to Genesis from collections*

\*\*\*

29. Defendants' collective cash balance in their respective checking and savings accounts totaled $3,776.70 as 0f January 31, 2025, and was deemed to be immaterial for purposes of assessing Defendants' ability to repay the subject Genesis loans.

\*\*\*

30. The primary remaining assets held by the Defendants consist of a face value of approximately $5.1 million of active collection suits filed by various law firms; however, collectability is suspect. Indeed, numerous insurance companies have filed lawsuits against Defendant Lint Chiropractic alleging it submitted fraudulent, unlawful, and/or excessive insurance claims for services to Michigan auto accident victims.

31. Since the entry of the Receivership Order on January 8, 2025, Genesis has only received $17,535.00 in the lockbox account ordered pursuant to such order.

\*\*\*

34. Given the foregoing, the Defendants are unable to satisfy debts owed to Genesis from simply collection of outstanding receivables.

d. *Defendants transferred nearly all of the Genesis loan proceeds to insiders*

36. **Based upon the Receiver's review, of the $2.38 million of loan proceeds advanced by Genesis, $2.35 million was transferred out from the Defendants to other Super related entities or to Dr. Super personally.**

37. The loan advances never remained in the Defendants' accounts for more than a few days. Rather, the Defendants

made transfers out of their respective bank accounts, either the same day, or in close proximity to, the date Genesis advanced the funds. According to the Defendants' detailed general ledgers, the transfers out were recorded as an expense for "Management Fees/Services" and the funds were primarily sent to MI Medical Management and Medical Capital Solutions accounts at JP Morgan Chase bank (accounts ending 7072/9899 and 3028, respectively).

\*\*\*

39. <u>When the Receiver requested Dr. Super produce copies of the bank statements for the recipient entities, Dr. Super refused.</u>

40. It is clear from the Profit and Loss Statements that the <u>Defendants transferred the majority of amounts reported as income to other entities owned and/or controlled by Dr. Super and recorded such transfers as an expense item labeled "Management Fees/Services."</u>

41. In support of the alleged "management fees," Dr. Super provided two management service agreements. The first agreement was between Lint Chiropractic, P.C., MI Medical Management, LLC and Diagnostic Chiropractic, P.C. The second agreement was between Lint Chiropractic, P.C., MI Medical Management, LLC. and Lint Chiropractic II, P.C. Both agreements appeared to be identical and contained sections regarding management fees, however the terms and amounts were blank. In addition, <u>Dr. Super executed both agreements on behalf of all the entities involved and, when interviewed by the Receiver, confirmed that all of these entities are owned and controlled by him and stated that the entities "were" him</u>.

42. Notably, management services agreements were not provided to support management fees paid to Medical Capital Solutions, and no agreements were produced related to Supplies Plus MI, LLC.

### RECOMMENDATION AND CONCLUSION

The Receiver believes that it is appropriate that the Court order the expansion of his powers in order to assume full control of the Defendants' assets and to pursue claims against third parties in order to recover fraudulent transfers and/or any other claims in law or equity available. The Defendants

simply have no hope of repaying the funds they readily admit owing to the Plaintiffs.

[Plaintiffs' Motion, Exhibit 20] [Italics and bold type in original] [Underlining added].

Discovery in this case closed on April 11, 2025. Depositions of Bianca Dhall, Lint's last and sole employee of Ml Medical Management, and Defendant Dr. Super were taken. Both Dr. Super and Geller have submitted affidavits. Now before the Court is Genesis' motion for summary disposition in regard to: (1) the breaches of contract; (2) unjust unrichment (in the alternative to breach of contract); (3) statutory conversion; (4) common law conversion; and (5) embezzlement of a security.

## II. STANDARDS FOR DETERMINING MOTIONS FOR SUMMARY DISPOSITION

Plaintiffs base their motion on MCR 2.116(C)(10). "'A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint.'" *Marion v Grand Trunk W R Co*, 513 Mich 220; 15 NW3d 180, 184 (2024), quoting *Maiden v Rozwood*, 461 Mich. 109, 120, 597 N.W.2d 817 (1999). In reviewing a motion under MCR 2.116(C)(10), a court must consider the pleadings, admissions, affidavits, and other relevant documentary evidence submitted in the light most favorable to the nonmoving party. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). If no genuine issue of material fact is established, the moving party is entitled to judgment as a matter of law. *Maiden, supra* at 120. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v General Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

The moving party has the initial burden of supporting its position through documentary evidence. *Quinto v Cross and Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). The burden then shifts to the opposing party to establish the existence of a genuine issue of material fact. *Id.* The non-moving party ". . . may not rest on the mere allegations or denials of his or her pleadings, but must, by affidavit or otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116 (G)(4). If the opposing party fails to do so, the motion for summary disposition is properly granted. Id.; *Quinto, supra* at 363. Finally, a "reviewing court may not employ a standard citing the mere possibility that the claim might be supported by evidence produced at trial. A mere promise is insufficient under our court rules." *Maiden, supra* at 121.

## III. <u>DISCUSSION</u>

In support of the motion, Genesis first argues that Defendants breached both the Underlying Agreements and the Agreement Regarding Servicing. The only responsive argument put forth by Defendants is that the "initial documents executed by and between the parties contained a NON-RECOURSE provision and that Plaintiffs were only obligated to pay "once certain identified cases came to fruition…" Defendants argue that this is a condition precedent for Defendants' obligation to pay on the accounts receivable.

In the Court's view, Defendants' response fails to address the fact that Defendants received $1.2 million in collectibles, yet paid only approximately $870,000 to Genesis. Moreover, as Genesis argues, "although 'non-recourse' language appears in the title of certain Security Agreements, it does not appear within the Promissory Notes." A "nonrecourse loan is a loan where the lender has agreed to limit its remedies (or recourse)

in the event of a loan default to foreclosure on the real and/or personal property collateral pledged by the borrower as security for the loan." Shelby D. Green, Joseph (Joey) E. Lubinski, (FNa2) James (Jim) C. Wine (FNa3), *NEGOTIATING NONRECOURSE CARVEOUT GUARANTIES*, Prac Real Est Law 18, 19 (2022). Thus, the security agreements in this case are nonrecourse, meaning that Genesis has no ability to foreclose on the accounts receivable, which secure the loan, (No-Fault cases), but may seek remedies from Defendants' other assets. See LOAN, Black's Law Dictionary (12th ed. 2024) ("**nonrecourse loan** (1941) A secured loan that allows the lender to attach only the collateral, not the borrower's personal assets, if the loan is not repaid." [Emphasis in original]). On the other hand, the promissory notes dictate the terms for repayment of the loan and consequences of default.

"'A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach.'" *Zwiker v Lake Superior State Univ*, 340 Mich App 448, 477-478; 986 NW2d 427 (2022), quoting *Miller-Davis Co v Ahrens Constr, Inc,* 495 Mich 161, 178; 848 NW2d 95 (2014).

Here, Dr. Super's affidavit merely mirrors Defendants' argument. He stated in pertinent part:

> 4. That at no time did I commit any acts, or undertake any attempts, to defraud the plaintiff of any monies rightfully due under the existing corporate contracts.
>
> 6. The public record Plaintiffs created by fiing of the initial bogus Complaint served to destabilize Defendants business operations; …
>
> 8. "That the: initial documents executed by and between the parties contained a NON- RECOURSE provision and

> obligated Defendants to pay Plaintiffs pursuant to the Agreement only once certain identified cases came to fruition regarding payment.
>
> 11. That despite the decreased revenue caused in large measure by the actions of Plaintiffs, Defendants' overhead expenses continued. The delay in insurance payments, coupled with actual denials, forced Defendants to abandon operations in Michigan.
>
> 12. That Defendant's corporate entities breached no agreements. ...

[Affidavit of Defendant Super].

Dr. Super essentially blames Genesis' actions for Plaintiffs' lack of revenue. He contends that the cases initiated against Defendants in attempts to collect their debt has caused their lack of revenue. Dr. Super also contests the accuracy of Genesis' damage calculations. He claims it to be approximately $1.3 million.

Geller's affidavit offers nothing more. He merely disclaims any ownership of, control of, directorship of, or leadership role in Defendant entities. He also explains that he is General Counsel for Defendants. He asserts that he "never assumed or been assigned any personal liability in connection with the matters alleged in this case, nor [has he] entered into any personal guarantees or agreements relating to the claims asserted." He also said that he "had no access to any of the bank accounts, QuickBooks or any financial information, nor did [he] ever have any involvement in payroll."

Dr. Super also testified in a deposition that he formed MI Medical Management as a management company and he would transfer money in and out of that company's accounts to make payroll and pay for certain of his personal expenses such as his health and auto insurance, his phone bill, and his car lease .

As this Court has already determined, "Genesis has demonstrated at least an apparent right, title, or interest in certain accounts receivable held by Defendants" and "Genesis has demonstrated that some or all of those accounts or their revenue-producing potential appear to be in danger of waste, loss, dissipation, or impairment." This was confirmed by Receiver Bullock. Bullock opined that , "it appears the parties are in agreement regarding the data included in the Accounting Criteria and that Genesis is owed no less than $1.5 million." As indicated above, Bullock found the following:

> 25. … The Receiver is of the firm belief that Dr. Super's refusal to provide the requested bank statements is to shield further discovery by the Receiver regarding the substantial transfers made from the Defendants to MI Medical Management.
>
> ***d. Defendants transferred nearly all of the Genesis loan proceeds to insiders***
>
> 36. **Based upon the Receiver's review, of the $2.38 million of loan proceeds advanced by Genesis, $2.35 million was transferred out from the Defendants to other Super related entities or to Dr. Super personally.**
>
> 37. The loan advances never remained in the Defendants' accounts for more than a few days. Rather, the Defendants made transfers out of their respective bank accounts, either the same day, or in close proximity to, the date Genesis advanced the funds. According to the Defendants' detailed general ledgers, the transfers out were recorded as an expense for "Management Fees/Services" and the funds were primarily sent to MI Medical Management and Medical Capital Solutions accounts at JP Morgan Chase bank (accounts ending 7072/9899 and 3028, respectively).
>
> [Plaintiffs' Motion, Exhibit 20] [Italics and bold type in original].

Bullock concluded "it is appropriate that the Court order the expansion of his powers in order to assume full control of the Defendants' assets and to pursue claims

against third parties in order to recover fraudulent transfers and/or any other claims in law or equity available. The Defendants simply have no hope of repaying the funds they readily admit owing to the Plaintiffs." [Id]. The Court agrees with Receiver Bullock and Defendants have provided no factual predicate for its argument against Genesis other than to blame litigation for their failure to generate revenue and repay their loan to Genesis. Defendants have breached both the Underlying Agreements and the Agreement Regarding Servicing. The only issue left to decide regarding these breaches is amount of damages incurred as a result of the breaches. As Bullock reported, the parties agree that the amount owing to Genesis is $1.5 million. Therefore, there is no genuine issue of material fact that Defendants breached the Underlying Agreements.

The Underlying Agreements related to Diagnostic, and Supplies Plus were executed on December 9, 2021 and the Agreement related to Lint was executed on May 18, 2021. In all, there were 13 promissory notes. Thus, under these agreements, Defendants agreed to pay Genesis all "Return Amounts" by March 9, 2023. The "Return Amounts" and the amounts prescribed in the promissory notes. The "Return Amount" under the promissory notes is the principal amount X 1.8, except that the Supplies Plus promissory note dated May 13, 2022 provides for a return amount of 1.5 X the principal amount.

Defendants failed to pay Genesis all "Return Amounts" within the 15-month contractual window. Defendants have only paid Genesis $824,882.07. Genesis contends that, due to its right to accelerate the amounts due, it is entitled to $5,165,133.98, which is the total of all the agreements. Indeed, the promissory notes provide that, in the event

15

of default, Genesis may accelerate all amounts due. [Plaintiffs' Motion, Exhibit 5, Underlying Agreements, Promissory Notes, ¶ 5].

There is also no doubt that Defendants failed to follow the directives of the Agreement Regarding Servicing. They removed funds from the bank account without permission, commingled the funds with their own, and failed to provide monthly Reconciliation Reports.

Defendants have failed to provide sufficient evidence to overcome Genesis' motion for summary disposition. Accordingly, the Court grants Plaintiffs' motion with respect to the breaches of contract claims. The Court will also issue a separate order to expand the receiver's powers in order to satisfy the debt owed to Genesis.

Genesis next argues that the Court should pierce the corporate veil because "Super and Geller Abused the Corporate Form of the Defendant Entities." In response, Defendants contend that Dr. Super and Geller cannot be personally liable because "neither party participated in the underlying contractual negotiations in their individual capacities, nor did they personally execute any agreements that would create

individual liability." They claim that "all interactions and agreements at issue were undertaken solely by the corporate defendants." Defendants further argue that Geller should be dismissed from the case because he is not an owner of any of the defendant entities and is merely general counsel for them.

"There is a presumption that the" corporate veil "may be pierced only where an otherwise separate corporate existence has been used to subvert justice…" [Footnotes omitted] 6 Mich Civ Jur Corporations § 11. "For the corporate veil to be pierced, the corporate entity must be a mere instrumentality of another individual or entity. Further,

the corporate entity must have been used to commit a wrong or fraud. Additionally, and finally, there must have been an unjust injury or loss to the plaintiff." [Emphasis added] *Rymal v Baergen*, 262 Mich App 274, 293- 294; 686 NW2d 241 (2004).

"The traditional basis for piercing the corporate veil has been to protect a corporation's creditors where there is a unity of interest of the stockholders and the corporation and where the stockholders have used the corporate structure in an attempt to avoid legal obligations." *Foodland Distributors v Al-Naimi*, 220 Mich App 453, 456; 559 NW2d 379 (1996). "There is no single rule delineating when the corporate entity may be disregarded." *Id*. "Whether the veil should be pierced is an equitable determination that must be made after considering the 'entire spectrum of relevant facts.'" *Grand Rapids Assoc Ltd Partnership v Coop Props, LLC*, 495 Fed Appx 598, 601 (CA 6, 2012), quoting *Foodland Distributor*s at 380.

The factors used by courts to determine the propriety of piercing the corporate veil include: (1) whether the corporation is undercapitalized; (2) whether separate books are kept; (3) whether there are separate finances for the corporation; (4) whether the corporation is used for fraud or illegality; (5) whether corporate formalities have been followed; and (6) whether the corporation is a sham. *Glenn v TPI Petroleum, Inc*, 305 Mich App 698, 716; 854 NW2d 509 (2014).

The evidence in this case demonstrates that Dr. Super used the corporate form to "subvert justice." *Rymal, supra*. The record shows that no corporate formalities were followed. There were no boards, meetings or officers. Dr. Super testified that money received by the defendant entities were quickly transferred into MI Medical Management and money was used to pay Dr. Super's personal expenses, such as his phone bill and his

personal car lease. This was confirmed by Receiver Bullock's report. Biance Dhall, the only employee of MI Medical Management testified that, although checks were received on certain accounts, she had no idea whether and what bank accounts the defendant entities existed. She said that only Dr. Super knew about them. She also said that she was not aware of any board meetings, officers, or corporate organizational documents for any of the defendant companies. It was clear from her testimony that only Dr. Super knew about the receipt of monies and their eventual destination. She stated that, as of August 2, 2024, all chiropractic services had ceased and that the offices were cleared of all tangible assets. The cessation of services was due to the law changing in Michigan and that payments for insurance related services were significantly reduced.

As the Receiver reported, "Defendants transferred nearly all of the Genesis loan proceeds to insiders" and "$2.35 million was transferred out from the Defendants to other Super related entities or to Dr. Super personally." [Plaintiffs' Motion, Exhibit 20]. The Receiver also reported that Dr. Super refused to produce bank statements for the entities that received the loan funds. The Receiver also reported that the entities' collective bank accounts as of January 31, 2025 only had a cash balance of $3,776.70.

In the Court's view, because Dr. Super has failed to overcome his burden to produce evidence to contradict Genesis' claim and that most of the factors indicate that Dr. Super's corporations have been used to subvert justice, that no corporate formalities have been followed, that the entities were undercapitalized, and that the defendant entities are a sham, there is no question of material fact that the defendant entities are mere instrumentalities of Dr. Super. Accordingly, the corporate veil should be pierced, holding Dr. Super personally liable for the amount due. As to Defendant Geller, there is no

indication that he controlled any of the defendant entities other than to help Dr. Super in forming them. Thus, he should not be included as a person liable for the outstanding loan proceeds.

Genesis' third argument is that the defendant entities have been unjustly enriched[2] by retaining $377,698.24 in funds taken from a bank account. Notably, Defendants have failed to address this argument. Any argument Defendants may have had is deemed abandoned. *Schellenberg v Rochester Elks*, 228 Mich App 20, 49; 577 NW2d 163 (1998).[3]

"Unjust enrichment is defined as the unjust retention of money or benefits which in justice and equity belong to another. No person is unjustly enriched unless the retention of the benefit would be unjust." *Tkachik v Mandeville*, 487 Mich 38, 47–48; 790 NW2d 260 (2010) [Internal citations and quotation marks omitted]. "The elements of a claim for unjust enrichment are (1) receipt of a benefit by the defendant from the plaintiff, and (2) an inequity resulting to plaintiff from defendant's retention of the benefit." *Bellevue Ventures, Inc v Morang-Kelly Inv, Inc*, 302 Mich App 59, 64; 836 NW2d 898 (2013), citing *Dumas v Auto Club Ins. Ass'n*, 437 Mich 521, 546; 473 NW2d 652 (1991). "[T]he law operates to imply a contract in order to prevent unjust enrichment." *Id* [Citation omitted]. "However, a contract will be implied only if there is no express contract covering the same subject matter." *Belle Isle Grill Group v Detroit*, 256 Mich App 463, 478; 666 NW2d 271 (2003).

---

[2] As Genesis notes, the Amended Complaint incorrectly labels Genesis' unjust enrichment claim as a claim for promissory estoppel.

[3] **Error! Main Document Only.**A party may not merely announce his or her position and leave it to the Court to discover and rationalize the basis for his or her claims, nor may he or she give issues only cursory treatment with little or no citation of supporting authority. *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004). Such cursory treatment constitutes abandonment of the issue. *Id*.

Whether a specific party has been unjustly enriched is generally a question of fact. *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 193; 729 NW2d 898 (2006). "However, whether a claim for unjust enrichment can be maintained is a question of law…" *Id*. Moreover, as indicated in *Peabody v DiMeglio*, 306 Mich App 397, 408; 856 NW2d 245 (2014): "This is a purely equitable claim that is not covered by any express contract of the parties." [Citation omitted].

Here, the parties' dispute is covered by express contracts, the Underlying Agreements and the Agreement Regarding Service. The subject matter of these contracts covers the loans, the loans' terms, and the method of repayment. Thus, as a matter of law, unjust enrichment is not a viable claim. Accordingly, the Court denies Genesis' motion as to unjust enrichment.

Genesis' fourth argument is that Defendants' improper withdrawal and retention of funds constitutes common law and statutory conversion. Again, Defendants have failed to address this argument. Any argument Defendants may have had is deemed abandoned. *Schellenberg, supra.*

"[T]he scope of a common-law conversion is now well-settled in Michigan law as any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Aroma Wines & Equip, Inc v Columbian Distribution Servs., Inc*, 497 Mich 337, 351–352; 871 NW2d 136 (2015) [Internal quotation marks, footnotes, and citation omitted]. "'Conversion,' both at common law and under statute, is defined as any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Magley v M & W Inc*, 325 Mich App 307; 926 NW2d 1 (2018). The court in *Aroma Wines & Equip,*

*Inc, supra,* quoting *Thoma v Tracy Motor Sales, Inc,* 360 Mich. 434, 438; 104 NW2d 360 (1960), quoting 1 Restatement, Torts, § 222., noted that "'the ways in which a conversion may be committed: 'A conversion may be committed by

> (a) <u>intentionally dispossessing another of a chattel,</u>
> (b) intentionally destroying or altering a chattel in the actor's possession,
> (c) using a chattel in the actor's possession without authority so to use it,
> (d) <u>receiving a chattel pursuant to</u> a sale, <u>lease,</u> pledge, gift or other transaction <u>intending to acquire for himself</u> or for another <u>a proprietary interest in it,</u>
> (e) disposing of a chattel by sale, lease, pledge, gift or other transaction intending to transfer a proprietary interest in it,
> (f) misdelivering a chattel, or
> (g) <u>refusing to surrender a chattel on demand.</u>'"

> [Footnotes omitted][Emphasis added].

Additionally, the court in *Magley, supra,* at 314-315, quoting *Foremost Ins Co v Allstate Ins Co,* 439 Mich 378, 391; 486 NW2d 600 (1992) explained: "'Conversion is an intentional tort in the sense that the converter's actions are willful'" The *Magley* court also stated that "Good faith, mistake, and ignorance are not defenses to a claim of conversion." *Id* [Citations omitted].

As to statutory conversion, MCL 600.2919a provides in pertinent part:

> (1) <u>A person damaged as a result of either or both</u> of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:

> (a) <u>Another person's stealing or embezzling property or converting property</u> to the other person's own use.
> . . .

> (2) The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise.

> MCL 600.2919a [Emphasis added].

21

Thus, unlike common law conversion, an added component in statutory conversion is that a person converting property must convert the property for his or her "own use." Case law indicates that "someone alleging conversion to the defendant's 'own use' under MCL 600.2919a(1)(a) must show that the defendant employed the converted property for some purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose." *Aroma Wines, supra* at 359. Hence, "own use" may include a use for a purpose which is not the "ordinarily intended purpose."

Defendants have failed to offer any evidence to rebut the evidence provided by Genesis that they improperly withdrew funds and retained those funds. Hence, they have failed to satisfy their burden to establish the existence of a genuine issue of material fact. *Quinto, supra,* and ". . . may not rest on the mere allegations or denials of his or her pleadings, but must, by affidavit or otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116 (G)(4).

Because Defendants have not established the existence of a genuine issue of material fact, *Quinto, supra,* and cannot rest on mere denials "judgment, if appropriate, shall be entered against" them. MCR 2.116 (G)(4). Accordingly, the Court grants summary disposition in favor of Genesis as to the conversion claims.

Genesis' last contention is that Defendants embezzled a security. In support, Genesis cites the criminal statute, specifically MCL 750.174. Defendants provide no response to Genesis regarding embezzlement. However, the Court notes that Genesis' embezzlement claim cannot lie.

There is no separate civil cause of action for embezzlement in Michigan. Michigan courts treat embezzlement as a specific form of conversion rather than as a distinct civil tort. As noted in

the recent case, *Marko Law, PLLC v Salling,* __Mich App__; ___ NW3d__; 2025 WL 3180006 (2025) at 4 "stealing and embezzling are simply specific forms of conversion." The Marko Law court explained:

> Embezzlement is defined as criminally converting property to one's own use, MCL 750.174(1), and any act of stealing property likewise involves an "act of domain wrongfully exerted over another's personal property." As a result, the statute's reference to stealing, embezzling, or converting property is best understood as a stylistic redundancy familiar in legal drafting…not as a substantive expansion of liability. Reading it otherwise would mean that the Legislature not only provided a damages enhancement but also implicitly created new civil causes of action for "stealing" and "embezzling" without defining their elements or remedies.
>
> [Footnote omitted].

Thus, Michigan's embezzlement law in MCL 750.174 establishes embezzlement as a purely criminal offense with no civil remedy provisions. MCL 750.174 contains no language creating civil causes of action, damage remedies, or private enforcement rights. Therefore, there is no separate civil cause of action for embezzlement. Embezzlement is merely a specific form of conversion as provided in MCL 600.2919a(1)(a). Because the Court has already granted summary disposition in favor of Genesis as to the conversion claims, it denies summary disposition as to the embezzlement claim as moot.

## IV. <u>CONCLUSION</u>

There is no genuine issue of material fact that Defendants breached the Underlying Agreements and the Agreement Regarding Servicing. The Court grants summary disposition in favor of Genesis as to the breach of contracts claims.

There is no question of material fact that the defendant entities are mere instrumentalities of Dr. Super to subvert justice. *Rymal, supra.* Accordingly, the corporate veil should be pierced, holding Dr. Super personally liable for the amounts due. As to

Defendant Geller, there is no indication that he controlled any of the defendant entities and there is no evidence that he controlled the entities. Thus, Defendant Geller should not be included as a person liable for the outstanding loan proceeds.

The unjust enrichment claim is an equitable claim covered by express contracts, the Underlying Agreements and the Agreement Regarding Servicing. *Peabody, supra.* Thus, as a matter of law, unjust enrichment is not a viable claim. Accordingly, the Court denies Genesis' motion as to unjust enrichment.

As to the conversion claims, Defendants have not established the existence of a genuine issue of material fact, *Quinto, supra,* and cannot rest on mere denials. Thus, judgment is appropriate and shall be entered against them. MCR 2.116 (G)(4). Therefore, the Court grants summary disposition in favor of Genesis as to the conversion claims.

There is no separate civil cause of action for embezzlement in Michigan. Michigan courts treat embezzlement as a specific form of conversion rather than as a distinct civil tort. *Marko Law, supra.* There are no private enforcement rights contained in MCL 750.174. Nor does the statute create a civil cause of action. Therefore, as matter of law, the Court denies Genesis' motion as to the embezzlement claim.

For the reasons stated in the foregoing Opinion,

**IT IS ORDERED** that the motion for summary disposition filed by Plaintiffs Genesis Alternative Finance IV LLC and Genesis Alternative Finance V LLC is **GRANTED** as to the claims for breach of contract (Counts I and IX);

**IT IS ORDERED** that the motion for summary disposition filed by Plaintiffs Genesis Alternative Finance IV LLC and Genesis Alternative Finance V LLC is

**GRANTED** as to the claims for statutory conversion and common law conversion (Counts III and IV);

**IT IS FURTHER ORDERED** that the motion for summary disposition filed by Plaintiffs Genesis Alternative Finance IV LLC and Genesis Alternative Finance V LLC is **DENIED** as to the claim for unjust enrichment (Count II – Promissory Estoppel);

**IT IS FURTHER ORDERED** that the motion for summary disposition filed by Plaintiffs Genesis Alternative Finance IV LLC and Genesis Alternative Finance V LLC is **DENIED** as to the claim for embezzlement of a security (Count V);

**IT IS FURTHER ORDERED** that Defendant Robert Super shall be held personally liable for the damages sought herein;

**IT IS FURTHER ORDERED** that Defendant Richard Geller is not held to be personally liable for the damages sought herein;

**IT IS FURTHER ORDERED** that the parties shall submit briefs as to the amount of damages within 3 weeks of the date of entry of this Order, after which the Court will determine the correct amount of damages due to Plaintiffs.

**IT IS FURTHER ORDERED** that Receiver Charles D. Bullock will be reappointed with expanded powers under a separate Order after the Court has made a determination as to the damage amount;

**IT IS FURTHER ORDERED** that this **DOES NOT RESOLVE** the last pending claim or issue and **DOES NOT CLOSE THE CASE.**

/s/ Annette J. Berry
February 26, 2026

**DATED:** 2/26/2026

_____
Circuit Judge

25

EXHIBIT

B

**STATE OF MICHIGAN**
**IN THE BUSINESS COURT FOR THE COUNTY OF WAYNE**

GENESIS ALTERNATIVE FINANCE LLC,
and GENESIS ALTERNATIVE FINANCE V LLC,

          Plaintiffs,

v.

LINT CHIROPRACTIC P.C., DIAGNOSTIC
CHIROPRACTIC MI, P.C., and SUPPLIES
PLUS MI, LLC,

          Defendants.

Case No. 24-010404-CB
Hon. Annette J. Berry

| | |
|---|---|
| Taft Stettinius & Hollister, LLP | Law Offices of Gregory J. Rohl PC |
| Michael Leo Pomeranz (P84908) | Gregory J. Rohl (P39185) |
| Kenneth I. Nelson (P87217) | Attorneys for Defendants |
| Attorneys for Plaintiffs | 4051 Haggerty Rd |
| 27777 Franklin Road, Suite 2500 | West Bloomfield, MI 48323 |
| Southfield, MI 48034 | (248) 380-9404 |
| (248) 351-3000 | greg@rohllaw.com |
| mpomeranz@taftlaw.com | |
| knelson@taftlaw.com | |

Stevenson & Bullock, P.L.C
Charles D. Bullock (P55550)
*Receiver*
Elliot G. Crowder (P76137)
*Counsel for Receiver*
26100 American Drive, Suite 500
Southfield, MI 48034
Phone: (248) 354-7906
Facsimile: (248) 354-7907
Email: cbullock@sbplclaw.com
Email: ecrowder@sbplclaw.com

**RECEIVER'S REPORT AND RECOMMENDATION**

NOW COMES Charles D. Bullock, the Court-appointed Receiver in the above captioned

matter (the "Receiver"), who submits the following as his Report and Recommendation (the

"Report"). This Report shall serve as an overview and update of the matters that the Receiver has

1

Document received by the MI Wayne 3rd Circuit Court.

been appointed by the Court to address his findings and his recommended course of action going forward. This Report is furnished pursuant to the *Order for Receivership and Other Relief* dated January 8, 2025 (the "Receivership Order"). See, **Exhibit A**.

**Introduction**

The Receiver has faithfully discharged his duties since the commencement of the instant receivership. The Receivership Order appointed the Receiver to, *inter alia,* prepare and file this Report and Recommendation in order to provide guidance and clarity to the Court. In some instances, the Receiver's efforts were fruitful. In others, the Defendants and their principal impaired the Receiver's efforts and thereby, the ability to provide clarity. What is clear, however, is:

➢ There is approximately $1.5 million due and owing to the Genesis Alternative Finance, LLC and Genesis Alternative Finance V LLC (collectively, "Genesis" or the "Plaintiffs");

➢ There are avoidable transactions from the Defendants that need to be pursued. Indeed, at nearly every turn, following Plaintiffs' funding, the Defendants transferred funds to other entities owned and controlled by their principal, Dr. Robert Super ("Super"). These transfers total no less than $2.3 million and, in many circumstances, were made on the same day that funding was received. Below is a snapshot of just *some* of the banking activity for the days when loan proceeds were received by the Defendants:

| Date | Genesis Fund | Defendant Entity | Defendant Bank | Defendant Bank Account Ending | Genesis Advance Amount | Defendant Transfers | Timing of Defendant Transfers | Notes regarding Defendant transfers out of bank account |
|---|---|---|---|---|---|---|---|---|
| 3/28/2022 | GAF V | Lint | Fifth Third | 4807 | $ 124,675.00 | $ (124,000.00) | Same Day | On 3/28/22 $124,000 was transferred to Medical Capital Solutions labeled as "Management Services" expense. |
| 3/28/2022 | GAF V | Diagnostic | JP Morgan Chase | 6151 | $ 67,200.00 | $ (67,200.00) | Same Day | On 3/28/22 $67,200 was transferred to Medical Capital Solutions account ending '3028 labeled as "Management Fees" expense. |
| 5/19/2022 | GAF V | Lint | Fifth Third | 4807 | $ 337,622.95 | $ (385,000.00) | Same Day | On 5/19/22 $335,000 was transferred to Medical Capital Solutions labeled as "Management Services" expense. |
| 5/19/2022 | GAF V | Supplies | JP Morgan Chase | 5012 | $ 94,800.00 | $ (80,000.00) | Same Day | On 5/19/22 $80,000 was transferred to Medical Capital Solutions account ending '3028 labeled as "Management Fees" expense. |
| 6/21/2022 | GAF V | Diagnostic | JP Morgan Chase | 6151 | $ 206,520.00 | $ (206,000.00) | Same Day | On 6/21/22 $206,000 was transferred to Medical Capital Solutions account ending '3028 labeled as "Management Fees" expense. |
| 7/26/2022 | GAF V | Lint | Fifth Third | 4807 | $ 283,962.58 | $ (283,000.00) | Same Day | On 7/26/22 $200,000 was transferred to Medical Capital Solutions labeled as "Management Services" expense and $83,000 was transferred to Lint Chiropractic JP Morgan Chase account ending '0000. Three days later on 7/29/22 Lint Chiropractic JPMorgan Chase accounting ending '0000 transferred $100,000 to account ending '9899 which is M Medical Management. |

Document received by the MI Wayne 3rd Circuit Court.

➢ When the Receiver requested further detail and documentation from the Defendants and Super regarding such transfers, Super and the Defendants refused to cooperate;

➢ The prospects of recovery of Defendants' accounts receivable is speculative and, at best, still is insufficient to satisfy Plaintiffs' claim; and

➢ Defendants' financial records are unreliable, requiring the Receiver and his Professionals to rely on third-party records.

Based upon the Receiver's review, of the $2.38 million of loan proceeds advanced by Genesis, $2.35 million was transferred out from the Defendants to other Super related entities or to Dr. Super personally. The loan advances never remained in the Defendants' accounts for more than a few days. Rather, the Defendants made transfers out of their respective bank accounts, either the same day, or in close proximity to, the date Plaintiffs advanced the funds. When questioned regarding these transfers, Dr. Super identified the recipients all as entities he owned and controlled. Further, in support of the alleged "management fees," Dr. Super provided only two management service agreements – both of which lacked financial terms and both of which show Dr. Super on both sides of the transaction.

As set forth herein, the Receiver recommends an expansion of his powers in order to assume full financial control of the Defendants and to pursue significant avoidance actions available under MCL § 566.5431, et seq.

**Background**

From May of 2021 through July of 2022 Genesis advanced Defendants approximately $2.4 million, secured by over 1,000 patient billings that were/are the subject of collection suits by various law firms. To date, Defendants (and other entities owned by Dr. Super) have returned approximately $870,000 to Genesis, leaving a balance owed of approximately $1.5 million,

3

Document received by the MI Wayne 3rd Circuit Court.

exclusive of any agreed upon interest or return.

In previous litigation, the parties settled their disputes with Defendants agreeing to substantial financial oversight afforded to the Plaintiffs. What followed was not what was envisioned. Indeed, the Defendants removing over $775,000 from a bank account without Plaintiffs' approval, thereby leading to the instant lawsuit. The Plaintiffs and Court were left with substantive questions regarding the viability of the Defendants' assets and the prospects for repayment. The Court appointed the Receiver in order to provide clarity and, pursuant to the Receivership Order, the Receiver furnishes this Report and Recommendation.

## Actions taken by Receiver

Since the acceptance of the Receivership on or about January 13, 2025, the Receiver has been faithfully discharging his duties pursuant to the Receivership Order. The Receiver, either individually or through counsel, has taken the following actions in furtherance of his duties including, without limitation:

1. The Receiver has met (virtually due to geographical reasons) and engaged in ongoing communication with the parties and/or their respective counsel regarding the subject matter of the receivership.

2. The Receiver received and reviewed documentation from the parties regarding the subject matter of the receivership. Substantially all of this documentation has been shared with counsel for the parties.

3. The Receiver requested documentation from the parties that would be customary to a dispute such as the present.

4

Document received by the MI Wayne 3rd Circuit Court.

4.     Though not required, the Receiver consistently requested that Defendants comply with the Receivership Order and his requests for information, giving extraordinary latitude to the Defendants.

5.     The Receiver evaluated the pleadings and positions of the parties.  The Receiver has kept the parties and the Court advised of his efforts.

6.     The Receiver has conducted his own, independent, analysis of the issues presented in the Receivership Order, including the same in this Report and Recommendation.

7.     The Receiver has reviewed information in the public record regarding the Receivership Estate.

8.     The Receiver has been in regular communication with the parties regarding the subject dispute and his ongoing findings.

9.     The Receiver has ensured compliance with the Receivership Order, including preventing interference with his duties.  When necessary, the Receiver has sought court intervention in order to ensure compliance with the Receivership Order.

10.     On February 19, 2025, the Court entered the *Order Extending Deadline for Receiver's Report* because of Defendants' failure to cooperate and the outstanding documentation that was owed to the Receiver at that time.  **Exhibit B.**

11.     The Receiver has retained professionals to assist in the performance of his duties under the Receivership Order.  The Receiver retained Stevenson & Bullock, P.L.C. to perform legal services on his behalf regarding the subject of the Receivership and Riveron to serve as financial advisor.  The analysis of Riveron is attached hereto as **Exhibit C.**

Document received by the MI Wayne 3rd Circuit Court.

**FINDINGS OF THE RECEIVER**

### a. *The Receivership Order*

12. On January 8, 2025, the Court entered the Receivership Order. The Receivership Order provides, *inter alia*, that the Receiver is authorized to investigate the financial affairs of the Defendants and to prepare a Report. The Report was to include detail regarding the following:

a. Accounts receivable;

b. Whether any Defendant has received payments on any Genesis-related account receivable that the Defendant did not pay over to Genesis and, if so, the details of those receipts, including whether the funds remain in the possession of any Defendant and, if not, when and to whom they were transferred;

c. Status of any other amounts owed by one or more of Defendants to Genesis;

d. Defendants' current assets;

e. Whether Defendants have sufficient assets to satisfy debts to Genesis; and

f. Any other information that, in the Receiver's reasonable business judgment, is relevant or necessary.

13. The Receivership Order also requires that an Accounting take place which includes the following: (i) the patient name, (ii) provider facility, (iii) dates of service, (iv) bill amount, (v) amount advanced by Genesis, (vi) whether the advance was from GAF IV or GAF V, (vii) the date of advance, (viii) case status, (ix) date when provider collected funds, (x) gross amount collected as returns, (xi) amount of returns paid to Genesis, and (xii) amount retained by provider (i.e., the difference between the previous two items) (collectively, the "Accounting Criteria").

14. This Report is furnished pursuant to the Receivership Order and addresses the above issues, in turn.

6

Document received by the MI Wayne 3rd Circuit Court.

### b. The Accounting – Agreement between the parties

15. As an initial matter, it was imperative that the Receiver identify the amount in controversy. Remarkably, there was not disagreement between Genesis and the Defendants. Both sides operated from similar – though manipulatable – documentation regarding the Accounting Criteria.

16. The Receiver worked in concert with his Professionals, including Riveron, to assist in his analysis.

17. Pursuant to the Order, this analysis began by reviewing detailed schedules maintained by Quantum Outsourcing Group ("Quantum"), a servicer responsible for the collection and tracking of payments received from law firms upon resolution/settlement of the numerous suits (i.e., the accounts receivables identified as collateral for the Genesis loans).

18. The Receiver discussed each of the files with Dr. Super and representatives of Genesis, and both parties provided updates for certain cases through February 13, 2025. In general, both parties agreed as to the amounts advanced by Genesis and the remaining principal balance of the loan amounts outstanding.

19. Further, the Receiver understands that Genesis engaged in an underwriting process when advancing funds to confirm the existence of patients, dates of service, and the like.

20. The Receiver's analysis shows that GAF V advanced approximately $2.1 million to Defendants and GAF IV advanced approximately $300,000 solely to Lint Chiropractic, for a total of approximately $2.4 million. The amount of these advances were verified via a review of Defendants' bank statements and detailed general ledgers, as well as transaction dates and banking information provided by Genesis.[1]

---

[1] There was an immaterial difference of $297.16 between amounts reflected in the Defendants'

Document received by the MI Wayne 3rd Circuit Court.

21.    To date, Defendants have collected approximately $1.4 million related to the subject suits, of which, approximately $870,000 has been remitted to Genesis and approximately $570,000 has been retained by the Defendants.  Based on the forgoing, the remaining principal balance owed to Genesis, exclusive of any agreed upon returns, is approximately **$1.5 million.**

22.    Next, the Receiver attempted to verify payments remitted to Genesis via the same review of Defendants' bank statements and general ledgers; however, the Receiver was unable to do so based on Defendants' general ledgers.

23.    For example, the parties agree that Defendants made a lump sum payment of $400,000 to Genesis in April of 2024, yet there is no record of such a disbursement in the Defendants' bank accounts or general ledgers.  According to Dr. Super, this lump sum payment was not made from Defendants' accounts, but rather, it came from MI Medical Management's account at JP Morgan Chase ending in 9899.

24.    When the Receiver requested copies of bank statements to corroborate this position, Dr. Super refused to provide them, claiming that the request was outside of the purview of the instant litigation.

25.    Notably, given the agreement of the parties, the Receiver is operating from the belief that such $400,000 was actually paid.  The Receiver is of the firm belief that Dr. Super's refusal to provide the requested bank statements is to shield further discovery by the Receiver regarding the substantial transfers made from the Defendants to MI Medical Management.

26.    The Receiver also attempted to verify the outstanding loan balance due to Genesis via a review of Defendants' books and records; however, there is no record of a loan amount due

---

bank statements and general ledgers as compared to the detailed schedules maintained by Quantum.

8

Document received by the MI Wayne 3rd Circuit Court.

to Genesis in either the Defendants' detailed general ledgers or tax returns. Rather (and remarkably), the Defendants' recorded Genesis' advances as "Business Income" in their books and records, rather than a loan.

27. In sum, it appears the parties are in agreement regarding the data included in the Accounting Criteria and that Genesis is owed no less than $1.5 million; however, the Receiver's efforts to surmise the same are telling when completing the other portions of this Report and Recommendation as required by the Receivership Order.

*c.* ***The Defendants are unlikely to satisfy the debts owed to Genesis from collections***

28. Next, the Receiver undertook an analysis regarding the Defendants' ability to repay the moneys owed to Genesis. The Defendants are not operating and have sold, abandoned, or otherwise dispossessed themselves of their tangible physical assets. The Defendants' principal, Dr. Super, resides in Florida and appears to attempt to manage matters remotely.

29. Defendants' collective cash balance in their respective checking and savings accounts totaled $3,776.70 as of January 31, 2025, and was deemed to be immaterial for purposes of assessing Defendants' ability to repay the subject Genesis loans.

30. The primary remaining assets held by the Defendants consist of a face value of approximately $5.1 million of active collection suits filed by various law firms; however, collectability is suspect. Indeed, numerous insurance companies have filed lawsuits against Defendant Lint Chiropractic alleging it submitted fraudulent, unlawful, and/or excessive insurance claims for services to Michigan auto accident victims.

31. Since the entry of the Receivership Order on January 8, 2025, Genesis has only received $17,535.00 in the lockbox account ordered pursuant to such order.

Document received by the MI Wayne 3rd Circuit Court.

32. Even assuming that the Defendants reached their previous collection rates and remitted 100% of the collected funds to Genesis, they still would be unable to repay Genesis. Historically, the collection rate was approximately 28% for GAF V suits and 22% for GAF IV suits. Extrapolating such numbers, the Defendants could potentially collect approximately $1.3 million from the remaining suits that are labeled as open/partial settlement/unknown, leaving approximately $200,000 unpaid without considering any interest, fees, or other charges that Genesis may assert due and owing.

33. Moreover, it is the Receiver's experience that temporal delays generally lead to worse collectability results in outstanding receivables.

34. Given the foregoing, the Defendants are unable to satisfy debts owed to Genesis from simply collection of outstanding receivables.

### d. *Defendants transferred nearly all of the Genesis loan proceeds to insiders*

35. Next, the Receiver attempted to trace the Genesis loan proceeds; however, such efforts were stonewalled by Defendants once the Receiver identified that such loan proceeds funneled in and out of the Defendants' coffers to other Super related entities.

36. **Based upon the Receiver's review, of the $2.38 million of loan proceeds advanced by Genesis, $2.35 million was transferred out from the Defendants to other Super related entities or to Dr. Super personally.**

37. The loan advances never remained in the Defendants' accounts for more than a few days. Rather, the Defendants made transfers out of their respective bank accounts, either the same day, or in close proximity to, the date Genesis advanced the funds. According to the Defendants' detailed general ledgers, the transfers out were recorded as an expense for "Management

Document received by the MI Wayne 3rd Circuit Court.

Fees/Services" and the funds were primarily sent to MI Medical Management and Medical Capital Solutions accounts at JP Morgan Chase bank (accounts ending 7072/9899 and 3028, respectively).

38. Below is a snapshot of just *some* of the banking activity for the days when loan proceeds were received by the Defendants:

| Date | Genesis Fund | Defendant Entity | Defendant Bank | Defendant Bank Account Ending | Genesis Advance Amount | Defendant Transfers | Timing of Defendant Transfers | Notes regarding Defendant transfers out of bank account |
|---|---|---|---|---|---|---|---|---|
| 3/28/2022 | GAF V | Lint | Fifth Third | 4807 | $ 124,675.00 | $ (124,000.00) | Same Day | On 3/28/22 $124,000 was transferred to Medical Capital Solutions labeled as "Management Services" expense. |
| 3/28/2022 | GAF V | Diagnostic | JP Morgan Chase | 6151 | $ 67,200.00 | $ (67,200.00) | Same Day | On 3/28/22 $67,200 was transferred to Medical Capital Solutions account ending '3028 labeled as "Management Fees" expense. |
| 5/19/2022 | GAF V | Lint | Fifth Third | 4807 | $ 337,622.95 | $ (335,000.00) | Same Day | On 5/19/22 $335,000 was transferred to Medical Capital Solutions labeled as "Management Services" expense. |
| 5/19/2022 | GAF V | Supplies | JP Morgan Chase | 5012 | $ 94,800.00 | $ (80,000.00) | Same Day | On 5/19/22 $80,000 was transferred to Medical Capital Solutions account ending '3028 labeled as "Management Fees" expense. |
| 6/21/2022 | GAF V | Diagnostic | JP Morgan Chase | 6151 | $ 206,520.00 | $ (206,000.00) | Same Day | On 6/21/22 $206,000 was transferred to Medical Capital Solutions account ending '3028 labeled as "Management Fees" expense. |
| 7/26/2022 | GAF V | Lint | Fifth Third | 4807 | $ 285,962.58 | $ (283,000.00) | Same Day | On 7/26/22 $200,000 was transferred to Medical Capital Solutions labeled as "Management Services" expense and $83,000 was transferred to Lint Chiropractic JP Morgan Chase account ending '0000. Three days later on 7/29/22 Lint Chiropractic JPMorgan Chase accounting ending '0000 transferred $100,000 to account ending '9899 which is MI Medical Management. |

39. When the Receiver requested Dr. Super produce copies of the bank statements for the recipient entities, Dr. Super refused.

40. It is clear from the Profit and Loss Statements that the Defendants transferred the majority of amounts reported as income to other entities owned and/or controlled by Dr. Super and recorded such transfers as an expense item labeled "Management Fees/Services."

41. In support of the alleged "management fees," Dr. Super provided two management service agreements. The first agreement was between Lint Chiropractic, P.C., MI Medical Management, LLC and Diagnostic Chiropractic, P.C. The second agreement was between Lint Chiropractic, P.C., MI Medical Management, LLC. and Lint Chiropractic II, P.C. Both agreements appeared to be identical and contained sections regarding management fees, however the terms and amounts were blank. In addition, Dr. Super executed both agreements on behalf of all the entities involved and, when interviewed by the Receiver, confirmed that all of these entities are owned and controlled by him and stated that the entities "were" him.

11

Document received by the MI Wayne 3rd Circuit Court.

42. Notably, management services agreements were not provided to support management fees paid to Medical Capital Solutions, and no agreements were produced related to Supplies Plus MI, LLC.

43. The Receiver identified the following accounts that were recipients of Genesis loan proceeds (following their brief shelf life with the Defendants); however, Dr. Super refused to provide the recipient bank account statements:

| Bank Account No. | Entity | Produced |
|---|---|---|
| 7072 | MI Medical Mgt | NO |
| 9899 | MI Medical Mgt | NO |
| 3028 | Medical Capital Solutions | NO |
| 9527 | Dr. Super Personal Account | NO |
| 3201 | Dr. Super Personal Account | NO |
| 6788 | Dr. Super Personal Account | NO |
| 8292 | Lint II, Professional Services | NO |

44. Given all of the foregoing, it is the Receiver's opinion that there are significant avoidance actions available under MCL § 566.5431, *et seq.* that can and should be pursued.

## RECOMMENDATION AND CONCLUSION

The Receiver believes that it is appropriate that the Court order the expansion of his powers in order to assume full control of the Defendants' assets and to pursue claims against third parties in order to recover fraudulent transfers and/or any other claims in law or equity available. The Defendants simply have no hope of repaying the funds they readily admit owing to the Plaintiffs.

*[Signature on following page]*

Document received by the MI Wayne 3rd Circuit Court.

Respectfully submitted,
**STEVENSON & BULLOCK, P.L.C.**

By: /s/ Charles D. Bullock
Charles D. Bullock (P55550)
*Court Appointed Receiver*
Elliot G. Crowder (P76137)
*Counsel for Receiver*
26100 American Drive, Suite 500
Southfield, MI 48034
Phone: (248) 354-7906
Facsimile: (248) 354-7907
Email: cbullock@sbplclaw.com
Email: ecrowder@sbplclaw.com

Dated: March 28, 2025

13

Document received by the MI Wayne 3rd Circuit Court.

**EXHIBIT C**

**STATE OF MICHIGAN**
**IN THE BUSINESS COURT**
**FOR THE COUNTY OF WAYNE**

GENESIS ALTERNATIVE FINANCE IV LLC,
and GENESIS ALTERNATIVE FINANCE V LLC,

      Plaintiffs,

v.

LINT CHIROPRACTIC PC, DIAGNOSTIC
CHIROPRACTIC MI, P.C., and SUPPLIES
PLUS MI, LLC.,

      Defendants.

Case No. 24-010404-CB
Hon. Annette J. Berry

---

## ORDER FOR RECEIVERSHIP AND OTHER RELIEF

At a session of said Court held in the Courthouse in
the City of Detroit County of Wayne, and
State of Michigan on ___January 8___, 2024

**PRESENT: HON.** JUDGE ANNETTE J.
              **Circui**BERRY**rt Judge**

This matter coming before the Court on Defendants' motion to withdraw and for a stay of proceedings and on Plaintiffs' motion for appointment of a Receiver, and the Court being fully advised in the premises, the Court has determined that:

- it has jurisdiction over this matter, under, *inter alia*, MCL 600.2926.

- Genesis has demonstrated at least an apparent right, title, or interest in certain accounts receivable held by Defendants

- Genesis has demonstrated that some or all of those accounts or their revenue-producing potential appear to be in danger of waste, loss, dissipation, or impairment

1

- the appointment of Charles D. Bullock as Receiver (as defined below) is just and appropriate under the circumstances

- the Receiver's authority and duties as set forth below are both just and appropriate

- notice requirements under MCL 554.1013 have been satisfied

- good cause exists to enter this Order

- multiple grounds set forth in MCL 554.1016 appear to be satisfied for the appointment of a receiver.

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

**I.     Secured Accounts Receivable and Letter of Direction.**
A.     Defendants will execute and either will send or will cause to be sent letters of direction to all collections counsel substantially in the form of Exhibit 1 to this Order.

B.     All incoming payments for outstanding Genesis-related accounts receivable owed to Defendants will be routed directly to the account referenced in Exhibit 1.

C.     Any disagreement concerning amounts due to Plaintiffs will not excuse payment of undisputed amounts.

D.     Until further contrary order of the Court, all individual Genesis-related receivables will be treated as part of a "batch." For the avoidance of doubt, this "batch" treatment means that Genesis is entitled to and should receive and retain the full amount of each payment for any individual receivable until Plaintiffs have received

the full value of the total amount pledged to Plaintiffs for all Genesis-related receivables.

**II.  Receivership**

A.  Effective and commencing immediately upon the entry of this Order, Charles D. Bullock (P55550) of Stevenson & Bullock, P.L.C., 26100 American Drive, Suite 500, Southfield, MI 48034 (the "Receiver") shall be and is hereby appointed as Receiver over Lint Chiropractic PC, Diagnostic Chiropractic MI, P.C., and Supplies Plus MI, LLC (collectively, the "Businesses") with the powers as receiver of the Businesses as set forth herein, exclusively for the purposes of carrying out the Receiver's obligations under this Order.

B.  Authority of the Receiver.

1.  The Receiver is appointed pursuant to, *inter alia*, MCL § 600.2926 and MCR 2.622.

2.  The purposes of this Receivership include the preparation of the Accounting and Receiver Report (the "Report") detailed below.

3.  The Receiver is authorized to exercise all powers and authority reasonably necessary to prepare the Report detailed below.

4.  Without limiting the foregoing, the Receiver shall have the powers to employ and to contract with professionals and others, including but not limited to counsel, accountants, assistants, agents, private investigators, consultants, advisors, bookkeepers, and other third-parties (collectively, the "Professionals") as he deems necessary to carry out his duties related to preparation of the Report.

5. The Receiver is authorized, directed and vested with the authority to access all books, records, financial accounts, and any other information in the possession of, or relating to the Businesses' assets and property, real, personal, or mixed, tangible and intangible, and wherever situated, , whether maintained in physical or electronic form, for the purpose of preparing the Report detailed below (collectively, the "Receivership Records"), and to exercise control over the Receivership Estate, and will have, among others, the following specific powers:

6. The Receiver and his Professionals may review confidential patient records as necessary and appropriate to discharge the Receiver's duties and responsibilities under this Order, provided however, that the Receiver protects the confidentiality of such records as required under applicable law and regulations including, but not limited to, the Health Insurance Portability and Accountability Act of 1996 and the federal HIPAA privacy regulations at 45 Code of Federal Regulations.

C. This Court retains jurisdiction to hear additional motions.

1. After the filing by the Receiver of the Report, upon motion by any party or upon application by the Receiver, the Court will consider whether to expand or reduce the scope of the Receiver's authority.

2. This Court retains jurisdiction to hear and determine all matters arising from or related to the implementation and enforcement of this Order.

D.     The authority granted to the Receiver is self-executing, unless the action otherwise requires approval by this Court.

**III.     Accounting and Receiver Report**

A.     An accounting shall be performed about all accounts receivable in which any of Plaintiffs alleges an interest (i.e. accounts receivable which have been identified as security for amounts advanced by Genesis). The information of the accounting shall include (but need not be limited to):

1.     the patient name,

2.     provider facility,

3.     dates of service,

4.     bill amount,

5.     amount advanced,

6.     whether the advance was by or from Genesis IV or V,

7.     date of advance,

8.     case status,

9.     date when provider collected funds,

10.     gross amount collected as returns,

11.     amount of returns paid to Genesis, and

12.     amount retained by provider (i.e., the difference between the previous two items)).

B.     To the extent the servicer or any party or anyone acting on behalf of a party has prepared such an accounting, the Receiver shall begin by reviewing such prepared accounting.

C.  The Receiver shall prepare a Report on

1.  Accounts receivable;

2.  Whether any Defendant has received payments on any Genesis-related account receivable that the Defendant did not pay over to Genesis and, if so, the details of those receipts, including whether the funds remain in the possession of any Defendant and, if not, when and to whom they were transferred;

3.  The status of any other amounts owed by one or more of Defendants to Genesis;

4.  Defendants' current assets;

5.  Whether Defendants have sufficient assets to satisfy debts to Genesis;

6.  Any other information set forth in Section III(A) necessary to complete the Report;

7.  Any other information that, in the Receiver's reasonable business judgment, is relevant or necessary.

D.  The Receiver must file his Report with the Court no later than Monday, February 17, 2025.

E.  Subject to the other rules governing the filing of confidential information, the Receiver will be in compliance with the February 17, 2025 deadline if he files a report with potentially confidential information redacted, provided he also

files the appropriate requests to redact, to file unredacted versions underseal, or both by February 17, 2025.

**IV. Additional Provisions about Receiver.**

A. Defendants and their principals, officers, and executives must cooperate with the Receiver.

1. Defendants, including their principals, officers, executives, agents, affiliates, and assigns must make available to the Receiver for inspection and copying all of the records concerning the Receivership Estate as the Receiver determines, in his good-faith reasonable business judgment, to be necessary or helpful for the Receiver, to fulfill his duties under the terms of this Order.

2. The Plaintiff and Defendants and their agents and employees shall fully cooperate with the Receiver at all times during the pendency of the receivership.

3. Absent further order of the Court, disagreement as to whether requested cooperation is necessary, helpful, or appropriate to the Receiver does not excuse the requirement to cooperate.

4. The failure of one or more Defendants to cooperate with the Receiver (such as, for example, refusing to answer in good-faith one or more questions asked by the Receiver) will be cause for entry of a order expanding the Receiver's powers, holding one or more Defendants in contempt of court, similar appropriate relief, or some combination thereof.

B.    Compensation:    The Receiver and his Professionals shall receive compensation for their services, payable from the Receivership Estate at their prevailing rates, which range from $135.00 per hour to $470.00 per hour, notwithstanding any statutory presumption.

1.    The Receiver and his Professionals shall also be reimbursed for out-of-pocket expenses related to the performance of their duties.    The compensation and reimbursed expenses shall be an administrative claim against the Receivership Estate and entitled to priority over any and all secured, priority, and unsecured claims.

2.    The Receiver and his Professionals shall issue invoices to the parties to this action, through their respective counsel (as applicable), on a monthly basis.

3.    The Receiver and his Professionals may receive payment on a monthly basis, without further Court Order, provided no objections are filed with the Court and served upon the Receiver, his Professionals, and all other parties in interest within ten (10) business days after such invoices are sent by electronic mail to all parties' counsel of record or principal of the party if such party is unrepresented.

a.    In the event that an objection is timely filed with the Court and served upon the Receiver, Professionals, and all other parties in interest, and after the Receiver rejects that objection in whole or in part,

8

in writing, the objecting party shall file a motion with this Court requesting that this Court determine the propriety of the fees sought.

b.      In the event that the objecting party fails to file a motion with this Court within five (5) business days after being informed in writing that the Receiver rejects the objection in whole or in part, the objection to the requested fees or expenses is waived.

c.      In the objection and the motion, the objecting party shall articulate with specificity which time or expense entries are objectionable and the reason for the objection.

d.      In the event that a motion is timely filed, the Receiver is authorized to pay himself and his Professionals those fees and expenses to which no objection has been raised.

4.      The Receiver may instruct the Defendants to pay (from assets of the Receivership Estate) any and all of the Professionals from the Receivership Estate.

a.      Defendants must acknowledge any such instruction within one business day and must make such payment within five calendar days.

b.      If, following Receiver's instruction, one or more Defendants either fail to acknowledge the instruction within one business day or fail to make such payment within five calendar days (or both), the Receiver may apply for immediate emergency relief, including but not limited to an order

removing authority over Defendants' assets from Defendants (and their principals, officers, and agents) and granting such authority to the Receiver.

      i.     Defendants will be liable for any fees and costs incurred by the Receiver or *any party* in connection with such application for emergency relief and related proceedings.

      ii.    The foregoing paragraph IV(B)(4)(i) does not limit or restrict any other source of liability of Defendants for fees or costs.

5.    In the event that the assets of the Receivership Estate is are insufficient to pay the ***approved*** compensation for the Receiver and his Professionals, the Plaintiffs shall pay the same, which shall be added to the indebtedness owed to Plaintiffs by Defendants and shall be secured by any liens possessed by Plaintiffs. Nothing in this paragraph IV(B)(5) is meant to limit the rights of Plaintiffs (or any other party or the Receiver) under any other part of this paragraph IV(B), any other part of this Order, or under law.

C.    <u>Immunity</u>

1.    Neither the Receiver nor his Professionals shall be liable for any claim, objection, liability, action, cause of action, cost, or expense of the Plaintiff, Defendants, or Receivership Estate arising out of or relating to events or circumstances occurring prior to this Order, including, without limitation, any contingent or unliquidated obligations and any liability from the performance of services rendered by third parties on behalf of the Receivership Estate, and any liability to which the Receivership Estate is currently or may

ultimately be exposed under any applicable laws pertaining to the ownership, use, or operation of the Receivership Estate (collectively, all of the foregoing are referred to as the "Pre-Receivership Liabilities"). Similarly, neither the Receiver nor his Professionals shall be liable for any claim, objection, liability, action, cause of action, cost, or expense of Plaintiff, Defendants, or Receivership Estate arising out of the performance of receivership duties without the express written permission of this Court authorizing a lawsuit against the Receiver or the Professionals.

2. The Receiver and his Professionals, employees, agents, and attorneys shall have no personal liability, and they shall have no claim asserted against them relating to the Receiver's duties under this Order, except for claims due to their intentional tortious acts, breaches of fiduciary duty, gross negligence, gross or willful misconduct, acts committed in bad faith, malicious acts, and/or the failure to comply with the Court's Orders.

D. Restraint on action against Receiver and Receivership Estate: Except as otherwise ordered by this Court, the parties, their agents, and employees, and all other persons with notice of this Order (other than the Receiver) are restrained and enjoined from directly or indirectly transferring, encumbering, removing, expending, distributing, concealing, destroying, mutilating, damaging, erasing, altering, disposing of, or otherwise diminishing any property of the Receivership Estate, doing any act to interfere with the Receiver from carrying out his duties.

11

1. Nothing in this paragraph IV(D) restricts the rights of Genesis with respect to its security interests.

2. To the extent that any other lender or other creditor of one or more Defendants has a security interest in any accounts receivable or other asset of one or more Defendants, Defendants may identify that lender or other creditor and the security interests, with specificity, to both Plaintiffs and Receiver. Following such identification, nothing in this paragraph IV(D) will restrict the rights of those lenders or other creditors with respect to their security interests, absent further order of the Court.

E. Directives to financial institutions, employers, and others:

1. Pending further order of this Court, any financial or brokerage institution, business entity, or person, that holds, controls, or maintains custody of any account or asset, or at any time since May 18, 2021, has held, controlled, managed or maintained custody of any account or asset owned by, in the name or for the benefit of the Receivership Estate, shall:

    a. Provide the Receiver, within five (5) business days of receiving a copy of this Order, a statement setting forth:

        i. The identification number of each and every account or asset tiled in the name, individually or jointly, of or held on behalf of, or for the benefit of the Receivership Estate;

        ii. The balance of each such account, or a description of the nature and value of such asset as of the close of business on

the day on which this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed to close the account, and the name of the person or entity to whom such account or other asset was remitted;

iii.    The identification of any safe deposit box that is either titled in the name of the Receivership Estate or jointly with, another person or entity or is otherwise subject to access by the Receivership Estate; and

iv.    Upon request by the Receiver, promptly provide copies of all records or other documentation pertaining to such account or asset, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, and all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs.

F.    Delivery of possession of Receivership Estate to Receiver

1.    This Court commands the Sheriff of Wayne, or any other court officer that the Receiver may choose to employ, that without delay, deliver to the Receiver possession of the Receivership Records (as defined above to include all books, records, financial accounts, and any other information in the possession of, or relating to the

Businesses' assets and property, real, personal, or mixed, tangible and intangible, and wherever situated, , whether maintained in physical or electronic form, for the purpose of preparing the Report) and, if necessary, to use force as required and if the premises are not voluntarily opened to use a locksmith for said purpose.

2. After service of this Order upon the Plaintiff, Defendants, and any other person or entity served with a copy of this Order, shall deliver to the Receiver:

a. Possession and custody of documents of the Receivership Estate, including but not limited to, all books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), title documents and other papers;

b. All keys, computer passwords, entry codes, and combination locks necessary to gain access or to secure access to any of the assets or documents of the Receivership Estate, including but not limited to; means of communications, account, computer systems, or other property; and

c. Information identifying the accounts, properties or other assets or obligations of the Receivership Estate.

G. Miscellaneous

1. Each Defendant and any entity in which any of the Defendants have a controlling or majority interest must execute any document deemed necessary by the Receiver, including but not limited to a Business Associate Agreement in the form approved by the Receiver. A sample Business Associate Agreement is attached hereto as Exhibit B; however, Receiver may, in his sole discretion, modify the Business Associate Agreement.

2. The Receiver shall, during the pendency of this action, have the right to apply to this Court for further instructions or directions.

3. The Receiver shall not be responsible for the preparation or filing of any tax returns for the Receivership Estate (including income, personal property, commercial activity, gross receipts, sales and use, or other tax returns) other than to provide the parties with information in the Receiver's possession that is necessary for the parties to prepare such tax returns.

4. The Receiver shall file and serve his acceptance of this receivership.

5. The Receiver is not required to post a bond.

V. **Limitations on disposition, disbursement, and encumbrance of assets**

A. Defendants have represented that they are not conducting any business other than the collection of accounts receivable, and that this business is being handled by collections counsel.

B. Defendants therefore may not disburse, dispose of, or otherwise encumber assets without the express authorization of the Receiver for any purpose, except as necessary

1.    to retain and pay counsel, or

2.    to pay amounts owed to Plaintiffs.

C.    These limitations on disposition, disbursement, and encumbrance of accounts receivable which have been identified as security for amounts advanced by Genesis, like all other aspects of this Order, are subject to review and modification by the Court and do not apply to payments of amounts owed to Plaintiffs.

## VI.    Counsel for Defendants.

A.    Fink Bressack's motion to withdraw as counsel is GRANTED.

B.    Defendants must retain replacement counsel and ensure that such counsel files an appearance no later than Friday, January 17, 2025.

1.    If any one or more Defendants fail to cause counsel to appear by Friday, January 17, 2025, that failure will constitute a default by that Defendant.

2.    If any one or more Defendants fail to cause counsel to appear by Friday, January 17, 2025, that failure will be grounds for entry of a default judgment against Defendants.

C.    The depositions previously noticed for January 16 and 17, 2025 are ADJOURNED to a future date to be scheduled once Defendants' new counsel has filed an appearance.

D.    The parties may not serve discovery on one another or file any motions with respect to this litigation, until Monday. February 17, 2025.

E. Notwithstanding the foregoing, the parties are not restricted from filing motions to amend this order or motions otherwise concerning the scope of the Receiver's authority.

**This is not a final order and does not close the case.**

/s/ Annette J. Berry
January 8, 2025

1/8/2025

**Date**

**CIRCUIT COURT JUDGE**

**APPROVED AS TO FORM ONLY**

/s/ Michael Leo Pomeranz
**TAFT STETTINIUS & HOLLISTER, LLP**
Michael Leo Pomeranz (P84908)
Kenneth I. Nelson (P87217)
*Attorneys for Plaintiffs*
27777 Franklin Road, Suite 2500
Southfield, MI 48034
248.351.3000
mpomeranz@taftlaw.com
knelson@taftlaw.com

/s/ David H. Fink
**FINK BRESSACK**
David H. Fink (P28235)
Nathan J. Fink (P75185)
David A. Bergh (P83696)
38500 Woodward Ave., Suite 350
Bloomfield Hills, MI 48304
248-971-2500
dfink@finkbressack.com
nfink@finkbressack.com
dbergh@finkbressack.com

# EXHIBIT 1

EMAIL COVER NOTICE

Email Subject Line: OFFICIAL NOTICE: *Update to Servicing and Payment Information of Certain Receivables*

Dear [LAW FIRM],

We write to inform you that pursuant to that certain Servicing Agreement between Quantum Outsourcing Group ("Servicer") and Lint Chiropractic, P.C., Diagnostic Chiropractic MI, P.C., and Supplies Plus MI, LLC (collectively, "Provider"), dated December 11, 2023, Quantum is now servicing those receivables set forth in the attached Exhibit A. Please note all payoff information, payments for these accounts and reduction and payoff requests should be directed to Quantum at the address listed below.

We are attaching an irrevocable letter of instruction confirming this arrangement and ask that you return a signed copy of the acknowledgement attached as soon as possible.

Servicer now has the sole right and authority to perform all servicing activities with respect to the listed receivables including collection of payment. Accordingly, please direct all payments relating to the receivables listed in Exhibit A to Servicer at the following address.

| Payment should be remitted to Quantum Outsourcing at the address listed below: | |
| --- | --- |
| For USPS standard mail: | Quantum Outsourcing<br>PO Box 786112<br>Philadelphia, PA 19178 |
| For private carriers (e.g., FedEx, UPS), overnight deliveries, or deliveries requiring signature: | Lockbox Services 786112<br>ATTN: Quantum Outsourcing<br>Mac Y1372-045<br>2005 Market Street, 5th Floor<br>Philadelphia, PA 19103 |

For any servicing related inquires, please reach out to asad@quantumog.com.

Any payment made in a manner, or to a recipient, other than in accordance with the instructions set forth herein will be insufficient to discharge the applicable payor's obligations in respect of the subject accounts.

Additionally, Servicer (Quantum) will be in touch to verify case status on all of the outstanding cases for our records. We appreciate your full cooperation as they complete this important function.

Sincerely,

Robert Super
Lint Chiropractic
Supplies Plus
Diagnostic Chiro

FORMAL LETTER

INSERT NAME AND ADDRESS OF LAW FIRM

Re: *Update to Servicing and Payment Information of Certain Receivables*

Dear Sir or Madam:

My name is Robert Super, the CEO of Lint Chiropractic, Supplies Plus, and Diagnostic Chiro (collectively, "Provider"), with authority to bind Provider. Pursuant to that certain Servicing Agreement between Quantum Outsourcing Group ("Servicer") and Provider, dated December 11, 2023, Servicer is now servicing those receivables set forth in the attached Exhibit A. Provider has conveyed to Servicer the right to service and collect payments for the receivables related to those cases listed on Exhibit A (attached).

Provider hereby irrevocably instructs and authorizes you to pay all monies from time to time owing or that become due in relation to those cases listed on Exhibit A as follows:

| Payment should be remitted to Quantum Outsourcing at the address listed below: | |
| --- | --- |
| For USPS standard mail: | Quantum Outsourcing<br>PO Box 786112<br>Philadelphia, PA 19178 |
| For private carriers (e.g., FedEx, UPS), overnight deliveries, or deliveries requiring signature: | Lockbox Services 786112<br>ATTN: Quantum Outsourcing<br>Mac Y1372-045<br>2005 Market Street, 5th Floor<br>Philadelphia, PA 19103 |

You shall direct funds to the above address unless and until such time as you receive written notice from **SERVICER** with alternate instructions. This authority and instruction may not be modified, terminated or revoked without the prior written consent of **SERVICER**. Provider <u>may not</u> modify, terminate or revoke these instructions.

Any requests for payoff amounts or reductions must be addressed in writing to Servicer at asad@quantumog.com.

As you may know, attorneys have an ethical and legal obligation to properly direct funds upon settlement of a case, and may face civil liability or other consequences for failure to properly do so. *See, e.g., Alaska Ethics Op. 92-3 (1992); Alabama Ethics Op. 90-48 (1990); California Ethics Op. 1988-101 (1988); Ohio Ethics Op. 95-12 (1995);* and *Wisconsin Ethics Op. E-09-01 (2017)*. Servicer will pursue any and all available remedies should payment for the subject receivables be misdirected.

Each time any funds are transferred to Servicer pursuant to the above instructions, you shall send an email containing the patient name(s) and claim number(s) to which the funds relate, the amount of funds transferred, and the date of the transfer to rsuper@allcaremgt.com.

Any payment made in a manner, or to a recipient, other than in accordance with the instructions set forth herein will be insufficient to discharge the applicable payor's obligations in respect of the subject accounts.

Please signify your acknowledgment and agreement hereto by signing and returning to Servicer the acknowledgment and confirmation set out below.

Very truly yours,

_____

(signature)

Robert Super, CEO
Lint
Supplies Plus
Diagnostic Chiro

Gary Smith, CEO
Quantum Outsourcing Group
2963 Gulf to Bay Blvd
Suite 120
Clearwater, FL 33759

| | |
|---|---|
| | |

## ACKNOWLEDGMENT AND AGREEMENT

I HEREBY ACKNOWLEDGE AND AGREE AS OF THE __ DAY OF _____, 202_ THAT I HAVE READ AND UNDERSTOOD THE LETTER FROM [LINT ET AL] AND QUANTUM OUTSOURCING GROUP ("SERVICER") IN REFERENCE TO THE SERVICING UPDATE RELATED TO SERVICING AND PAYMENTS OF CERTAIN RECEIVABLES AND MY LAW FIRM WILL DIRECT PAYMENTS RELATED TO THE RECEIVABLES REFERENCED IN THAT LETTER ONLY TO SERVICER AT THE FOLLOWING ADDRESS:

| Payment should be remitted to Quantum Outsourcing at the address listed below: | |
| --- | --- |
| For USPS standard mail: | Quantum Outsourcing<br>PO Box 786112<br>Philadelphia, PA 19178 |
| For private carriers (e.g., FedEx, UPS), overnight deliveries, or deliveries requiring signature: | Lockbox Services 786112<br>ATTN: Quantum Outsourcing<br>Mac Y1372-045<br>2005 Market Street, 5th Floor<br>Philadelphia, PA 19103 |

I WILL PROVIDE INFORMATION SERVICER MAY REASONABLY REQUEST FROM TIME TO TIME THAT DOES NOT VIOLATE ATTORNEY/CLIENT PRIVILEGE;

IN THE EVENT I CEASE FOR ANY REASON TO BE COUNSEL, I WILL NOTIFY SERVICER OF SUCH FACT AND OF ANY SUCCESSOR COUNSEL, AND WILL NOTIFY SUCCESSOR COUNSEL, AND ANY PERSON WHO INQUIRES, OF MIGHTY'S INTEREST AND LIEN;

I WILL *NOT* DISBURSE ANY FUNDS WHATSOEVER TO CLIENT WITHOUT FIRST PAYING SERVICER IN FULL. I ACKNOWLEDGE THAT ANY PAYMENT MADE IN A MANNER, OR TO A RECIPIENT, OTHER THAN IN ACCORDANCE WITH THE INSTRUCTIONS SET FORTH HEREIN WILL BE INSUFFICIENT TO DISCHARGE THE APPLICABLE PAYOR'S OBLIGATIONS IN RESPECT OF THE SUBJECT ACCOUNTS.

_____

[LAW FIRM]

**EXHIBIT 2**

<strong><u>Business Associate Agreement</u></strong>

This Business Associate Agreement (the "Agreement") is made effective as of _____ by and between Charles D. Bullock, Receiver (the "Receiver") and _____.

1. **Definitions.**
   a. The following terms used in this Agreement shall have the same meaning as those terms in the HIPAA Rules: Breach, Data Aggregation, Designated Record Set, Disclosure, Health Care Operations, Individual, Minimum Necessary, Notice of Privacy Practices, Protected Health Information, Required By Law, Secretary, Security Incident, Subcontractor, Unsecured Protected Health Information, and Use.

   b. <u>Business Associate</u>. "Business Associate" shall generally have the same meaning as the term "Business Associate" at 45 CFR 160.103, and in reference to the party to this agreement, shall mean the Receiver.

   c. <u>Covered Entity</u>. "Covered Entity" shall generally have the same meaning as the term "Covered Entity" at 45 CFR 160.103, and in reference to the party to this agreement, shall mean [Insert Name of Covered Entity].

   d. <u>HIPAA Rules</u>. "HIPAA Rules" shall mean the Privacy, Security, Breach Notification, and Enforcement Rules at 45 CFR Part 160 and Part 164.

2. **Obligations and Activities of Business Associate**
   a. Business Associate agrees to:
      i. Not use or disclose protected health information other than as permitted or required by the Agreement or as required by law;

      ii. Use appropriate safeguards, and comply with Subpart C of 45 CFR Part 164 with respect to electronic protected health information, to prevent use or disclosure of protected health information other than as provided for by the Agreement; and

25

iii.     Report to Covered Entity any use or disclosure of protected health information not provided for by the Agreement of which it becomes aware, including breaches of unsecured protected health information as required at 45 CFR 164.410, and any security incident of which it becomes aware;

iv.     In accordance with 45 CFR 164.502(e)(1)(ii) and 164.308(b)(2), if applicable, ensure that any subcontractors that create, receive, maintain, or transmit protected health information on behalf of the Business Associate agree to the same restrictions, conditions, and requirements that apply to the Business Associate with respect to such information;

v.     Make available protected health information in a designated record set to the Covered Entity as necessary to satisfy Covered Entity's obligations under 45 CFR 164.524;

vi.     Make any amendment(s) to protected health information in a designated record set as directed or agreed to by the Covered Entity pursuant to 45 CFR 164.526, or take other measures as necessary to satisfy Covered Entity's obligations under 45 CFR 164.526;

vii.     Maintain and make available the information required to provide an accounting of disclosures to the Covered Entity as necessary to satisfy Covered Entity's obligations under 45 CFR 164.528;

viii.     To the extent the Business Associate is to carry out one or more of Covered Entity's obligation(s) under Subpart E of 45 CFR Part 164, comply with the requirements of Subpart E that apply to the Covered Entity in the performance of such obligation(s); and

ix.     Make its internal practices, books, and records available to the Secretary for purposes of determining compliance with the HIPAA Rules.

3. **Permitted Uses and Disclosures by Business Associate**
   a. Business Associate may use or disclose protected health information pursuant to the terms and in the *Order for Receivership* (the "Receivership Order") entered in the Circuit Court for the County of Wayne, Case No. 24-010404-CB (the "Litigation") and as necessary to accomplish the purpose of the receivership.

   b. Business Associate may use or disclose protected health information as required by law.

   c. Business Associate agrees to make uses and disclosures and requests for protected health information consistent with the Receivership Order.

   d. Business Associate may use protected health information for the proper management and administration of the Business Associate or to carry out the legal responsibilities of the Business Associate.

   e. Business Associate may disclose protected health information for the proper management and administration of Business Associate or to carry out the legal responsibilities of the Business Associate, provided the disclosures are required by law, or Business Associate obtains reasonable assurances from the person to whom the information is disclosed that the information will remain confidential and used or further disclosed only as required by law or for the purposes for which it was disclosed to the person, and the person notifies Business Associate of any instances of which it is aware in which the confidentiality of the information has been breached.

4. **Provisions for Covered Entity to Inform Business Associate of Privacy Practices and Restrictions**
   a. Covered Entity shall notify Business Associate of any limitation(s) in the notice of privacy practices of Covered Entity under 45 CFR 164.520, to the extent that such limitation may affect Business Associate's use or disclosure of protected health information.

b. Covered Entity shall notify Business Associate of any changes in, or revocation of, the permission by an individual to use or disclose his or her protected health information, to the extent that such changes may affect Business Associate's use or disclosure of protected health information.

c. Covered Entity shall notify Business Associate of any restriction on the use or disclosure of protected health information that Covered Entity has agreed to or is required to abide by under 45 CFR 164.522, to the extent that such restriction may affect Business Associate's use or disclosure of protected health information.

5. **Term and Termination**
   a. <u>Term and Termination</u>. The Term of this Agreement shall be effective as of the Effective Date and shall terminate on the date Business Associate terminates this Agreement or the date of the entry of an order terminating the Business Associate as receiver in the Litigation, whichever is sooner.

EXHIBIT
D

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE
BUSINESS COURT DIVISION

GENESIS ALTERNATIVE FINANCE IV LLC,
and GENESIS ALTERNATIVE FINANCE V LLC,

Case No. 24-010404-CB
Hon. Annette J. Berry

Plaintiffs,

v

LINT CHIROPRACTIC PC, DIAGNOSTIC
CHIROPRACTIC MI, P.C., and SUPPLIES
PLUS MI, LLC.,

Defendants.

| TAFT STETTINIUS & HOLLISTER, LLP | THE LAW OFFICES OF GREGORY J. |
|---|---|
| Michael Leo Pomeranz (P84908) | ROHL, P.C. |
| Attorney for Plaintiffs | Gregory J. Rohl (P39185) |
| 27777 Franklin Road, Suite 2500 | Attorney for Defendants |
| Southfield, MI 48034 | 4051 Haggerty Road |
| (248) 351-3000 | West Bloomfield, MI 48323 |
| mpomeranz@taftlaw.com | (248) 380-9404 |
| | greg@rohllaw.com |

## ORDER GRANTING PLAINTIFFS' MOTION TO HOLD DEFENDANTS IN CONTEMPT OF COURT AND FOR SANCTIONS

At a session of said Court held in the Circuit Court
for the County of Wayne, City of Detroit, State of Michigan,
on _____ 4/7/2025

PRESENT: JUDGE ANNETTE J.
BERRY

This matter having come before the Court on Plaintiffs' Motion to Hold Defendants in

Contempt of Court and for Sanctions and the Court being otherwise fully advised in the premises:

**IT IS HEREBY ORDERED** that Defendants' principals, Dr. Robert Super and Rick

Geller will sit for depositions in Michigan, without prejudice to Plaintiffs deposing other witnesses,

including corporate representatives of Defendants.

**IT IS FURTHER ORDERED** that within seven (7) days from the entry of this Order, Defendants will pay Plaintiffs $10,000 for attorneys' fees and costs related to dealings with the Receiver and bringing the Motion to Hold Defendants in Contempt of Court and for Sanctions, without prejudice to Plaintiffs' right to seek additional fees and costs later in the litigation.

**IT IS SO ORDERED**.

*This Order does not resolve the last pending claim or close the case.*

DATED: ___4/7/2025___

/s/ Annette J. Berry
___April 7, 2025___
CIRCUIT COURT JUDGE

APPROVED AS TO FORM AND CONTENT NOTICE OF ENTRY WAIVED:

TAFT STETTINIUS & HOLLISTER LLP        THE LAW OFFICES OF GREGORY J. ROHL, P.C.

*/s/ Michael Leo Pomeranz*          /s/
Michael Leo Pomeranz (P84908)       Gregory J. Rohl (P39185)
Attorney for Plaintiffs             Attorney for Defendants

EXHIBIT
E

**STATE OF MICHIGAN**
**IN THE BUSINESS COURT**
**FOR THE COUNTY OF WAYNE**

GENESIS ALTERNATIVE FINANCE IV LLC, and GENESIS ALTERNATIVE FINANCE V LLC,

Plaintiffs,

v.

LINT CHIROPRACTIC P.C., DIAGNOSTIC CHIROPRACTIC MI, P.C., SUPPLIES PLUS MI, LLC., ROBERT SUPER, and RICHARD GELLER,

Defendants.

Case No. 24-010404-CB

Hon. Annette J. Berry

| | |
|---|---|
| Michael Leo Pomeranz (P84908)<br>Kenneth I. Nelson (P87217)<br>Andrew M. Creal (P83806)<br>Taft Stettinius & Hollister LLP<br>Attorneys for Plaintiffs<br>27777 Franklin Rd., Ste. 2500<br>Southfield MI 48034<br>(248) 351-3000<br>mpomeranz@taftlaw.com<br>knelson@taftlaw.com<br>acreal@taftlaw.com | Gregory J. Rohl (P39185)<br>The Law Offices of Gregory J. Rohl, P.C.<br>Attorney for Defendants<br>4051 Haggerty Road<br>West Bloomfield, MI 48323<br>(248) 380 9404<br>greg@rohllaw.com |

## PLAINTIFFS' BRIEF ON DAMAGES

Plaintiffs Genesis Alternative Finance IV LLC ("GAF IV") and Genesis Alternative Finance V LLC ("GAF V") (collectively, "Genesis"), by and through their undersigned counsel, respectfully submit this Brief on Damages pursuant to this Court's Opinion and Order dated February 26, 2026 (attached hereto as **Ex A**).

The Court granted Genesis summary disposition on the breach of contract claims (Counts I and IX), the statutory conversion claim (Count III), and the common law conversion claim (Count IV), and ordered the parties to submit briefs as to the amount of damages within three weeks of entry of the Order. The Court further held that the corporate veil should be pierced as to Defendant Robert Super personally.

1

The Court should enter a damages award in the total amount of $5,710,844.91, plus any outstanding costs owed to the Receiver, as to Defendants Lint Chiropractic P.C. ("Lint"), Diagnostic Chiropractic MI, P.C. ("Diagnostic"), Supplies Plus MI, LLC ("Supplies Plus"), and Robert Super ("Dr. Super").

## I. FACTUAL BACKGROUND AND SUMMARY DAMAGES CALCULATIONS

Genesis advanced millions of dollars Lint, Diagnostic and Supplies Plus under clear written agreements, supported by promissory notes, which guaranteed repayment from specified secured receivables. *Exs C–O*, *Promissory Notes*; *See also Pltfs MSD, Ex 3*. These entities, led by their principals Dr. Super and Richard Geller ("Geller"), accepted those funds, pledged security interests, and executed promissory notes – then transferred the funds, via several corporate shells, to Dr. Super and Geller, who failed to honor their obligations.

Further, Defendants retained approximately $572,751.57 in collections that should have been remitted to Genesis, constituting conversion. *Ex Q*, *Receiver Summary*. As set forth below, Genesis is entitled to damages on each count on which it was granted summary disposition.

The damages for Defendants' Breaches of Contract (Counts I and IX) are $3,211,221.73, plus prejudgment interest of $289,665.61 (through April 14, 2026, and accruing at approximately $437.22 per day thereafter), plus reasonable attorneys' fees and costs pursuant to the fee-shifting provisions of the promissory notes (totaling no less than $233,788.13 in fees and $7,063.30 in costs as explained in the accompanying affidavit.) The actual damages for Statutory Conversion (Count III) $572,751.57, trebled under MCL 600.2919a, plus reasonable attorney's fees and

2

costs.[1] The damages for Defendants' Common Law Conversion (Count IV) are damages of $572,751.57, plus prejudgment interest of $57,825.60 (through April 14, 2026, and accruing at approximately $78.04 per day thereafter). However, Genesis acknowledges that the damages for common law conversion are likely duplicative to its statutory conversion claim and is not seeking recovery for both conversion claims – only statutory conversion.

Further, Genesis is also entitled to the $10,000 sanctioned amount issued against Defendants Lint, Diagnostic, and Supplies Plus on April 7, 2025. *See Sanction Order Dated April 7, 2025*. In total, Genesis is entitled to recover from Defendants Lint, Diagnostic, Supplies Plus, and Robert Super, individually, the total amount of $5,710,844.91 which includes prejudgment interest and reasonable attorneys' fees as described below.

| | | |
|---|---|---|
| Breach of contract | $ | 3,211,221.73 |
| Prejudgement interest | $ | 289,665.61 |
| Contractual Fees | $ | 233,788.13 |
| Contractual Costs | $ | 7,063.30 |
| Statutory Conversion | $ | 1,718,254.71 |
| Statutory Fees | $ | 233,788.13 |
| Statutory Costs | $ | 7,063.30 |
| Common Law Conversion | $ | 572,751.57 |
| Prejudgement interest | $ | 57,825.60 |
| Sanction | $ | 10,000.00 |
| **Sum** | **$** | **6,341,442.08** |
| **Sum (excluding common law conversion)** | **$** | **5,710,844.91** |

## II. PROCEDURAL HISTORY

Genesis filed its original Verified Complaint on July 19, 2024. *See* Verified Complaint dated July 19, 2024. On January 8, 2025, this Court appointed Charles D.

---

[1] Because the statutory scheme provides attorneys fees and costs, like the trebling of damages, as a deterrent to and sanction for bad behavior, the Court may and should award fees and costs on this Count in addition to awarding the fees and costs under the Promissory Notes.

Bullock as Receiver over Lint, Diagnostic, and Supplies Plus. *See* Order for Receivership dated January 8, 2025. Defendants Lint, Diagnostic, and Supplies Plus were sanctioned in the amount of $10,000 on April 7, 2025. *See* Order for Sanctions dated April 7, 2025. Genesis filed an Amended Complaint on August 12, 2025 adding Dr. Super and Geller as individual Defendants. *See* Amended Complaint.

On February 26, 2026, this Court found Lint, Diagnostic, and Supplies Plus liable for breach of contract (Counts I and IX), statutory conversion and common law conversion (Counts III and IV) and further found that Dr. Super is personally liable for the damages sought for these claims. ***Ex A***, *Opinion and Order*. The Court further required the parties to submit additional briefing on damages. *Id.* Trial in this matter was previously scheduled for the following dates: July 29, 2025, October 28, 2025, January 2026. Trial is currently scheduled for April 14, 2026.

## III. DAMAGES BY COUNT

### A. Breach of Contract — Counts I and IX (Breach of the Underlying Agreements and the Agreement Regarding Servicing)

#### i. Contractual Damages

This Court found that Defendants breached both the Underlying Agreements and the Agreement Regarding Servicing. ***Ex A***, *Opinion and Order*. Under the Underlying Agreements, Defendants agreed to pay Genesis all "Return Amounts" within fifteen months of the commencement date of each promissory note. ***Exs C–O***, *Promissory Notes*. The "Return Amount" under each promissory note is the principal amount multiplied by the applicable contractual multiplier — 1.8x for all notes except those involving a 1.5x multiplier for Supplies Plus MI, LLC and the GAF IV notes for Lint Chiropractic. *Id.* The promissory notes further provide that, in the event of default, Genesis may accelerate all amounts due. *Id.*

Defendants have failed to pay the full Return Amounts and are in default. Defendants have paid only $892,893.77 in total returns. *Ex B, Damages Calculation Spreadsheet.* After crediting all returns received against outstanding balances, the total contractual damages owing to Genesis under the promissory notes is $3,211,221.73. *Id.* This sum is calculated as follows:

### 1. GAF IV — Lint Chiropractic, PC

GAF IV advanced a total of $316,540.63 to Lint Chiropractic, carrying a Return Amount multiplier of 1.5x, yielding a total Note Value of $474,810.95. *Ex B, Damages Calculation Spreadsheet.* After crediting $67,811.53 in returns received, the total outstanding amount owed is $406,999.42. *Id.*

### 2. GAF V — Lint Chiropractic, PC

GAF V advanced a total of $1,514,900.31 to Lint Chiropractic under eight promissory notes, each carrying a Return Amount multiplier of 1.8x, yielding a total Note Value of $2,726,820.56. *Exs C–J, Lint Promissory Notes.* After crediting $522,247.01 in returns received, the total outstanding amount owed is $2,204,573.55. *Ex B, Damages Calculation Spreadsheet.* The eight individual promissory notes are as follows:

(a) Promissory Note dated September 15, 2021, in the principal amount of $104,525.00 (Return Amount: $104,525.00 x 1.8 = $188,145.00). (*See Ex C.*)

(b) Promissory Note dated October 18, 2021, in the principal amount of $144,960.96 (Return Amount: $144,960.96 x 1.8 = $260,929.73). (*See Ex D.*)

(c) Promissory Note dated December 1, 2021, in the principal amount of $262,250.98 (Return Amount: $262,250.98 x 1.8 = $472,051.76). (*See Ex E.*)

(d) Promissory Note dated December 16, 2021, in the principal amount of $135,056.25 (Return Amount: $135,056.25 x 1.8 = $243,101.25). (*See Ex F.*)

(e) Promissory Note dated January 15, 2022, in the principal amount of $122,143.75 (Return Amount: $122,143.75 x 1.8 = $219,858.75). (*See **Ex G**.*)

(f) Promissory Note dated March 18, 2022, in the principal amount of $124,675.00 (Return Amount: $124,675.00 x 1.8 = $224,415.00). (*See **Ex H**.*)

(g) Promissory Note dated May 13, 2022, in the principal amount of $337,622.95 (Return Amount: $337,622.95 x 1.8 = $607,721.31). (*See **Ex I**.*)

(h) Promissory Note dated July 15, 2022, in the principal amount of $283,962.58 (Return Amount: $283,962.58 x 1.8 = $511,132.64). (*See **Ex J**.*)

### 3. GAF V — Supplies Plus MI, LLC

GAF V advanced a total of $277,200.00 to Supplies Plus under three promissory notes, each carrying a Return Amount multiplier of 1.5x, yielding a total Note Value of $415,800.00. ***Ex K–M**, Supplies Plus Promissory Notes*. After crediting $201,169.77 in returns received, the total outstanding amount owed is $214,630.23. ***Ex B**, Damages Calculation Spreadsheet*. The three individual promissory notes are:

(a) Promissory Note dated December 30, 2021, in the principal amount of $62,160.00 (Return Amount: $62,160.00 x 1.5 = $93,240.00). (*See **Ex K**.*)

(b) Promissory Note dated March 1, 2022, in the principal amount of $120,240.00 (Return Amount: $120,240.00 x 1.5 = $180,360.00). (*See **Ex L**.*)

(c) Promissory Note dated May 13, 2022, in the principal amount of $94,800.00 (Return Amount: $94,800.00 x 1.5 = $142,200.00). (*See **Ex M**.*)

### 4. GAF V — Diagnostic Chiropractic MI, PC

GAF V advanced a total of $270,380.00 to Diagnostic Chiropractic under two promissory notes, each carrying a Return Amount multiplier of 1.8x, yielding a total Note Value of $486,684.00. ***Ex N–O**, Diagnostic Promissory Notes*. After crediting $101,665.46 in returns received, the total outstanding amount owed is $385,018.54. ***Ex B**, Damages Calculation Spreadsheet*. The two individual promissory notes are:

(a) Promissory Note dated March 18, 2022, in the principal amount of $67,200.00 (Return Amount: $67,200.00 x 1.8 = $120,960.00). (*See **Ex N**.*)

(b) Promissory Note dated June 14, 2022, in the principal amount of $206,520.00 (Return Amount: $206,520.00 x 1.8 = $371,736.00). (*See **Ex O**.*)

### ii. Summary of Breach of Contract Damages

| Entity | Fund | Principal Advanced | Note Value | Returns Received | Total Outstanding |
|---|---|---|---|---|---|
| Lint Chiropractic PC | GAF IV | $316,540.63 | $474,810.95 | $67,811.53 | $406,999.42 |
| Lint Chiropractic PC | GAF V | $1,514,900.31 | $2,726,820.56 | $522,247.01 | $2,204,573.55 |
| Supplies Pus MI LLC | GAF V | $277,200.00 | $415,800.00 | $201,169.77 | $214,630.23 |
| Diagnostic Chiropractic MI PC | GAF V | $270,380.00 | $486,684.00 | $101,665.46 | $385,018.54 |
| **TOTAL** | | **$2,379,020.94** | **$4,104,115.51** | **$892,893.77** | **$3,211,221.73** |

### iii. Attorney's Fees and Costs on the Breach of Contract Claims

Each of the promissory notes expressly provides that "Borrower shall reimburse Lender for all expenses, including reasonable attorney fees and legal expenses that Lender pays or incurs in attempting to enforce or collect on this Note." **Ex C–O**, *Promissory Notes*. Accordingly, Genesis is entitled to recover its reasonable attorney's fees and costs incurred in prosecuting this action to enforce the promissory notes. In total, Genesis has incurred $233,788.13 in attorneys' fees and $7,063.30 in costs as set forth in the accompanying affidavit of counsel. **Ex. P**.

### iv. Prejudgment Interest on the Breach of Contract Claims

Under MCL 600.6013(8), interest on a money judgment recovered in a civil action is calculated at six-month intervals from the date of filing the complaint at a rate

of interest equal to 1% plus the average interest rate paid at auctions of 5-year United States Treasury notes during the six months immediately preceding July 1 and January 1, as certified by the State Treasurer, and compounded annually. Interest under this subsection is calculated on the entire amount of the money judgment, including attorney fees and other costs. *Id.*

Genesis filed its original complaint on July 19, 2024. *See July 19, 2024 Complaint.* Accordingly, the applicable statutory interest rates, calculated at six-month intervals from the date of filing, are estimated as follows:

The following rates are the certified rates published by the Michigan Department of Treasury pursuant to MCL 600.6013(8) (*See **Ex S***):

| Period | Certified 5-Year Treasury Average | MCL 600.6013 Rate (Treasury + 1%) |
|---|---|---|
| July 1, 2024 – December 31, 2024 | 4.359% | 5.359% |
| January 1, 2025 – June 30, 2025 | 4.016% | 5.016% |
| July 1, 2025 – December 31, 2025 | 4.083% | 5.083% |
| January 1, 2026 – June 30, 2026 | 3.725% | 4.725% |

Applying these certified rates to the breach of contract damages of $3,211,221.73 from the date of filing (July 19, 2024) through an assumed judgment date of April 14, 2026, the prejudgment interest on the breach of contract claims is calculated as follows:

**Year 1 (July 19, 2024 – July 18, 2025):**

| Sub-Period | Days | MCL 600.6013 Rate | Calculation |
|---|---|---|---|
| July 19, 2024 – December 31, 2024 | 166 | 5.359% | $3,211,221.73 × 5.359% × (166/365) = $78,243.86 |

| | | | |
|---|---|---|---|
| January 1, 2025 – June 30, 2025 | 181 | 5.016% | $3,211,221.73 × 5.016% × (181/365) = $79,888.52 |
| July 1, 2025 – July 18, 2025 | 18 | 5.083% | $3,211,221.73 × 5.083% × (18/365) = $8,049.21 |
| **Year 1 Total** | **365** | | **$166,181.59** |

Compounded principal after Year 1: $3,211,221.73 + $166,181.59 = $3,377,403.32

**Year 2 Partial (July 19, 2025 – April 14, 2026):**

| Sub-Period | Days | MCL 600.6013 Rate | Calculation |
|---|---|---|---|
| July 19, 2025 – December 31, 2025 | 166 | 5.083% | $3,377,403.32 × 5.083% × (166/365) = $78,073.94 |
| January 1, 2026 – April 14, 2026 | 104 | 4.725% | $3,377,403.32 × 4.725% × (104/365) = $45,410.08 |
| **Year 2 Partial Total** | **244** | | **$123,484.02** |

Total Prejudgment Interest on Breach of Contract Claims (through April 14, 2026): $289,665.61 (accruing at approximately $437.22 per day at the current rate of 4.725%).

**B.  Statutory Conversion — Count III (MCL 600.2919a)**

**i.  Actual Damages**

The Court found that Defendants' improper withdrawal and retention of funds constituted statutory conversion. Under Michigan law, a person damaged by another person's "converting property to the other person's own use" may recover "3 times the amount of actual damages sustained, plus costs and reasonable attorney fees." MCL 600.2919a(1)(a).

The actual damages for the statutory conversion claim are measured by the amount of collections that Defendants received and wrongfully retained. The Receiver's summary confirms that Defendants collected a total of $1,445,006.51 on

the secured receivables, of which $872,254.94 was remitted to Genesis, meaning that Defendants retained $572,751.57 in collections that belonged to Genesis. (*See Ex Q, Receiver's Summary Report*.) The breakdown by entity is as follows:

| Entity | Fund | Collections | Remitted to GAF | Retained by Defendants |
|---|---|---|---|---|
| Lint Chiropractic, PC | GAF V | $819,059.08 | $506,798.72 | $312,260.36 |
| Supplies Plus MI, LLC | GAF V | $299,441.33 | $200,212.95 | $99,228.38 |
| Diagnostic Chiropractic MI, PC | GAF V | $196,564.22 | $97,431.74 | $99,132.48 |
| Lint Chiropractic, PC | GAF IV | $129,941.88 | $67,811.53 | $62,130.35 |
| **TOTAL** | | **$1,445,006.51** | **$872,254.94** | **$572,751.57** |

As the Receiver confirmed, "both parties agreed as to the amounts advanced by Genesis and the remaining principal balance of the loan amounts outstanding," and Defendants do not appear to dispute these figures. *Ex R, Receiver's Report, ¶¶15, 18.* The Court itself noted that "the parties agree that the amount owing to Genesis is $1.5 million" in remaining principal alone, exclusive of agreed-upon returns. *Ex A, Opinion and Order p.15.*

The evidence further establishes that Defendants converted these funds to their "own use" as required under MCL 600.2919a(1)(a). The Receiver found that $2.35 million of the $2.38 million in loan proceeds was transferred to other entities owned and controlled by Dr. Super, or to Dr. Super personally. *Ex R, Receiver's Report p.3.* The funds were primarily sent to MI Medical Management and Medical Capital Solutions, entities owned and controlled by Dr. Super, and were used to pay Dr. Super's personal expenses, including his phone bill and personal car lease. *Id.* at ¶37; *See Pltfs' MSD, Ex 2, pp.33:1–5, 53:1–22.* The Defendants recorded Genesis's

advances as "Business Income" rather than as loans and the management service agreements offered to justify the transfers had blank financial terms. *Ex R, Receiver's Report ¶26.*

### ii. Treble Damages

Accordingly, Genesis is entitled to treble the actual damages sustained under MCL 600.2919a(1)(a).

Statutory Conversion Damages: $572,751.57 × 3 = $1,718,254.71

### iii. Attorney's Fees and Costs

In addition, MCL 600.2919a(1) provides for recovery of "costs and reasonable attorney fees." This statutory entitlement to fees and costs is independent of and cumulative to any contractual entitlement. MCL 600.2919a(2) ("The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise."). In total, Genesis has incurred $233,788.13 in fees and $7,063.30 in costs as set forth in the accompanying affidavit of counsel. *Ex. P.*

### C. Common Law Conversion — Count IV

### i. Actual Damages

The Court also granted summary disposition in favor of Genesis on its common law conversion claim. See *Ex A, Opinion and Order.* The actual damages for common law conversion are the same as for statutory conversion: the $572,751.57 in collections wrongfully retained by Defendants.

Under Michigan law, "[i]n a conversion action, interest from the date of conversion to the date of entry of judgment is to be included in the damages calculation." *Newberry State Bank v. N. Microsystems, Inc.,* No. 193110, 1998 WL 1991634, at *3 (Mich. Ct. App. June 2, 1998) (*Ex X*); see also *McPherson v. Suburban Ann Arbor, LLC,* 719 F. Supp. 3d 759, 767 (E.D. Mich. 2024), *aff'd,* 135 F.4th 419 (6th

Cir. 2025). Prejudgment interest on conversion damages runs from the date of conversion to the date of entry of judgment at the Michigan statutory rate. *Id.*

Although some funds were converted at earlier dates, for purposes of this damages calculation, Genesis uses April 18, 2024 — the date on which Defendants unlawfully withdrew funds from the deposit account — as the date of conversion. *See Pltfs' First Amended Complaint ¶98.* Accordingly, prejudgment interest should be calculated on the full $572,751.57 from April 18, 2024 to the date of entry of judgment.

### ii.　Prejudgment Interest on Common Law Conversion Damages

Under MCL 600.6013(8), the applicable interest rate is 1% plus the average interest rate paid at auctions of 5-year United States Treasury notes during the six months immediately preceding July 1 and January 1, compounded annually. Using April 18, 2024 as the date of conversion, the estimated applicable rates for each six-month period from that date through the anticipated judgment date are as follows:

The following rates are the certified rates published by the Michigan Department of Treasury pursuant to MCL 600.6013(8) (*See Ex S*):

| Period | Certified 5-Year Treasury Average | MCL 600.6013 Rate (Treasury + 1%) |
|---|---|---|
| January 1, 2024 – June 30, 2024 | 4.392% | 5.392% |
| July 1, 2024 – December 31, 2024 | 4.359% | 5.359% |
| January 1, 2025 – June 30, 2025 | 4.016% | 5.016% |
| July 1, 2025 – December 31, 2025 | 4.083% | 5.083% |
| January 1, 2026 – June 30, 2026 | 3.725% | 4.725% |

Applying these certified rates to $572,751.57 from April 18, 2024 through an assumed judgment date of April 14, 2026, the prejudgment interest on the common law conversion damages is calculated as follows:

**Year 1 (April 18, 2024 – April 17, 2025):**

| Sub-Period | Days | MCL 600.6013 Rate | Calculation |
|---|---|---|---|
| April 18, 2024 – June 30, 2024 | 74 | 5.392% | $572,751.57 × 5.392% × (74/365) = $6,259.91 |
| July 1, 2024 – December 31, 2024 | 184 | 5.359% | $572,751.57 × 5.359% × (184/365) = $15,471.32 |
| January 1, 2025 – April 17, 2025 | 107 | 5.016% | $572,751.57 × 5.016% × (107/365) = $8,422.03 |
| **Year 1 Total** | **365** | | **$30,153.26** |

Compounded principal after Year 1: $572,751.57 + $30,153.26 = $602,904.83

**Year 2 Partial (April 18, 2025 – April 14, 2026):**

| Sub-Period | Days | MCL 600.6013 Rate | Calculation |
|---|---|---|---|
| April 18, 2025 – June 30, 2025 | 74 | 5.016% | $602,904.83 × 5.016% × (74/365) = $6,131.33 |
| July 1, 2025 – December 31, 2025 | 184 | 5.083% | $602,904.83 × 5.083% × (184/365) = $15,451.59 |
| January 1, 2026 – April 14, 2026 | 104 | 4.725% | $602,904.83 × 4.725% × (104/365) = $8,125.74 |
| **Year 2 Partial Total** | **336** | | **$27,672.34** |

Total Prejudgment Interest on Common Law Conversion Damages (through April 14, 2026): $57,825.60 (accruing at approximately $78.04 per day at the current rate of 4.725%).

## IV.     ELECTION OF REMEDIES AND AVOIDANCE OF DOUBLE RECOVERY

Genesis acknowledges that it may not obtain a double recovery for the same harm. The breach of contract damages ($3,211,221.73) represents the total

contractual Return Amounts outstanding after crediting all payments received. The conversion damages ($572,751.57 in actual damages, trebled to $1,718,254.71 for statutory conversion) are based on the specific amounts collected by Defendants and wrongfully withheld from Genesis.

To the extent these damages overlap, Genesis respectfully requests that the Court enter judgment in the amount that provides Genesis with its full recovery without duplication. The breach of contract damages of $3,211,221.73 represent the largest single measure of damages on the contractual claims. In addition, to the extent the statutory conversion treble damages and fees exceed what would be recovered under the contract claim alone for the converted amounts, Genesis is entitled to the benefit of the statutory multiplier and fee-shifting under MCL 600.2919a, as the statute expressly provides that the remedy is "in addition to any other right or remedy the person may have at law or otherwise." MCL 600.2919a(2).

Genesis respectfully requests that the Court also make a specific finding as to the conversion damages. One or more Defendants may pursue bankruptcy. Debts arising from conversion, like other debts arising out of fraud or malice, generally are not dischargeable in bankruptcy. *See, e.g.*, 11 USC § 523(a). Genesis requests that this Court enter a judgment for damages and clarify the damages on its conversion claim to assist in any future bankruptcy proceedings for a determination of the nondischargeability of those damages.

## V.  SUMMARY OF DAMAGES SOUGHT

| Claim | Measure | Amount |
|---|---|---|
| Breach of Contract (Counts I & IX) | Total outstanding Return Amounts under 13 promissory notes, less payments received | $3,211,221.73 |

| Statutory Conversion (Count III) | 3× actual damages of $572,751.57 in wrongfully retained collections (MCL 600.2919a) | $1,718,254.71 |
|---|---|---|
| Common Law Conversion (Count IV) | Actual damages of $572,751.57 | $572,751.57 |
| Contractual Attorney's Fees | Per promissory note fee-shifting provisions | $233,788.13 |
| Statutory Attorneys' Fees | Per MCL 600.2919a(1) | $233,788.13 |
| Contractual Costs | Per promissory note fee-shifting provisions | $7,063.30 |
| Statutory Costs | Per MCL 600.2919a(1) | $7,063.30 |
| Prejudgment Interest (Contract) | Per MCL 600.6013(8), at certified Treasury rates + 1%, compounded annually, from date of filing (July 19, 2024) to judgment | $289,665.61 (through 4/14/26; accruing ~$437.22/day) |
| Prejudgment Interest (Conversion) | Per MCL 600.6013(8), at certified Treasury rates + 1%, compounded annually, from April 18, 2024 to judgment | $57,825.60 (through 4/14/26; accruing ~$78.04/day) |
| Order for Sanctions | $10,000 (See Order for Sanctions dated April 7, 2025) | $10,000 |
| Total (excluding duplicative common law conversion damages) | | **$5,710,844.91** |

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs Genesis Alternative Finance IV LLC and Genesis Alternative Finance V LLC respectfully request that the Court enter judgment in their favor and against Defendants Lint Chiropractic, PC, Diagnostic Chiropractic MI, PC, Supplies Plus MI, LLC, and Robert Super, individually, in the total amount of $3,211,221.73 in breach of contract damages, plus $1,718,254.71 in statutory conversion damages (to the extent not duplicative of breach of contract damages), plus any outstanding costs owed to the Receiver, together with prejudgment interest,

sanctioned amounts, reasonable attorney's fees and costs as provided by contract and statute, and such other and further relief as the Court deems just and proper.

Respectfully submitted,

**TAFT STETTINIUS & HOLLISTER, LLP**

/s/ Michael Leo Pomeranz
Michael Leo Pomeranz (P84908)
Kenneth I. Nelson (P87217)
Andrew M. Creal (P83806)
*Attorneys for Plaintiffs*
27777 Franklin Road, Suite 2500
Southfield, MI 48034
248.351.3000
mpomeranz@taftlaw.com
knelson@taftlaw.com
acreal@taftlaw.com

Dated: April 8, 2026

# Exhibit A

# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

**GENESIS ALTERNATIVE FINANCE IV LLC,**
**and GENESIS ALTERNATIVE FINANCE V LLC,**

    **Plaintiffs,**                            **Case No. 24-010404-CB**

-v-                                       **Hon. Annette J. Berry**

**LINT CHIROPRACTIC, PC, DIAGNOSTIC**
**CHIROPRACTIC MI, PC, SUPPLIES**
**PLUS MI, LLC., ROBERT SUPER, and**
**RICHARD GELLER,**

    **Defendants.**

---

## OPINION AND ORDER

At a session of said Court held in the Coleman A. Young Municipal Center, Detroit, Wayne County, Michigan,   2/26/2026 on this:_____

**PRESENT:** Hon. Annette J. Berry
                              Circuit Judge

This civil matter is before the Court on a motion for summary disposition filed by Plaintiffs Genesis Alternative Finance IV LLC and Genesis Alternative V LLC (collectively "Genesis"). For the reasons stated below, the Court grants in part and denies in part the motion.

## I. BACKGROUND

On July 19, 2024, Genesis filed a complaint against Lint Chiropractic, PC, Diagnostic Chiropractic MI, PC, Supplies Plus MI, LLC, Robert Super, and Richard

Geller. On August 12, 2025, Plaintiffs filed an amended complaint containing nine counts: (1) Breach of Contract (as to Agreement Regarding Servicing); (2) promissory estoppel (in the alternative to breach of contract); (3) statutory conversion; (4) common law conversion; (5) embezzlement of a security; (6) promise made in bad faith; (7) indemnification and attorneys' fees under the Underlying Agreements; (8) appointment of a receiver; and (9) breach of contract (as to the Underlying Agreements).

Defendants Lint Chiropractic, PC ("Lint") and Diagnostic Chiropractic MI, PC ("Diagnostic") are professional corporations with offices located in Southfield, Michigan. Supplies Plus MI, LLC ("SPM") is a Michigan limited liability company also located in Southfield, Michigan. Lint, Diagnostic, and SPM provide chiropractic services and medical and surgical products to individuals who are injured in automobile accidents and are subject to what is commonly known as the Michigan No-Fault Act, MCL 500.8101, *et seq*, and later bills for those medical and surgical services. Defendant Robert Super is an individual, and principal of Diagnostic, Lint, and Supplies Plus, who resides in Tampa, Florida and conducts business in Wayne County, Michigan. Robert Super is a chiropractor. Defendant Richard Geller is an individual and has been describe as General Counsel for Diagnostic, Lint and Supplies Plus.

By way of background, in 2021, Defendants sought funding from Genesis and Genesis provided Defendants approximately $2.4 million in funding under three agreements: (a) No-Fault Auto Advance Security Agreement between Genesis and Lint, dated May 18, 2021 and September 14, 2021; (b) No-Fault Auto Advance Security Agreement between Genesis and SPM, dated December 9, 2021; and (c) No-Fault Auto

Advance Security Agreement between Genesis and DCM, dated December 9, 2021(collectively, "the Underlying Agreements"). In short, Defendants accepted the funds, pledged security interests, and executed promissory notes.

Under the agreements, Genesis provided advance capital to Defendants, in exchange for which, Defendants assigned to Genesis property rights in and to medical receivables. The receivables are medical bills incurred by Defendants' patients and payable by insurance companies under the No-Fault Act. Defendants provided Genesis a first priority security interest on specific receivables, which are identified in UCC 1s that have been filed. Defendants pursued collection of certain receivables, but failed to pay Genesis what they owe.

Genesis then sued Defendants in a prior case, Case No. 22-013065-CB, seeking repayment of the loan. In that case, the parties entered into an agreement named "Agreement Regarding Servicing" after the Court[1] appointed a receiver. Also, in that case, after the parties stipulated to dissolve the first receivership and temporary restraining order, the parties participated in mediation. After mediation, the Court entered a stipulated order regarding a monthly reconciliation process. The order required that each Defendant deposit all funds collected on any secured account into the specific bank account designated for that Defendant. According to Genesis, Defendants disregarded its required obligations under the Second Interim Stipulated Order. For example, Genesis alleges that Defendants wired $80,000.00 out of the bank account, with no notification to or permission from Genesis. Ultimately, Defendants restored the $80,000 to the account.

---

[1] Case No. 22-013065-CB was originally presided over by the retired judge, Hon. David A. Groner. That case was then reassigned to this Court.

Thus far, Defendants have only repaid $824,882.07. According to Genesis, Defendants have collected approximately $1.4 million and have retained about $570,000.00, which should have been paid to Genesis pursuant to the Underlying Agreements.

In July 2023, Genesis executed an agreement with Quantum ("Genesis-Quantum Agreement"). Under this agreement, Quantum, as a servicer, began to work with Defendants to service, administer, and collect on the accounts. Defendants represented that they were cooperating with Quantum. Quantum and Defendants (referred to as "Providers") then entered into the above mentioned "Agreement Regarding Servicing." The agreement expressly names Genesis as a third-party beneficiary that is entitled to enforce the terms of the agreement. The agreement also provided that Quantum was permitted to monitor and collect outstanding amounts owed by Defendants under the Underlying Agreements. The Agreement Regarding Servicing obligates Defendants to provide reconciliation reports and settlement statements. According to Genesis, with the Agreement Regarding Servicing in place along with Defendants' apparent cooperation, the parties agreed to dismiss the prior case. The Court entered a stipulated order dismissing the case without prejudice.

The instant action again arises out of the loan made by Genesis to Defendants in the amount of $2.4 million. It essentially is a claim regarding Defendants' failure to abide by the Agreement Regarding Servicing. The Agreement Regarding Servicing provides in pertinent part:

> 2. Without limitation of, or modification or waiver of, any of the terms or provisions of the Transaction Documents …Providers hereby acknowledge and agree as follows:

(a) Each Provider shall ensure that Servicer has access to its billing systems…

(b) <u>Each Provider shall cause all Collections to be remitted directly to the Bank Account, and shall not deposit or at any time comingle the same with any other funds of Providers.</u> Each Provider shall provide Servicer and Genesis at all times with real-time view-access to the Bank Account. Distributions from the Bank Account shall only be made once Servicer, on behalf of Genesis, has provided written disbursement instructions to Providers setting forth Servicer's approval of the Collections Reconciliation Report and the amounts and manner in which such Collections should be disbursed ("Distribution Confirmation"). …

(c) Each Provider shall provide to Servicer and Genesis, on or before the fifteenth (15th) day of each month, and consistent with the Order, a full Collection Reconciliation Report identifying all Collections received by Providers during the immediately preceding month in respect of the Secured Receivables.

\*\*\*

(e) Within five (5) business days of any settlement of a Claim, Providers shall send to Servicer and Genesis a full and complete settlement statement from the applicable Claims Counsel…

\*\*\*

5. This Agreement shall be binding upon and inure to the benefit of Servicer, Providers and their respective successors and assigns; provided, however, that <u>Genesis shall be an express third-party beneficiary of this Agreement and shall be entitled to enforce there (sic) terms hereof</u> …

\*\*\*

8. <u>SERVICER AND EACH PROVIDER HEREBY IRREVOCABLY WAIVE ALL RIGHT TO TRIAL BY JURY</u> IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT.

[Plaintiffs' Motion, Exhibit 7] [Emphasis added].

In addition, in this case, the Court entered an order appointing Charles D. Bullock as receiver. The Court's order provided in relevant part:

- Genesis has demonstrated at least an apparent right, title, or interest in certain accounts receivable held by Defendants

- Genesis has demonstrated that some or all of those accounts or their revenue-producing potential appear to be in danger of waste, loss, dissipation, or impairment

[Plaintiffs' Motion, Exhibit 8].

The Court's order also provided in relevant part:

A. Defendants will execute and either will send or will cause to be sent letters of direction to all collections counsel substantially in the form of Exhibit 1 to this Order.

\*\*\*

C. Any disagreement concerning amounts due to Plaintiffs will not excuse payment of undisputed amounts.

[Id] [Emphasis added].

Receiver Bullock issued his report on March 28, 2025. His relevant findings included the following:

### Introduction

The loan advances never remained in the Defendants' accounts for more than a few days. Rather, the Defendants made transfers out of their respective bank accounts, either the same day, or in close proximity to, the date Plaintiffs advanced the funds. When questioned regarding these transfers, Dr. Super identified the recipients all as entities he owned and controlled. Further, in support of the alleged "management fees," Dr. Super provided only two management service agreements -- both of which lacked financial terms and both of which show Dr. Super on both sides of the transaction.

\*\*\*

18. The Receiver discussed each of the files with Dr. Super and representatives Genesis, and …both parties agreed as to the amounts advanced by Genesis and the remaining principal balance of the loan amounts outstanding.

\*\*\*

20. The Receiver's analysis shows that GAF V advanced approximately $2.1 million to Defendants and GAF IV advanced approximately $300,000 solely to Lint Chiropractic, for a total of approximately $2.4 million. The amount of these advances were (sic) verified via a review of Defendants' bank statements and detailed general ledgers, as well as transaction dates and banking information provided by Genesis

21. To date, Defendants have collected approximately $1.4 million related to the subject suits, of which, approximately $870,000 has been remitted to Genesis and approximately $570,000 has been retained by the Defendants. <u>Based on the forgoing, the remaining principal balance owed to Genesis, exclusive 0f any agreed upon returns, is approximately $1.5 million</u>.

\*\*\*

24. When the Receiver requested copies of bank statements to corroborate this position, Dr. Super refused to provide them, claiming that the request was outside of the purview of the instant litigation.

25. … <u>The Receiver is of the firm belief that Dr. Super's refusal to provide the requested bank statements is to shield further discovery by the Receiver regarding the substantial transfers made from the Defendants to MI Medical Management.</u>

26. … there is no record of a loan amount due to Genesis in either the Defendants' detailed general ledgers or tax returns. Rather (and remarkably), the <u>Defendants' recorded Genesis' advances as "Business Income" in their books and records, rather than a loan</u>.

27. In sum, it appears the parties are in agreement regarding the data included in the Accounting Criteria and that Genesis is owed no less than $1.5 million …

c. ***The Defendants are unlikely to satisfy the debts owed to Genesis from collections***

\*\*\*

29. Defendants' collective cash balance in their respective checking and savings accounts totaled $3,776.70 as 0f January 31, 2025, and was deemed to be immaterial for purposes of assessing Defendants' ability to repay the subject Genesis loans.

\*\*\*

30. The primary remaining assets held by the Defendants consist of a face value of approximately $5.1 million of active collection suits filed by various law firms; however, collectability is suspect. Indeed, numerous insurance companies have filed lawsuits against Defendant Lint Chiropractic alleging it submitted fraudulent, unlawful, and/or excessive insurance claims for services to Michigan auto accident victims.

31. Since the entry of the Receivership Order on January 8, 2025, Genesis has only received $17,535.00 in the lockbox account ordered pursuant to such order.

\*\*\*

34. Given the foregoing, the Defendants are unable to satisfy debts owed to Genesis from simply collection of outstanding receivables.

d. ***Defendants transferred nearly all of the Genesis loan proceeds to insiders***

36. **Based upon the Receiver's review, of the $2.38 million of loan proceeds advanced by Genesis, $2.35 million was transferred out from the Defendants to other Super related entities or to Dr. Super personally.**

37. The loan advances never remained in the Defendants' accounts for more than a few days. Rather, the Defendants

8

made transfers out of their respective bank accounts, either the same day, or in close proximity to, the date Genesis advanced the funds. According to the Defendants' detailed general ledgers, the transfers out were recorded as an expense for "Management Fees/Services" and the funds were primarily sent to MI Medical Management and Medical Capital Solutions accounts at JP Morgan Chase bank (accounts ending 7072/9899 and 3028, respectively).

***

39. <u>When the Receiver requested Dr. Super produce copies of the bank statements for the recipient entities, Dr. Super refused.</u>

40. It is clear from the Profit and Loss Statements that the <u>Defendants transferred the majority of amounts reported as income to other entities owned and/or controlled by Dr. Super and recorded such transfers as an expense item labeled "Management Fees/Services."</u>

41. In support of the alleged "management fees," Dr. Super provided two management service agreements. The first agreement was between Lint Chiropractic, P.C., MI Medical Management, LLC and Diagnostic Chiropractic, P.C. The second agreement was between Lint Chiropractic, P.C., MI Medical Management, LLC. and Lint Chiropractic II, P.C. Both agreements appeared to be identical and contained sections regarding management fees, however the terms and amounts were blank. In addition, <u>Dr. Super executed both agreements on behalf of all the entities involved and, when interviewed by the Receiver, confirmed that all of these entities are owned and controlled by him and stated that the entities "were" him</u>.

42. Notably, management services agreements were not provided to support management fees paid to Medical Capital Solutions, and no agreements were produced related to Supplies Plus MI, LLC.

**RECOMMENDATION AND CONCLUSION**

The Receiver believes that it is appropriate that the Court order the expansion of his powers in order to assume full control of the Defendants' assets and to pursue claims against third parties in order to recover fraudulent transfers and/or any other claims in law or equity available. The Defendants

simply have no hope of repaying the funds they readily admit owing to the Plaintiffs.

[Plaintiffs' Motion, Exhibit 20] [Italics and bold type in original] [Underlining added].

Discovery in this case closed on April 11, 2025. Depositions of Bianca Dhall, Lint's last and sole employee of Ml Medical Management, and Defendant Dr. Super were taken. Both Dr. Super and Geller have submitted affidavits. Now before the Court is Genesis' motion for summary disposition in regard to: (1) the breaches of contract; (2) unjust unrichment (in the alternative to breach of contract); (3) statutory conversion; (4) common law conversion; and (5) embezzlement of a security.

## II. STANDARDS FOR DETERMINING MOTIONS FOR SUMMARY DISPOSITION

Plaintiffs base their motion on MCR 2.116(C)(10). "'A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint.'" *Marion v Grand Trunk W R Co*, 513 Mich 220; 15 NW3d 180, 184 (2024), quoting *Maiden v Rozwood*, 461 Mich. 109, 120, 597 N.W.2d 817 (1999). In reviewing a motion under MCR 2.116(C)(10), a court must consider the pleadings, admissions, affidavits, and other relevant documentary evidence submitted in the light most favorable to the nonmoving party. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). If no genuine issue of material fact is established, the moving party is entitled to judgment as a matter of law. *Maiden, supra* at 120. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v General Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

The moving party has the initial burden of supporting its position through documentary evidence. *Quinto v Cross and Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). The burden then shifts to the opposing party to establish the existence of a genuine issue of material fact. *Id.* The non-moving party "... may not rest on the mere allegations or denials of his or her pleadings, but must, by affidavit or otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116 (G)(4). If the opposing party fails to do so, the motion for summary disposition is properly granted. Id.; *Quinto, supra* at 363. Finally, a "reviewing court may not employ a standard citing the mere possibility that the claim might be supported by evidence produced at trial. A mere promise is insufficient under our court rules." *Maiden, supra* at 121.

### III. <u>DISCUSSION</u>

In support of the motion, Genesis first argues that Defendants breached both the Underlying Agreements and the Agreement Regarding Servicing. The only responsive argument put forth by Defendants is that the "initial documents executed by and between the parties contained a NON-RECOURSE provision and that Plaintiffs were only obligated to pay "once certain identified cases came to fruition…" Defendants argue that this is a condition precedent for Defendants' obligation to pay on the accounts receivable.

In the Court's view, Defendants' response fails to address the fact that Defendants received $1.2 million in collectibles, yet paid only approximately $870,000 to Genesis. Moreover, as Genesis argues, "although 'non-recourse' language appears in the title of certain Security Agreements, it does not appear within the Promissory Notes." A "nonrecourse loan is a loan where the lender has agreed to limit its remedies (or recourse)

in the event of a loan default to foreclosure on the real and/or personal property collateral pledged by the borrower as security for the loan." Shelby D. Green, Joseph (Joey) E. Lubinski, (FNa2) James (Jim) C. Wine (FNa3), *NEGOTIATING NONRECOURSE CARVEOUT GUARANTIES*, Prac Real Est Law 18, 19 (2022). Thus, the security agreements in this case are nonrecourse, meaning that Genesis has no ability to foreclose on the accounts receivable, which secure the loan, (No-Fault cases), but may seek remedies from Defendants' other assets. See LOAN, Black's Law Dictionary (12th ed. 2024) ("**nonrecourse loan** (1941) A secured loan that allows the lender to attach only the collateral, not the borrower's personal assets, if the loan is not repaid." [Emphasis in original]). On the other hand, the promissory notes dictate the terms for repayment of the loan and consequences of default.

"'A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach.'" *Zwiker v Lake Superior State Univ*, 340 Mich App 448, 477-478; 986 NW2d 427 (2022), quoting *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014).

Here, Dr. Super's affidavit merely mirrors Defendants' argument. He stated in pertinent part:

> 4. That at no time did I commit any acts, or undertake any attempts, to defraud the plaintiff of any monies rightfully due under the existing corporate contracts.
>
> 6. The public record Plaintiffs created by fiing of the initial bogus Complaint served to destabilize Defendants business operations; …
>
> 8. "That the: initial documents executed by and between the parties contained a NON- RECOURSE provision and

obligated Defendants to pay Plaintiffs pursuant to the Agreement only once certain identified cases came to fruition regarding payment.

11. That despite the decreased revenue caused in large measure by the actions of Plaintiffs, Defendants' overhead expenses continued. The delay in insurance payments, coupled with actual denials, forced Defendants to abandon operations in Michigan.

12. That Defendant's corporate entities breached no agreements. …

[Affidavit of Defendant Super].

Dr. Super essentially blames Genesis' actions for Plaintiffs' lack of revenue. He contends that the cases initiated against Defendants in attempts to collect their debt has caused their lack of revenue. Dr. Super also contests the accuracy of Genesis' damage calculations. He claims it to be approximately $1.3 million.

Geller's affidavit offers nothing more. He merely disclaims any ownership of, control of, directorship of, or leadership role in Defendant entities. He also explains that he is General Counsel for Defendants. He asserts that he "never assumed or been assigned any personal liability in connection with the matters alleged in this case, nor [has he] entered into any personal guarantees or agreements relating to the claims asserted." He also said that he "had no access to any of the bank accounts, QuickBooks or any financial information, nor did [he] ever have any involvement in payroll."

Dr. Super also testified in a deposition that he formed MI Medical Management as a management company and he would transfer money in and out of that company's accounts to make payroll and pay for certain of his personal expenses such as his health and auto insurance, his phone bill, and his car lease .

As this Court has already determined, "Genesis has demonstrated at least an apparent right, title, or interest in certain accounts receivable held by Defendants" and "Genesis has demonstrated that some or all of those accounts or their revenue-producing potential appear to be in danger of waste, loss, dissipation, or impairment." This was confirmed by Receiver Bullock. Bullock opined that , "it appears the parties are in agreement regarding the data included in the Accounting Criteria and that Genesis is owed no less than $1.5 million." As indicated above, Bullock found the following:

> 25. … The Receiver is of the firm belief that Dr. Super's refusal to provide the requested bank statements is to shield further discovery by the Receiver regarding the substantial transfers made from the Defendants to MI Medical Management.
>
> **d. Defendants transferred nearly all of the Genesis loan proceeds to insiders**
>
> 36. **Based upon the Receiver's review, of the $2.38 million of loan proceeds advanced by Genesis, $2.35 million was transferred out from the Defendants to other Super related entities or to Dr. Super personally.**
>
> 37. The loan advances never remained in the Defendants' accounts for more than a few days. Rather, the Defendants made transfers out of their respective bank accounts, either the same day, or in close proximity to, the date Genesis advanced the funds. According to the Defendants' detailed general ledgers, the transfers out were recorded as an expense for "Management Fees/Services" and the funds were primarily sent to MI Medical Management and Medical Capital Solutions accounts at JP Morgan Chase bank (accounts ending 7072/9899 and 3028, respectively).
>
> [Plaintiffs' Motion, Exhibit 20] [Italics and bold type in original].

Bullock concluded "it is appropriate that the Court order the expansion of his powers in order to assume full control of the Defendants' assets and to pursue claims

against third parties in order to recover fraudulent transfers and/or any other claims in law or equity available. The Defendants simply have no hope of repaying the funds they readily admit owing to the Plaintiffs." [Id]. The Court agrees with Receiver Bullock and Defendants have provided no factual predicate for its argument against Genesis other than to blame litigation for their failure to generate revenue and repay their loan to Genesis. Defendants have breached both the Underlying Agreements and the Agreement Regarding Servicing. The only issue left to decide regarding these breaches is amount of damages incurred as a result of the breaches. As Bullock reported, the parties agree that the amount owing to Genesis is $1.5 million. Therefore, there is no genuine issue of material fact that Defendants breached the Underlying Agreements.

The Underlying Agreements related to Diagnostic, and Supplies Plus were executed on December 9, 2021 and the Agreement related to Lint was executed on May 18, 2021. In all, there were 13 promissory notes. Thus, under these agreements, Defendants agreed to pay Genesis all "Return Amounts" by March 9, 2023. The "Return Amounts" and the amounts prescribed in the promissory notes. The "Return Amount" under the promissory notes is the principal amount X 1.8, except that the Supplies Plus promissory note dated May 13, 2022 provides for a return amount of 1.5 X the principal amount.

Defendants failed to pay Genesis all "Return Amounts" within the 15-month contractual window. Defendants have only paid Genesis $824,882.07. Genesis contends that, due to its right to accelerate the amounts due, it is entitled to $5,165,133.98, which is the total of all the agreements. Indeed, the promissory notes provide that, in the event

of default, Genesis may accelerate all amounts due. [Plaintiffs' Motion, Exhibit 5, Underlying Agreements, Promissory Notes, ¶ 5].

There is also no doubt that Defendants failed to follow the directives of the Agreement Regarding Servicing. They removed funds from the bank account without permission, commingled the funds with their own, and failed to provide monthly Reconciliation Reports.

Defendants have failed to provide sufficient evidence to overcome Genesis' motion for summary disposition. Accordingly, the Court grants Plaintiffs' motion with respect to the breaches of contract claims. The Court will also issue a separate order to expand the receiver's powers in order to satisfy the debt owed to Genesis.

Genesis next argues that the Court should pierce the corporate veil because "Super and Geller Abused the Corporate Form of the Defendant Entities." In response, Defendants contend that Dr. Super and Geller cannot be personally liable because "neither party participated in the underlying contractual negotiations in their individual capacities, nor did they personally execute any agreements that would create individual liability." They claim that "all interactions and agreements at issue were undertaken solely by the corporate defendants." Defendants further argue that Geller should be dismissed from the case because he is not an owner of any of the defendant entities and is merely general counsel for them.

"There is a presumption that the" corporate veil "may be pierced only where an otherwise separate corporate existence has been used to subvert justice..." [Footnotes omitted] 6 Mich Civ Jur Corporations § 11. "For the corporate veil to be pierced, the corporate entity must be a mere instrumentality of another individual or entity. Further,

16

the corporate entity must have been used to commit a wrong or fraud. Additionally, and finally, there must have been an unjust injury or loss to the plaintiff." [Emphasis added] *Rymal v Baergen*, 262 Mich App 274, 293- 294; 686 NW2d 241 (2004).

"The traditional basis for piercing the corporate veil has been to protect a corporation's creditors where there is a unity of interest of the stockholders and the corporation and where the stockholders have used the corporate structure in an attempt to avoid legal obligations." *Foodland Distributors v Al-Naimi*, 220 Mich App 453, 456; 559 NW2d 379 (1996). "There is no single rule delineating when the corporate entity may be disregarded." *Id*. "Whether the veil should be pierced is an equitable determination that must be made after considering the 'entire spectrum of relevant facts.'" *Grand Rapids Assoc Ltd Partnership v Coop Props, LLC*, 495 Fed Appx 598, 601 (CA 6, 2012), quoting *Foodland Distributor*s at 380.

The factors used by courts to determine the propriety of piercing the corporate veil include: (1) whether the corporation is undercapitalized; (2) whether separate books are kept; (3) whether there are separate finances for the corporation; (4) whether the corporation is used for fraud or illegality; (5) whether corporate formalities have been followed; and (6) whether the corporation is a sham. *Glenn v TPI Petroleum, Inc*, 305 Mich App 698, 716; 854 NW2d 509 (2014).

The evidence in this case demonstrates that Dr. Super used the corporate form to "subvert justice." *Rymal, supra*. The record shows that no corporate formalities were followed. There were no boards, meetings or officers. Dr. Super testified that money received by the defendant entities were quickly transferred into MI Medical Management and money was used to pay Dr. Super's personal expenses, such as his phone bill and his

personal car lease. This was confirmed by Receiver Bullock's report. Biance Dhall, the only employee of MI Medical Management testified that, although checks were received on certain accounts, she had no idea whether and what bank accounts the defendant entities existed. She said that only Dr. Super knew about them. She also said that she was not aware of any board meetings, officers, or corporate organizational documents for any of the defendant companies. It was clear from her testimony that only Dr. Super knew about the receipt of monies and their eventual destination. She stated that, as of August 2, 2024, all chiropractic services had ceased and that the offices were cleared of all tangible assets. The cessation of services was due to the law changing in Michigan and that payments for insurance related services were significantly reduced.

As the Receiver reported, "Defendants transferred nearly all of the Genesis loan proceeds to insiders" and "$2.35 million was transferred out from the Defendants to other Super related entities or to Dr. Super personally." [Plaintiffs' Motion, Exhibit 20]. The Receiver also reported that Dr. Super refused to produce bank statements for the entities that received the loan funds. The Receiver also reported that the entities' collective bank accounts as of January 31, 2025 only had a cash balance of $3,776.70.

In the Court's view, because Dr. Super has failed to overcome his burden to produce evidence to contradict Genesis' claim and that most of the factors indicate that Dr. Super's corporations have been used to subvert justice, that no corporate formalities have been followed, that the entities were undercapitalized, and that the defendant entities are a sham, there is no question of material fact that the defendant entities are mere instrumentalities of Dr. Super. Accordingly, the corporate veil should be pierced, holding Dr. Super personally liable for the amount due. As to Defendant Geller, there is no

indication that he controlled any of the defendant entities other than to help Dr. Super in forming them. Thus, he should not be included as a person liable for the outstanding loan proceeds.

Genesis' third argument is that the defendant entities have been unjustly enriched[2] by retaining $377,698.24 in funds taken from a bank account. Notably, Defendants have failed to address this argument. Any argument Defendants may have had is deemed abandoned. *Schellenberg v Rochester Elks*, 228 Mich App 20, 49; 577 NW2d 163 (1998).[3]

"Unjust enrichment is defined as the unjust retention of money or benefits which in justice and equity belong to another. No person is unjustly enriched unless the retention of the benefit would be unjust." *Tkachik v Mandeville*, 487 Mich 38, 47–48; 790 NW2d 260 (2010) [Internal citations and quotation marks omitted]. "The elements of a claim for unjust enrichment are (1) receipt of a benefit by the defendant from the plaintiff, and (2) an inequity resulting to plaintiff from defendant's retention of the benefit." *Bellevue Ventures, Inc v Morang-Kelly Inv, Inc*, 302 Mich App 59, 64; 836 NW2d 898 (2013), citing *Dumas v Auto Club Ins. Ass'n*, 437 Mich 521, 546; 473 NW2d 652 (1991). "[T]he law operates to imply a contract in order to prevent unjust enrichment." *Id* [Citation omitted]. "However, a contract will be implied only if there is no express contract covering the same subject matter." *Belle Isle Grill Group v Detroit*, 256 Mich App 463, 478; 666 NW2d 271 (2003).

---

[2]    As Genesis notes, the Amended Complaint incorrectly labels Genesis' unjust enrichment claim as a claim for promissory estoppel.

[3]    **Error! Main Document Only.** A party may not merely announce his or her position and leave it to the Court to discover and rationalize the basis for his or her claims, nor may he or she give issues only cursory treatment with little or no citation of supporting authority. *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004). Such cursory treatment constitutes abandonment of the issue. *Id*.

Whether a specific party has been unjustly enriched is generally a question of fact. *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 193; 729 NW2d 898 (2006). "However, whether a claim for unjust enrichment can be maintained is a question of law…" *Id.* Moreover, as indicated in *Peabody v DiMeglio*, 306 Mich App 397, 408; 856 NW2d 245 (2014): "This is a purely equitable claim that is not covered by any express contract of the parties." [Citation omitted].

Here, the parties' dispute is covered by express contracts, the Underlying Agreements and the Agreement Regarding Service. The subject matter of these contracts covers the loans, the loans' terms, and the method of repayment. Thus, as a matter of law, unjust enrichment is not a viable claim. Accordingly, the Court denies Genesis' motion as to unjust enrichment.

Genesis' fourth argument is that Defendants' improper withdrawal and retention of funds constitutes common law and statutory conversion. Again, Defendants have failed to address this argument. Any argument Defendants may have had is deemed abandoned. *Schellenberg, supra.*

"[T]he scope of a common-law conversion is now well-settled in Michigan law as any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Aroma Wines & Equip, Inc v Columbian Distribution Servs., Inc*, 497 Mich 337, 351–352; 871 NW2d 136 (2015) [Internal quotation marks, footnotes, and citation omitted]. "'Conversion,' both at common law and under statute, is defined as any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Magley v M & W Inc*, 325 Mich App 307; 926 NW2d 1 (2018). The court in *Aroma Wines & Equip,*

*Inc, supra,* quoting *Thoma v Tracy Motor Sales, Inc,* 360 Mich. 434, 438; 104 NW2d 360 (1960), quoting 1 Restatement, Torts, § 222., noted that "'the ways in which a conversion may be committed: 'A conversion may be committed by

> (a) <u>intentionally dispossessing another of a chattel,</u>
> (b) intentionally destroying or altering a chattel in the actor's possession,
> (c) using a chattel in the actor's possession without authority so to use it,
> (d) <u>receiving a chattel pursuant to</u> a sale, <u>lease,</u> pledge, gift or other transaction <u>intending to acquire for himself</u> or for another <u>a proprietary interest in it,</u>
> (e) disposing of a chattel by sale, lease, pledge, gift or other transaction intending to transfer a proprietary interest in it,
> (f) misdelivering a chattel, or
> (g) <u>refusing to surrender a chattel on demand.</u>'"

> [Footnotes omitted][Emphasis added].

Additionally, the court in *Magley, supra,* at 314-315, quoting *Foremost Ins Co v Allstate Ins Co,* 439 Mich 378, 391; 486 NW2d 600 (1992) explained: "'Conversion is an intentional tort in the sense that the converter's actions are willful'" The *Magley* court also stated that "Good faith, mistake, and ignorance are not defenses to a claim of conversion." *Id* [Citations omitted].

As to statutory conversion, MCL 600.2919a provides in pertinent part:

> (1) <u>A person damaged as a result of either or both</u> of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:

> (a) <u>Another person's stealing or embezzling property or converting property</u> to the other person's own use.
> …

> (2) The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise.

> MCL 600.2919a [Emphasis added].

Thus, unlike common law conversion, an added component in statutory conversion is that a person converting property must convert the property for his or her "own use." Case law indicates that "someone alleging conversion to the defendant's 'own use' under MCL 600.2919a(1)(a) must show that the defendant employed the converted property for some purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose." *Aroma Wines, supra* at 359. Hence, "own use" may include a use for a purpose which is not the "ordinarily intended purpose."

Defendants have failed to offer any evidence to rebut the evidence provided by Genesis that they improperly withdrew funds and retained those funds. Hence, they have failed to satisfy their burden to establish the existence of a genuine issue of material fact. *Quinto, supra,* and "... may not rest on the mere allegations or denials of his or her pleadings, but must, by affidavit or otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116 (G)(4).

Because Defendants have not established the existence of a genuine issue of material fact, *Quinto, supra,* and cannot rest on mere denials "judgment, if appropriate, shall be entered against" them. MCR 2.116 (G)(4). Accordingly, the Court grants summary disposition in favor of Genesis as to the conversion claims.

Genesis' last contention is that Defendants embezzled a security. In support, Genesis cites the criminal statute, specifically MCL 750.174. Defendants provide no response to Genesis regarding embezzlement. However, the Court notes that Genesis' embezzlement claim cannot lie.

There is no separate civil cause of action for embezzlement in Michigan. Michigan courts treat embezzlement as a specific form of conversion rather than as a distinct civil tort. As noted in

the recent case, *Marko Law, PLLC v Salling,* __Mich App__; __ NW3d__; 2025 WL 3180006 (2025) at 4 "stealing and embezzling are simply specific forms of conversion." The Marko Law court explained:

> Embezzlement is defined as criminally converting property to one's own use, MCL 750.174(1), and any act of stealing property likewise involves an "act of domain wrongfully exerted over another's personal property." As a result, the statute's reference to stealing, embezzling, or converting property is best understood as a stylistic redundancy familiar in legal drafting…not as a substantive expansion of liability. Reading it otherwise would mean that the Legislature not only provided a damages enhancement but also implicitly created new civil causes of action for "stealing" and "embezzling" without defining their elements or remedies.
>
> [Footnote omitted].

Thus, Michigan's embezzlement law in MCL 750.174 establishes embezzlement as a purely criminal offense with no civil remedy provisions. MCL 750.174 contains no language creating civil causes of action, damage remedies, or private enforcement rights. Therefore, there is no separate civil cause of action for embezzlement. Embezzlement is merely a specific form of conversion as provided in MCL 600.2919a(1)(a). Because the Court has already granted summary disposition in favor of Genesis as to the conversion claims, it denies summary disposition as to the embezzlement claim as moot.

## IV. CONCLUSION

There is no genuine issue of material fact that Defendants breached the Underlying Agreements and the Agreement Regarding Servicing. The Court grants summary disposition in favor of Genesis as to the breach of contracts claims.

There is no question of material fact that the defendant entities are mere instrumentalities of Dr. Super to subvert justice. *Rymal, supra.* Accordingly, the corporate veil should be pierced, holding Dr. Super personally liable for the amounts due.  As to

23

Defendant Geller, there is no indication that he controlled any of the defendant entities and there is no evidence that he controlled the entities. Thus, Defendant Geller should not be included as a person liable for the outstanding loan proceeds.

The unjust enrichment claim is an equitable claim covered by express contracts, the Underlying Agreements and the Agreement Regarding Servicing. *Peabody, supra.* Thus, as a matter of law, unjust enrichment is not a viable claim. Accordingly, the Court denies Genesis' motion as to unjust enrichment.

As to the conversion claims, Defendants have not established the existence of a genuine issue of material fact, *Quinto, supra,* and cannot rest on mere denials. Thus, judgment is appropriate and shall be entered against them. MCR 2.116 (G)(4). Therefore, the Court grants summary disposition in favor of Genesis as to the conversion claims.

There is no separate civil cause of action for embezzlement in Michigan. Michigan courts treat embezzlement as a specific form of conversion rather than as a distinct civil tort. *Marko Law, supra.* There are no private enforcement rights contained in MCL 750.174. Nor does the statute create a civil cause of action. Therefore, as matter of law, the Court denies Genesis' motion as to the embezzlement claim.

For the reasons stated in the foregoing Opinion,

**IT IS ORDERED** that the motion for summary disposition filed by Plaintiffs Genesis Alternative Finance IV LLC and Genesis Alternative Finance V LLC is **GRANTED** as to the claims for breach of contract (Counts I and IX);

**IT IS ORDERED** that the motion for summary disposition filed by Plaintiffs Genesis Alternative Finance IV LLC and Genesis Alternative Finance V LLC is

**GRANTED** as to the claims for statutory conversion and common law conversion (Counts III and IV);

**IT IS FURTHER ORDERED** that the motion for summary disposition filed by Plaintiffs Genesis Alternative Finance IV LLC and Genesis Alternative Finance V LLC is **DENIED** as to the claim for unjust enrichment (Count II – Promissory Estoppel);

**IT IS FURTHER ORDERED** that the motion for summary disposition filed by Plaintiffs Genesis Alternative Finance IV LLC and Genesis Alternative Finance V LLC is **DENIED** as to the claim for embezzlement of a security (Count V);

**IT IS FURTHER ORDERED** that Defendant Robert Super shall be held personally liable for the damages sought herein;

**IT IS FURTHER ORDERED** that Defendant Richard Geller is not held to be personally liable for the damages sought herein;

**IT IS FURTHER ORDERED** that the parties shall submit briefs as to the amount of damages within 3 weeks of the date of entry of this Order, after which the Court will determine the correct amount of damages due to Plaintiffs.

**IT IS FURTHER ORDERED** that Receiver Charles D. Bullock will be reappointed with expanded powers under a separate Order after the Court has made a determination as to the damage amount;

**IT IS FURTHER ORDERED** that this **DOES NOT RESOLVE** the last pending claim or issue and **DOES NOT CLOSE THE CASE.**

**DATED:** 2/26/2026

/s/ Annette J. Berry
February 26, 2026

_____
Circuit Judge

25

# Exhibit B

| Entity | Principal Advanced | Note Interest | Grand Total Note Value | Returns Received |
|---|---|---|---|---|
| Fund V - LINT Chiropractic PC | ########## | 1.80x | ########## | $ 522,247.01 |
| Fund V - Supplies Plus MI, LLC | $ 277,200.00 | 1.50x | $ 415,800.00 | $ 201,169.77 |
| Fund V - Diagnostic Chiropractic | $ 270,380.00 | 1.80x | $ 486,684.00 | $ 101,665.46 |
| **Subtotal** | ########## | | ########## | **$ 825,082.24** |
| | | | | |
| Fund IV - Lint Chiropractic PC | $316,540.63 | 1.50x | $ 474,810.95 | $67,811.53 |
| **Subtotal** | **$316,540.63** | | **$ 474,810.95** | **$67,811.53** |
| | | | | |
| **Grand Total** | **$2,379,020.94** | | ########## | **$892,893.77** |

# Exhibit C

DocuSign Envelope ID: BE6D412B-16D5-4F14-8C62-4BB6597C33A3

# PROMISSORY NOTE

**Amount**: $ __104,525.00__ (**"Principal Amount"**)

**LENDER:**

Genesis Alternative Finance V, LLC
100 Crescent Court, Suite 450
Dallas, TX 75201

**BORROWER:**

LINT CHIROPRACTIC, PC

Robert Super, DC

**Commencement Date:** ___September 15th__, **2021**

1. **Obligation.** For value received, the undersigned, __LINT CHIROPRACTIC, PC__, ("Borrower"), admits to owing and agrees to pay to the order of GENESIS ALTERNATIVE FINANCE V, LLC ("Lender"), the Principal Amount set forth above in accordance to the terms outlined herein. The Return Amount of this Note shall be paid in full within eighteen (18) months from Commencement Date.

2. **Purpose.** Borrower and Lender acknowledge and understand that the indebtedness represented by this Note is for the advancement of funds made by Borrower to Lender pursuant to the No-Fault Advance Security Agreement, dated __September 14th__, 2021 ("Advance Agreement").

3. **Place of Payment.** Each payment on this note shall be made at Lender's address (set forth above) or any other place that Lender directs in writing and shall be made directly to Lender.

4. **Payment.** In consideration of the advance made by Lender, the Borrower promises to pay the Lender in a manner negotiated as follows:

   i.   Return Amount: Principal Amount x 1.8 ("Return Amount")
   ii.  Term: 18-months
   iii. Payments: Borrower agrees to make three (3) payments to Lender every six (6) months a minimum payment equal to thirty-three percent (33%) of Return Amount, ("Payments").

5. **Default.** If an Event of Default occurs in the payment of any Payments, or in the payment of any other indebtedness or obligation now or in the future owing by Borrower to Lender, and if the default continues for ten (10) days after Lender gives Borrower written notice, or if a voluntary or involuntary case in bankruptcy, receivership, or insolvency is at any time begun by or against Borrower, the indebtedness evidenced by this note shall, at the option of Lender, become immediately due and payable, without notice or demand.

For purposes of this Note, the term "Event of Default" means that:

    a.    Borrower    has    failed    to    pay    a    single    quarterly    payment;

    b.    Borrower has breached any non-monetary provision of this Note or the Advance Agreement;

    c.    pursuant to any bankruptcy law, then: (1) commenced a voluntary case or proceeding; (2) consented to the entry of an order for relief against it in an involuntary case or proceeding; (3) consented to the appointment of a custodian of it or for all or substantially all of its assets; (4) made a general assignment for the benefit of its Lenders; or (5) admitted in writing its inability to pay its debts generally;

    d.    Borrower becomes insolvent or makes an assignment for the benefit of creditors;

    e.    At any time, the Lender of this Note, for any reason in good faith, believes that the prospect of payment or performance of this Note or any other indebtedness or obligation of the Borrower to Lender is impaired.

6. *Legal Fees and Waiver.* Borrower shall reimburse Lender for all expenses, including reasonable attorney fees and legal expenses that Lender pays or incurs in attempting to enforce or collect on this Note. The waiver of any of the terms and conditions of this Note shall not be construed as a waiver of any subsequent breach of the same or any other terms and conditions hereof.

Borrower and any guarantors and all persons liable, or to become liable under this Note, or any agreement securing this Note, severally waive demand, presentment for payment, and any and all notices of protest, default, nonpayment, or dishonor of this Note and consent to any and all extensions of time for the payment or renewals.

7. *Governing Law.* This Agreement is governed and should be interpreted in accordance with the laws of the State of Michigan, without regard to choice of law principles. The Parties agree that the Circuit Court for the County of Wayne, State of Michigan, shall have jurisdiction over any dispute arising out of, in connection with, or related to, this Note. Venue shall be in Wayne County, Michigan.

8. *Assignment.* Borrower shall not be entitled to assign its obligations under this Note without Lender's prior written consent.

9. *Successors.* This Note shall be binding on Borrower and its successors and permitted assigns, and the benefits of this Note shall inure to Lender and its successors and assigns.

10. *Amendments.* Any amendment or modification of the terms of this Note must be set forth in a writing signed by Lender.

DocuSign Envelope ID: BE6D412B-16D5-4F14-8C62-4BB6597C33A3

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed as of the date written below and duly authorized.

**BORROWER:**

DocuSigned by:

*Rob Super*

8F4287270B70408...

By:

Its:

Dated: September 15th, 2021

**LENDER:**

DocuSigned by:

*Calvin L. Hines*

B4602F732012427...

By: Calvin Hines

Its: CEO

Dated: September 15th, 2021

# Exhibit D

DocuSign Envelope ID: F81A84A4-43B1-43EA-94ED-11771EB318E5

# PROMISSORY NOTE

**Amount**: $ __$144,960.96__ ("**Principal Amount**")

**LENDER:**

Genesis Alternative Finance V, LLC
100 Crescent Court, Suite 450
Dallas, TX 75201

**BORROWER:**

LINT CHIROPRACTIC, PC
Robert Super, DC
President

**Commencement Date:** _____ OCTOBER 18, 2021

1. **Obligation.** For value received, the undersigned, __LINT CHIROPRACTIC, PC__, ("Borrower"), admits to owing and agrees to pay to the order of GENESIS ALTERNATIVE FINANCE V, LLC ("Lender"), the Principal Amount set forth above in accordance to the terms outlined herein. The Return Amount of this Note shall be paid in full within eighteen (18) months from Commencement Date.

2. **Purpose.** Borrower and Lender acknowledge and understand that the indebtedness represented by this Note is for the advancement of funds made by Borrower to Lender pursuant to the No-Fault Advance Security Agreement, dated __SEPTEMBER 14__, 2021 ("Advance Agreement").

3. **Place of Payment.** Each payment on this note shall be made at Lender's address (set forth above) or any other place that Lender directs in writing and shall be made directly to Lender.

4. **Payment.** In consideration of the advance made by Lender, the Borrower promises to pay the Lender in a manner negotiated as follows:

   i. <u>Return Amount:</u> Principal Amount x 1.8 ("Return Amount")
   ii. <u>Term:</u> 18-months
   iii. <u>Payments:</u> Borrower agrees to make three (3) payments to Lender every six (6) months a minimum payment equal to thirty-three percent (33%) of Return Amount, ("Payments").

5. **Default.** If an Event of Default occurs in the payment of any Payments, or in the payment of any other indebtedness or obligation now or in the future owing by Borrower to Lender, and if the default continues for ten (10) days after Lender gives Borrower written notice, or if a voluntary or involuntary case in bankruptcy, receivership, or insolvency is at any time begun by or against Borrower, the indebtedness evidenced by this note shall, at the option of Lender, become immediately due and payable, without notice or demand.

DocuSign Envelope ID: F81A84A4-43B1-43EA-94ED-11771EB318E5

For purposes of this Note, the term "Event of Default" means that:

    a.   Borrower has failed to pay a single quarterly payment;

    b.   Borrower has breached any non-monetary provision of this Note or the Advance Agreement;

    c.   pursuant to any bankruptcy law, then: (1) commenced a voluntary case or proceeding; (2) consented to the entry of an order for relief against it in an involuntary case or proceeding; (3) consented to the appointment of a custodian of it or for all or substantially all of its assets; (4) made a general assignment for the benefit of its Lenders; or (5) admitted in writing its inability to pay its debts generally;

    d.   Borrower becomes insolvent or makes an assignment for the benefit of creditors;

    e.   At any time, the Lender of this Note, for any reason in good faith, believes that the prospect of payment or performance of this Note or any other indebtedness or obligation of the Borrower to Lender is impaired.

6.   *Legal Fees and Waiver.* Borrower shall reimburse Lender for all expenses, including reasonable attorney fees and legal expenses that Lender pays or incurs in attempting to enforce or collect on this Note. The waiver of any of the terms and conditions of this Note shall not be construed as a waiver of any subsequent breach of the same or any other terms and conditions hereof.

Borrower and any guarantors and all persons liable, or to become liable under this Note, or any agreement securing this Note, severally waive demand, presentment for payment, and any and all notices of protest, default, nonpayment, or dishonor of this Note and consent to any and all extensions of time for the payment or renewals.

7.   *Governing Law.* This Agreement is governed and should be interpreted in accordance with the laws of the State of Michigan, without regard to choice of law principles. The Parties agree that the Circuit Court for the County of Wayne, State of Michigan, shall have jurisdiction over any dispute arising out of, in connection with, or related to, this Note. Venue shall be in Wayne County, Michigan.

8.   *Assignment.* Borrower shall not be entitled to assign its obligations under this Note without Lender's prior written consent.

9.   *Successors.* This Note shall be binding on Borrower and its successors and permitted assigns, and the benefits of this Note shall inure to Lender and its successors and assigns.

10.   *Amendments.* Any amendment or modification of the terms of this Note must be set forth in a writing signed by Lender.

DocuSign Envelope ID: F81A84A4-43B1-43EA-94ED-11771EB318E5

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed as of the date written below and duly authorized.

**BORROWER:**

*Rob Super*
8F4287270B70408...

By: ROBERT SUPER DC
Its: PRESIDENT

Dated: 10/18/2021

**LENDER:**

*Calvin L. Hines*
B4602F732012427...

By: Calvin Hines
Its: CEO

Dated: 10/18/2021

# Exhibit E

# PROMISSORY NOTE

**Amount**: $ _262,250.98_____ ("**Principal Amount**")

**LENDER:**

Genesis Alternative Finance V, LLC
100 Crescent Court, Suite 450
Dallas, TX 75201

**BORROWER:**

_LINT CHIROPRACTIC, PC_
_Robert Super, DC_
_President_____

**Commencement Date:** ___December 01_____, **2021**

1.  *Obligation.* For value received, the undersigned, ___Lint Chiropractic, PC____, ("Borrower"), admits to owing and agrees to pay to the order of GENESIS ALTERNATIVE FINANCE V, LLC ("Lender"), the Principal Amount set forth above in accordance to the terms outlined herein. The Return Amount of this Note shall be paid in full within eighteen (18) months from Commencement Date.

2.  *Purpose.* Borrower and Lender acknowledge and understand that the indebtedness represented by this Note is for the advancement of funds made by Borrower to Lender pursuant to the No-Fault Advance Security Agreement, dated ___September 14, 2020___, 2021 ("Advance Agreement").

3.  *Place of Payment.* Each payment on this note shall be made at Lender's address (set forth above) or any other place that Lender directs in writing and shall be made directly to Lender.

4.  *Payment.* In consideration of the advance made by Lender, the Borrower promises to pay the Lender in a manner negotiated as follows:

    i.   <u>Return Amount:</u> Principal Amount x 1.8 ("Return Amount")
    ii.  <u>Term:</u> 18-months
    iii. <u>Payments:</u> Borrower agrees to make three (3) payments to Lender every six (6) months a minimum payment equal to thirty-three percent (33%) of Return Amount, ("Payments").

5.  *Default.* If an Event of Default occurs in the payment of any Payments, or in the payment of any other indebtedness or obligation now or in the future owing by Borrower to Lender, and if the default continues for ten (10) days after Lender gives Borrower written notice, or if a voluntary or involuntary case in bankruptcy, receivership, or insolvency is at any time begun by or against Borrower, the indebtedness evidenced by this note shall, at the option of Lender, become immediately due and payable, without notice or demand.

For purposes of this Note, the term "Event of Default" means that:

a.  Borrower has failed to pay a single quarterly payment;

b.  Borrower has breached any non-monetary provision of this Note or the Advance Agreement;

c.  pursuant to any bankruptcy law, then: (1) commenced a voluntary case or proceeding; (2) consented to the entry of an order for relief against it in an involuntary case or proceeding; (3) consented to the appointment of a custodian of it or for all or substantially all of its assets; (4) made a general assignment for the benefit of its Lenders; or (5) admitted in writing its inability to pay its debts generally;

d.  Borrower becomes insolvent or makes an assignment for the benefit of creditors;

e.  At any time, the Lender of this Note, for any reason in good faith, believes that the prospect of payment or performance of this Note or any other indebtedness or obligation of the Borrower to Lender is impaired.

6.  *Legal Fees and Waiver.* Borrower shall reimburse Lender for all expenses, including reasonable attorney fees and legal expenses that Lender pays or incurs in attempting to enforce or collect on this Note. The waiver of any of the terms and conditions of this Note shall not be construed as a waiver of any subsequent breach of the same or any other terms and conditions hereof.

Borrower and any guarantors and all persons liable, or to become liable under this Note, or any agreement securing this Note, severally waive demand, presentment for payment, and any and all notices of protest, default, nonpayment, or dishonor of this Note and consent to any and all extensions of time for the payment or renewals.

7.  *Governing Law.* This Agreement is governed and should be interpreted in accordance with the laws of the State of Michigan, without regard to choice of law principles. The Parties agree that the Circuit Court for the County of Wayne, State of Michigan, shall have jurisdiction over any dispute arising out of, in connection with, or related to, this Note. Venue shall be in Wayne County, Michigan.

8.  *Assignment.* Borrower shall not be entitled to assign its obligations under this Note without Lender's prior written consent.

9.  *Successors.* This Note shall be binding on Borrower and its successors and permitted assigns, and the benefits of this Note shall inure to Lender and its successors and assigns.

10. *Amendments.* Any amendment or modification of the terms of this Note must be set forth in a writing signed by Lender.

DocuSign Envelope ID: 6A41BC04-F610-4BF8-8713-BF36EEC131FB

      **IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed as of the date written below and duly authorized.

**BORROWER:**

DocuSigned by:

*Robert Super*

AA34A2EB823548A

By: ROBERT SUPER DC
Its: PRESIDENT

Dated: 12/2/2021

**LENDER:** DocuSigned by:

*Calvin Hines*

28D912D633D9428

By: Calvin Hines
Its: CEO

Dated: 12/2/2021

# Exhibit F

# PROMISSORY NOTE

**Amount**: $ _135,056.25_ (**"Principal Amount"**)

**LENDER:**

Genesis Alternative Finance V, LLC
100 Crescent Court, Suite 450
Dallas, TX 75201

**BORROWER:**

LINT CHIROPRACTIC, PC
Robert Super, DC
President

**Commencement Date:** _Dec 16_ **, 2021**

1. **Obligation.** For value received, the undersigned, _LINT CHIROPRACTIC, PC_ , ("Borrower"), admits to owing and agrees to pay to the order of GENESIS ALTERNATIVE FINANCE V, LLC ("Lender"), the Principal Amount set forth above in accordance to the terms outlined herein. The Return Amount of this Note shall be paid in full within eighteen (18) months from Commencement Date.

2. **Purpose.** Borrower and Lender acknowledge and understand that the indebtedness represented by this Note is for the advancement of funds made by Borrower to Lender pursuant to the No-Fault Advance Security Agreement, dated _September 29_ , 2021 ("Advance Agreement").

3. **Place of Payment.** Each payment on this note shall be made at Lender's address (set forth above) or any other place that Lender directs in writing and shall be made directly to Lender.

4. **Payment.** In consideration of the advance made by Lender, the Borrower promises to pay the Lender in a manner negotiated as follows:

    i. <u>Return Amount:</u> Principal Amount x 1.8 ("Return Amount")
    ii. <u>Term:</u> 18-months
    iii. <u>Payments:</u> Borrower agrees to make three (3) payments to Lender every six (6) months a minimum payment equal to thirty-three percent (33%) of Return Amount, ("Payments").

5. **Default.** If an Event of Default occurs in the payment of any Payments, or in the payment of any other indebtedness or obligation now or in the future owing by Borrower to Lender, and if the default continues for ten (10) days after Lender gives Borrower written notice, or if a voluntary or involuntary case in bankruptcy, receivership, or insolvency is at any time begun by or against Borrower, the indebtedness evidenced by this note shall, at the option of Lender, become immediately due and payable, without notice or demand.

For purposes of this Note, the term "Event of Default" means that:

    a.   Borrower has failed to pay a single quarterly payment;

    b.   Borrower has breached any non-monetary provision of this Note or the Advance Agreement;

    c.   pursuant to any bankruptcy law, then: (1) commenced a voluntary case or proceeding; (2) consented to the entry of an order for relief against it in an involuntary case or proceeding; (3) consented to the appointment of a custodian of it or for all or substantially all of its assets; (4) made a general assignment for the benefit of its Lenders; or (5) admitted in writing its inability to pay its debts generally;

    d.   Borrower becomes insolvent or makes an assignment for the benefit of creditors;

    e.   At any time, the Lender of this Note, for any reason in good faith, believes that the prospect of payment or performance of this Note or any other indebtedness or obligation of the Borrower to Lender is impaired.

6. ***Legal Fees and Waiver.*** Borrower shall reimburse Lender for all expenses, including reasonable attorney fees and legal expenses that Lender pays or incurs in attempting to enforce or collect on this Note. The waiver of any of the terms and conditions of this Note shall not be construed as a waiver of any subsequent breach of the same or any other terms and conditions hereof.

Borrower and any guarantors and all persons liable, or to become liable under this Note, or any agreement securing this Note, severally waive demand, presentment for payment, and any and all notices of protest, default, nonpayment, or dishonor of this Note and consent to any and all extensions of time for the payment or renewals.

7. ***Governing Law.*** This Agreement is governed and should be interpreted in accordance with the laws of the State of Michigan, without regard to choice of law principles. The Parties agree that the Circuit Court for the County of Wayne, State of Michigan, shall have jurisdiction over any dispute arising out of, in connection with, or related to, this Note. Venue shall be in Wayne County, Michigan.

8. ***Assignment.*** Borrower shall not be entitled to assign its obligations under this Note without Lender's prior written consent.

9. ***Successors.*** This Note shall be binding on Borrower and its successors and permitted assigns, and the benefits of this Note shall inure to Lender and its successors and assigns.

10. ***Amendments.*** Any amendment or modification of the terms of this Note must be set forth in a writing signed by Lender.

DocuSign Envelope ID: B61CDB92-EAAE-4252-8156-77A61397A5F4

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed as of the date written below and duly authorized.

**BORROWER:**

*Rob Super*

—8F4287270B70408...

By: Robert Super, DC
Its: President

Dated: 12/16/2021

**LENDER:**

*Calvin L. Hines*

—B4602F732012427...

By: Calvin Hines
Its: CEO

Dated: 12/17/2021

# Exhibit G

# PROMISSORY NOTE

**Amount**: $ $488,575.00 _____ (**"Principal Amount"**)

## LENDER:

Genesis Alternative Finance V, LLC
100 Crescent Court, Suite 450
Dallas, TX 75201

## BORROWER:

LINT CHIROPRACTIC, PC
Robert Super, DC
President

**Commencement Date:** _____ January 15, 2022

1. **Obligation.** For value received, the undersigned, LINT CHIROPRACTIC, PC, ("Borrower"), admits to owing and agrees to pay to the order of GENESIS ALTERNATIVE FINANCE V, LLC ("Lender"), the Principal Amount set forth above in accordance to the terms outlined herein. The Return Amount of this Note shall be paid in full within eighteen (18) months from Commencement Date.

2. **Purpose.** Borrower and Lender acknowledge and understand that the indebtedness represented by this Note is for the advancement of funds made by Borrower to Lender pursuant to the No-Fault Advance Security Agreement, dated _____ January 15, 2022 ("Advance Agreement").

3. **Place of Payment.** Each payment on this note shall be made at Lender's address (set forth above) or any other place that Lender directs in writing and shall be made directly to Lender.

4. **Payment.** In consideration of the advance made by Lender, the Borrower promises to pay the Lender in a manner negotiated as follows:

   i.   Return Amount: Principal Amount x 1.8 ("Return Amount")
   ii.  Term: 18-months
   iii. Payments: Borrower agrees to make three (3) payments to Lender every six (6) months a minimum payment equal to thirty-three percent (33%) of Return Amount, ("Payments").

5. **Default.** If an Event of Default occurs in the payment of any Payments, or in the payment of any other indebtedness or obligation now or in the future owing by Borrower to Lender, and if the default continues for ten (10) days after Lender gives Borrower written notice, or if a voluntary or involuntary case in bankruptcy, receivership, or insolvency is at any time begun by or against Borrower, the indebtedness evidenced by this note shall, at the option of Lender, become immediately due and payable, without notice or demand.

DocuSign Envelope ID: 3CBCD89E-F844-4244-B036-94CAC42371D3

For purposes of this Note, the term "Event of Default" means that:

    a. Borrower has failed to pay a single quarterly payment;

    b. Borrower has breached any non-monetary provision of this Note or the Advance Agreement;

    c. pursuant to any bankruptcy law, then: (1) commenced a voluntary case or proceeding; (2) consented to the entry of an order for relief against it in an involuntary case or proceeding; (3) consented to the appointment of a custodian of it or for all or substantially all of its assets; (4) made a general assignment for the benefit of its Lenders; or (5) admitted in writing its inability to pay its debts generally;

    d. Borrower becomes insolvent or makes an assignment for the benefit of creditors;

    e. At any time, the Lender of this Note, for any reason in good faith, believes that the prospect of payment or performance of this Note or any other indebtedness or obligation of the Borrower to Lender is impaired.

6. **Legal Fees and Waiver.** Borrower shall reimburse Lender for all expenses, including reasonable attorney fees and legal expenses that Lender pays or incurs in attempting to enforce or collect on this Note. The waiver of any of the terms and conditions of this Note shall not be construed as a waiver of any subsequent breach of the same or any other terms and conditions hereof.

Borrower and any guarantors and all persons liable, or to become liable under this Note, or any agreement securing this Note, severally waive demand, presentment for payment, and any and all notices of protest, default, nonpayment, or dishonor of this Note and consent to any and all extensions of time for the payment or renewals.

7. **Governing Law.** This Agreement is governed and should be interpreted in accordance with the laws of the State of Michigan, without regard to choice of law principles. The Parties agree that the Circuit Court for the County of Wayne, State of Michigan, shall have jurisdiction over any dispute arising out of, in connection with, or related to, this Note. Venue shall be in Wayne County, Michigan.

8. **Assignment.** Borrower shall not be entitled to assign its obligations under this Note without Lender's prior written consent.

9. **Successors.** This Note shall be binding on Borrower and its successors and permitted assigns, and the benefits of this Note shall inure to Lender and its successors and assigns.

10. **Amendments.** Any amendment or modification of the terms of this Note must be set forth in a writing signed by Lender.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed as of the date written below and duly authorized.

**BORROWER:**

*Rob Super*

—DocuSigned by:
—8F4287270B70408...

By: ROBERT SUPER DC
Its: PRESIDENT

Dated: _____1/17/2022_____

**LENDER:**

*Calvin L. Hines*

—DocuSigned by:
—B4602F732012427...

By: Calvin Hines
Its: CEO

Dated: _____1/17/2022_____

# Exhibit H

DocuSign Envelope ID: FCF27D93-9575-46BD-93D9-1DD11B711C1C

# PROMISSORY NOTE

**Amount**: $ 124,675.00        ("Principal Amount")

**LENDER:**

Genesis Alternative Finance V, LLC
100 Crescent Court, Suite 450
Dallas, TX 75201

**BORROWER:**

LINT CHIROPRACTIC, PC
Robert Super, DC
President

**Commencement Date:**   MARCH 18        , **2022**

1. ***Obligation.*** For value received, the undersigned, LINT CHIROPRACTIC, PC , ("Borrower"), admits to owing and agrees to pay to the order of GENESIS ALTERNATIVE FINANCE V, LLC ("Lender"), the Principal Amount set forth above in accordance to the terms outlined herein. The Return Amount of this Note shall be paid in full within eighteen (18) months from Commencement Date.

2. ***Purpose.*** Borrower and Lender acknowledge and understand that the indebtedness represented by this Note is for the advancement of funds made by Borrower to Lender pursuant to the No-Fault Advance Security Agreement, dated   SEPTEMBER 15 , 2022 ("Advance Agreement").

3. ***Place of Payment.*** Each payment on this note shall be made at Lender's address (set forth above) or any other place that Lender directs in writing and shall be made directly to Lender.

4. ***Payment.*** In consideration of the advance made by Lender, the Borrower promises to pay the Lender in a manner negotiated as follows:

    i.   Return Amount: Principal Amount x 1.8 ("Return Amount")
    ii.  Term: 18-months
    iii. Payments: Borrower agrees to make three (3) payments to Lender every six (6) months a minimum payment equal to thirty-three percent (33%) of Return Amount, ("Payments").

5. ***Default.*** If an Event of Default occurs in the payment of any Payments, or in the payment of any other indebtedness or obligation now or in the future owing by Borrower to Lender, and if the default continues for ten (10) days after Lender gives Borrower written notice, or if a voluntary or involuntary case in bankruptcy, receivership, or insolvency is at any time begun by or against Borrower, the indebtedness evidenced by this note shall, at the option of Lender, become immediately due and payable, without notice or demand.

DocuSign Envelope ID: FCF27D93-9575-46BD-93D9-1DD11B711C1C

For purposes of this Note, the term "Event of Default" means that:

    a.   Borrower has failed to pay a single quarterly payment;

    b.   Borrower has breached any non-monetary provision of this Note or the Advance Agreement;

    c.   pursuant to any bankruptcy law, then: (1) commenced a voluntary case or proceeding; (2) consented to the entry of an order for relief against it in an involuntary case or proceeding; (3) consented to the appointment of a custodian of it or for all or substantially all of its assets; (4) made a general assignment for the benefit of its Lenders; or (5) admitted in writing its inability to pay its debts generally;

    d.   Borrower becomes insolvent or makes an assignment for the benefit of creditors;

    e.   At any time, the Lender of this Note, for any reason in good faith, believes that the prospect of payment or performance of this Note or any other indebtedness or obligation of the Borrower to Lender is impaired.

6.   *Legal Fees and Waiver.* Borrower shall reimburse Lender for all expenses, including reasonable attorney fees and legal expenses that Lender pays or incurs in attempting to enforce or collect on this Note. The waiver of any of the terms and conditions of this Note shall not be construed as a waiver of any subsequent breach of the same or any other terms and conditions hereof.

Borrower and any guarantors and all persons liable, or to become liable under this Note, or any agreement securing this Note, severally waive demand, presentment for payment, and any and all notices of protest, default, nonpayment, or dishonor of this Note and consent to any and all extensions of time for the payment or renewals.

7.   *Governing Law.* This Agreement is governed and should be interpreted in accordance with the laws of the State of Michigan, without regard to choice of law principles. The Parties agree that the Circuit Court for the County of Wayne, State of Michigan, shall have jurisdiction over any dispute arising out of, in connection with, or related to, this Note. Venue shall be in Wayne County, Michigan.

8.   *Assignment.* Borrower shall not be entitled to assign its obligations under this Note without Lender's prior written consent.

9.   *Successors.* This Note shall be binding on Borrower and its successors and permitted assigns, and the benefits of this Note shall inure to Lender and its successors and assigns.

10.  *Amendments.* Any amendment or modification of the terms of this Note must be set forth in a writing signed by Lender.

DocuSign Envelope ID: FCF27D93-9575-46BD-93D9-1DD11B711C1C

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed as of the date written below and duly authorized.

**BORROWER:**

By: ROBERT SUPER, DC
Its: PRESIDENT

Dated: 3/18/2022

**LENDER:**

By: Calvin Hines
Its: CEO

Dated: 3/18/2022

# Exhibit I

DocuSign Envelope ID: B9C8EAE0-8362-4D68-8816-29F2A9B71D0E

## PROMISSORY NOTE

**Amount: $337,622.95 ("Principal Amount")**

**LENDER:**

Genesis Alternative Finance V, LLC
100 Crescent Court, Suite 450
Dallas, TX 75201

**BORROWER:**

Lint Chiropractic, PC
Robert Super, DC
36700 Woodward Avenue, Suite 202
Bloomfield Hills, MI 48034

**Commencement Date: May 13, 2022**

1. ***Obligation.*** For value received, the undersigned, LINT Chiropractic, PC, ("Borrower"), admits to owing and agrees to pay to the order of GENESIS ALTERNATIVE FINANCE V, LLC ("Lender"), the Principal Amount set forth above in accordance to the terms outlined herein. The Return Amount of this Note shall be paid in full within eighteen (18) months from Commencement Date.

2. ***Purpose.*** Borrower and Lender acknowledge and understand that the indebtedness represented by this Note is for the advancement of funds made by Borrower to Lender pursuant to the No-Fault Advance Security Agreement, dated September 14, 2021 ("Advance Agreement").

3. ***Place of Payment.*** Each payment on this note shall be made at Lender's address (set forth above) or any other place that Lender directs in writing and shall be made directly to Lender.

4. ***Payment.*** In consideration of the advance made by Lender, the Borrower promises to pay the Lender in a manner negotiated as follows:

   i. Return Amount: Principal Amount x 1.8 ("Return Amount")
   ii. Term: 18-months
   iii. Payments: Borrower agrees to make three (3) payments to Lender every six (6) months a minimum payment equal to thirty-three percent (33%) of Return Amounts, ("Payments").

5. ***Default.*** If an Event of Default occurs in the payment of any Payments, or in the payment of any other indebtedness or obligation now or in the future owing by Borrower to Lender,

and if the default continues for ten (10) days after Lender gives Borrower written notice, or if a voluntary or involuntary case in bankruptcy, receivership, or insolvency is at any time begun by or against Borrower, the indebtedness evidenced by this note shall, at the option of Lender, become immediately due and payable, without notice or demand.

For purposes of this Note, the term "Event of Default" means that:

a. Borrower has failed to pay a single quarterly payment;

b. Borrower has breached any non-monetary provision of this Note or the Advance Agreement;

c. pursuant to any bankruptcy law, then: (1) commenced a voluntary case or proceeding; (2) consented to the entry of an order for relief against it in an involuntary case or proceeding; (3) consented to the appointment of a custodian of it or for all or substantially all of its assets; (4) made a general assignment for the benefit of its Lenders; or (5) admitted in writing its inability to pay its debts generally;

d. Borrower becomes insolvent or makes an assignment for the benefit of creditors;

e. At any time, the Lender of this Note, for any reason in good faith, believes that the prospect of payment or performance of this Note or any other indebtedness or obligation of the Borrower to Lender is impaired.

6. ***Legal Fees and Waiver.*** Borrower shall reimburse Lender for all expenses, including reasonable attorney fees and legal expenses that Lender pays or incurs in attempting to enforce or collect on this Note. The waiver of any of the terms and conditions of this Note shall not be construed as a waiver of any subsequent breach of the same or any other terms and conditions hereof.

Borrower and any guarantors and all persons liable, or to become liable under this Note, or any agreement securing this Note, severally waive demand, presentment for payment, and any and all notices of protest, default, nonpayment, or dishonor of this Note and consent to any and all extensions of time for the payment or renewals.

7. ***Governing Law.*** This Promissory Note is governed and should be interpreted in accordance with the laws of the State of Michigan, without regard to choice of law principles. The Parties agree that the Circuit Court for the County of Wayne, State of Michigan, shall have jurisdiction over any dispute arising out of, in connection with, or related to this Note. Venue shall be in Wayne County, Michigan.

8. ***Assignment.*** Borrower shall not be entitled to assign its obligations under this Note without Lender's prior written consent.

DocuSign Envelope ID: B9C8EAE0-8362-4D68-8816-29F2A9B71D0E

9. ***Successors.*** This Note shall be binding on Borrower and its successors and permitted assigns, and the benefits of this Note shall inure to Lender and its successors and assigns.

10. ***Amendments.*** Any amendment or modification of the terms of this Note must be set forth in a writing signed by Lender.

      **IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed as of the date written below and duly authorized.

**BORROWER:**

*Robert Super*
AA34A2EB823548A...

By: Robert Super
Its: President

Dated: _5/13/2022_

**LENDER:**

*Calvin Hines*
69034624A3DD4C4...

By: Calvin Hines
Its: CEO

Dated: _5/13/2022_

# Exhibit J

DocuSign Envelope ID: 210580FA-0F73-4586-B329-C4A6F70268F8

**PROMISSORY NOTE**

**Amount: $283,962.58 ("Principal Amount")**

**LENDER:**

Genesis Alternative Finance V, LLC
100 Crescent Court, Suite 450
Dallas, TX 75201

**BORROWER:**

Lint Chiropractic, PC
Robert Super, DC
36700 Woodward Avenue, Suite 202
Bloomfield Hills, MI 48034

**Commencement Date: July 15, 2022**

1. ***Obligation.*** For value received, the undersigned, LINT Chiropractic, PC, ("Borrower"), admits to owing and agrees to pay to the order of GENESIS ALTERNATIVE FINANCE V, LLC ("Lender"), the Principal Amount set forth above in accordance to the terms outlined herein. The Return Amount of this Note shall be paid in full within eighteen (18) months from Commencement Date.

2. ***Purpose.*** Borrower and Lender acknowledge and understand that the indebtedness represented by this Note is for the advancement of funds made by Borrower to Lender pursuant to the No-Fault Advance Security Agreement, dated September 14, 2021 ("Advance Agreement").

3. ***Place of Payment.*** Each payment on this note shall be made at Lender's address (set forth above) or any other place that Lender directs in writing and shall be made directly to Lender.

4. ***Payment.*** In consideration of the advance made by Lender, the Borrower promises to pay the Lender in a manner negotiated as follows:

   i. Return Amount: Principal Amount x 1.8 ("Return Amount")
   ii. Term: 18-months
   iii. Payments: Borrower agrees to make three (3) payments to Lender every six (6) months a minimum payment equal to thirty-three percent (33%) of Return Amounts, ("Payments").

5. ***Default.*** If an Event of Default occurs in the payment of any Payments, or in the payment of any other indebtedness or obligation now or in the future owing by Borrower to Lender,

and if the default continues for ten (10) days after Lender gives Borrower written notice, or if a voluntary or involuntary case in bankruptcy, receivership, or insolvency is at any time begun by or against Borrower, the indebtedness evidenced by this note shall, at the option of Lender, become immediately due and payable, without notice or demand.

For purposes of this Note, the term "Event of Default" means that:

a. Borrower has failed to pay a single quarterly payment;

b. Borrower has breached any non-monetary provision of this Note or the Advance Agreement;

c. pursuant to any bankruptcy law, then: (1) commenced a voluntary case or proceeding; (2) consented to the entry of an order for relief against it in an involuntary case or proceeding; (3) consented to the appointment of a custodian of it or for all or substantially all of its assets; (4) made a general assignment for the benefit of its Lenders; or (5) admitted in writing its inability to pay its debts generally;

d. Borrower becomes insolvent or makes an assignment for the benefit of creditors;

e. At any time, the Lender of this Note, for any reason in good faith, believes that the prospect of payment or performance of this Note or any other indebtedness or obligation of the Borrower to Lender is impaired.

6. ***Legal Fees and Waiver.*** Borrower shall reimburse Lender for all expenses, including reasonable attorney fees and legal expenses that Lender pays or incurs in attempting to enforce or collect on this Note. The waiver of any of the terms and conditions of this Note shall not be construed as a waiver of any subsequent breach of the same or any other terms and conditions hereof.

Borrower and any guarantors and all persons liable, or to become liable under this Note, or any agreement securing this Note, severally waive demand, presentment for payment, and any and all notices of protest, default, nonpayment, or dishonor of this Note and consent to any and all extensions of time for the payment or renewals.

7. ***Governing Law.*** This Promissory Note is governed and should be interpreted in accordance with the laws of the State of Michigan, without regard to choice of law principles. The Parties agree that the Circuit Court for the County of Wayne, State of Michigan, shall have jurisdiction over any dispute arising out of, in connection with, or related to this Note. Venue shall be in Wayne County, Michigan.

8. ***Assignment.*** Borrower shall not be entitled to assign its obligations under this Note without Lender's prior written consent.

DocuSign Envelope ID: 210580FA-0F73-4586-B329-C4A6F70268F8

9. ***Successors.*** This Note shall be binding on Borrower and its successors and permitted assigns, and the benefits of this Note shall inure to Lender and its successors and assigns.

10. ***Amendments.*** Any amendment or modification of the terms of this Note must be set forth in a writing signed by Lender.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed as of the date written below and duly authorized.

**BORROWER:**

DocuSigned by:

*Rob Super*

8E4287270B70408

By: Robert Super
Its: President

7/15/2022

Dated: _____

**LENDER:**

DocuSigned by:

*Calvin Hines*

B4602F732012427

By: Calvin Hines
Its: CEO

7/15/2022

Dated: _____

# Exhibit K

## PROMISSORY NOTE

Amount: $ 62,160.00 _____ ("Principal Amount")

**LENDER:**

Genesis Alternative Finance V, LLC
100 Crescent Court, Suite 450
Dallas, TX 75201


**BORROWER:**

SUPPLIES PLUS MI, LLC
Robert Super, DC
President _____                    _____

Commencement Date: ___December 30___, 2021

1. *Obligation.* For value received, the undersigned, Supplies Plus MI, LLC , ("Borrower"), admits to owing and agrees to pay to the order of GENESIS ALTERNATIVE FINANCE V, LLC ("Lender"), the Principal Amount set forth above in accordance to the terms outlined herein. The Return Amount of this Note shall be paid in full within eighteen (18) months from Commencement Date.

2. *Purpose.* Borrower and Lender acknowledge and understand that the indebtedness represented by this Note is for the advancement of funds made by Borrower to Lender pursuant to the No-Fault Auto Advance Security Agreement, dated ___December 9___, 2021 ("Advance Agreement").

3. *Place of Payment.* Each payment on this note shall be made at Lender's address (set forth above) or any other place that Lender directs in writing and shall be made directly to Lender.

4. *Payment.* In consideration of the advance made by Lender, the Borrower promises to pay the Lender in a manner negotiated as follows:

    i. Return Amount: Principal Amount x 1.8 ("Return Amount")
    ii. Term: Within Fifteen (15) months of the date of the Addendum, which is December 30 2021.
    iii. Repayment: Borrower agrees to make payment of Return Amount either on a periodic basis, or lumpsum payment(s), but understands and agrees the entire balance of Return Amount shall be repaid no later then fifteen (15) months from the date of this Note.

5. *Default.* If an Event of Default occurs in the payment of any Payments, or in the payment of any other indebtedness or obligation now or in the future owing by Borrower to Lender, and if the default continues for ten (10) days after Lender gives Borrower written notice, or if a voluntary or involuntary case in bankruptcy, receivership, or insolvency is at any time begun by or against Borrower, the indebtedness evidenced by this note shall, at the option of Lender, become immediately due and payable, without notice or demand.

For purposes of this Note, the term "Event of Default" means that:

    a.    Borrower has failed to pay a single quarterly payment;

    b.    Borrower has breached any non-monetary provision of this Note or the Advance Agreement;

    c.    pursuant to any bankruptcy law, then: (1) commenced a voluntary case or proceeding; (2) consented to the entry of an order for relief against it in an involuntary case or proceeding; (3) consented to the appointment of a custodian of it or for all or substantially all of its assets; (4) made a general assignment for the benefit of its Lenders; or (5) admitted in writing its inability to pay its debts generally;

    d.    Borrower becomes insolvent or makes an assignment for the benefit of creditors;

    e.    At any time, the Lender of this Note, for any reason in good faith, believes that the prospect of payment or performance of this Note or any other indebtedness or obligation of the Borrower to Lender is impaired.

6. *Legal Fees and Waiver.* Borrower shall reimburse Lender for all expenses, including reasonable attorney fees and legal expenses that Lender pays or incurs in attempting to enforce or collect on this Note. The waiver of any of the terms and conditions of this Note shall not be construed as a waiver of any subsequent breach of the same or any other terms and conditions hereof.

Borrower and any guarantors and all persons liable, or to become liable under this Note, or any agreement securing this Note, severally waive demand, presentment for payment, and any and all notices of protest, default, nonpayment, or dishonor of this Note and consent to any and all extensions of time for the payment or renewals.

7. *Governing Law.* This Agreement is governed and should be interpreted in accordance with the laws of the State of Michigan, without regard to choice of law principles. The Parties agree that the Circuit Court for the County of Wayne, State of Michigan, shall have jurisdiction over any dispute arising out of, in connection with, or related to, this Note. Venue shall be in Wayne County, Michigan.

8. *Assignment.* Borrower shall not be entitled to assign its obligations under this Note without Lender's prior written consent.

9. *Successors.* This Note shall be binding on Borrower and its successors and permitted assigns, and the benefits of this Note shall inure to Lender and its successors and assigns.

10. *Amendments.* Any amendment or modification of the terms of this Note must be set forth in a writing signed by Lender.

       **IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed as of the date written below and duly authorized.

**BORROWER:**

Robert Super

By: Robert Super, DC
Its: President

Dated: 12/30/2021

**LENDER:**

Calvin Hines

By: Calvin Hines
Its: CEO

Dated: 1/3/2022

# Exhibit L

# PROMISSORY NOTE

**Amount**: $ $120,240.00_____ **("Principal Amount")**

**LENDER:**

Genesis Alternative Finance V, LLC
100 Crescent Court, Suite 450
Dallas, TX 75201

**BORROWER:**

Supplies Plus MI, LLC___
Robert Super, DC_____
Member_____

**Commencement Date:** _____ March 1 , **2022**

1. ***Obligation.*** For value received, the undersigned, __Supplies Plus MI, LLC__ , ("Borrower"), admits to owing and agrees to pay to the order of GENESIS ALTERNATIVE FINANCE V, LLC ("Lender"), the Principal Amount set forth above in accordance to the terms outlined herein. The Return Amount of this Note shall be paid in full within eighteen (18) months from Commencement Date.

2. ***Purpose.*** Borrower and Lender acknowledge and understand that the indebtedness represented by this Note is for the advancement of funds made by Borrower to Lender pursuant to the No-Fault Advance Security Agreement, dated _____ December 9, 2022 ("Advance Agreement").

3. ***Place of Payment.*** Each payment on this note shall be made at Lender's address (set forth above) or any other place that Lender directs in writing and shall be made directly to Lender.

4. ***Payment.*** In consideration of the advance made by Lender, the Borrower promises to pay the Lender in a manner negotiated as follows:

    i. <u>Return Amount:</u> Principal Amount x 1.8 ("Return Amount")
    ii. <u>Term:</u> 18-months
    iii. <u>Payments:</u> Borrower agrees to make three (3) payments to Lender every six (6) months a minimum payment equal to thirty-three percent (33%) of Return Amount, ("Payments").

5. ***Default.*** If an Event of Default occurs in the payment of any Payments, or in the payment of any other indebtedness or obligation now or in the future owing by Borrower to Lender, and if the default continues for ten (10) days after Lender gives Borrower written notice, or if a voluntary or involuntary case in bankruptcy, receivership, or insolvency is at any time begun by or against Borrower, the indebtedness evidenced by this note shall, at the option of Lender, become immediately due and payable, without notice or demand.

For purposes of this Note, the term "Event of Default" means that:

    a. Borrower has failed to pay a single quarterly payment;

    b. Borrower has breached any non-monetary provision of this Note or the Advance Agreement;

    c. pursuant to any bankruptcy law, then: (1) commenced a voluntary case or proceeding; (2) consented to the entry of an order for relief against it in an involuntary case or proceeding; (3) consented to the appointment of a custodian of it or for all or substantially all of its assets; (4) made a general assignment for the benefit of its Lenders; or (5) admitted in writing its inability to pay its debts generally;

    d. Borrower becomes insolvent or makes an assignment for the benefit of creditors;

    e. At any time, the Lender of this Note, for any reason in good faith, believes that the prospect of payment or performance of this Note or any other indebtedness or obligation of the Borrower to Lender is impaired.

6. **Legal Fees and Waiver.** Borrower shall reimburse Lender for all expenses, including reasonable attorney fees and legal expenses that Lender pays or incurs in attempting to enforce or collect on this Note. The waiver of any of the terms and conditions of this Note shall not be construed as a waiver of any subsequent breach of the same or any other terms and conditions hereof.

Borrower and any guarantors and all persons liable, or to become liable under this Note, or any agreement securing this Note, severally waive demand, presentment for payment, and any and all notices of protest, default, nonpayment, or dishonor of this Note and consent to any and all extensions of time for the payment or renewals.

7. **Governing Law.** This Agreement is governed and should be interpreted in accordance with the laws of the State of Michigan, without regard to choice of law principles. The Parties agree that the Circuit Court for the County of Wayne, State of Michigan, shall have jurisdiction over any dispute arising out of, in connection with, or related to, this Note. Venue shall be in Wayne County, Michigan.

8. **Assignment.** Borrower shall not be entitled to assign its obligations under this Note without Lender's prior written consent.

9. **Successors.** This Note shall be binding on Borrower and its successors and permitted assigns, and the benefits of this Note shall inure to Lender and its successors and assigns.

10. **Amendments.** Any amendment or modification of the terms of this Note must be set forth in a writing signed by Lender.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed as of the date written below and duly authorized.

**BORROWER:**

*Rob Super*

8F4287270B70408

By: ROBERT SUPER DC
Its: PRESIDENT

Dated: _____

**LENDER:**

*Calvin L. Hines*

B4602F732012427

By: Calvin Hines
Its: CEO

Dated: _____

# Exhibit M

# PROMISSORY NOTE

**Amount**: **$94,800.00 ("Principal Amount")**

**LENDER:**

Genesis Alternative Finance V, LLC
100 Crescent Court, Suite 450
Dallas, TX 75201

**BORROWER:**

Supplies Plus MI, LLC
Robert Super, DC
24901 Northwestern Highway, Suite 315
Southfield, MI 48075

**Commencement Date: May 13, 2022**

1. *Obligation.* For value received, the undersigned, Supplies Plus MI, LLC, ("Borrower"), admits to owing and agrees to pay to the order of GENESIS ALTERNATIVE FINANCE V, LLC ("Lender"), the Principal Amount set forth above in accordance to the terms outlined herein. The Return Amount of this Note shall be paid in full within eighteen (18) months from Commencement Date.

2. *Purpose.* Borrower and Lender acknowledge and understand that the indebtedness represented by this Note is for the advancement of funds made by Borrower to Lender pursuant to the No-Fault Advance Security Agreement, dated December 9, 2021 ("Advance Agreement").

3. *Place of Payment.* Each payment on this note shall be made at Lender's address (set forth above) or any other place that Lender directs in writing and shall be made directly to Lender.

4. *Payment.* In consideration of the advance made by Lender, the Borrower promises to pay the Lender in a manner negotiated as follows:

   i. Return Amount: Principal Amount x 1.5 ("Return Amount")
   ii. Term: 12-18 months
   iii. Payments: Borrower agrees to make three (3) payments to Lender equal to thirty-three percent (33%) of Return Amount every six (6) months ("Payments").

5. *Default.* If an Event of Default occurs in the payment of any Payments, or in the payment of any other indebtedness or obligation now or in the future owing by Borrower to Lender,

and if the default continues for ten (10) days after Lender gives Borrower written notice, or if a voluntary or involuntary case in bankruptcy, receivership, or insolvency is at any time begun by or against Borrower, the indebtedness evidenced by this note shall, at the option of Lender, become immediately due and payable, without notice or demand.

For purposes of this Note, the term "Event of Default" means that:

   a. Borrower has failed to pay a single quarterly payment;

   b. Borrower has breached any non-monetary provision of this Note or the Advance Agreement;

   c. pursuant to any bankruptcy law, then: (1) commenced a voluntary case or proceeding; (2) consented to the entry of an order for relief against it in an involuntary case or proceeding; (3) consented to the appointment of a custodian of it or for all or substantially all of its assets; (4) made a general assignment for the benefit of its Lenders; or (5) admitted in writing its inability to pay its debts generally;

   d. Borrower becomes insolvent or makes an assignment for the benefit of creditors;

   e. At any time, the Lender of this Note, for any reason in good faith, believes that the prospect of payment or performance of this Note or any other indebtedness or obligation of the Borrower to Lender is impaired.

6. ***Legal Fees and Waiver.*** Borrower shall reimburse Lender for all expenses, including reasonable attorney fees and legal expenses that Lender pays or incurs in attempting to enforce or collect on this Note. The waiver of any of the terms and conditions of this Note shall not be construed as a waiver of any subsequent breach of the same or any other terms and conditions hereof.

   Borrower and any guarantors and all persons liable, or to become liable under this Note, or any agreement securing this Note, severally waive demand, presentment for payment, and any and all notices of protest, default, nonpayment, or dishonor of this Note and consent to any and all extensions of time for the payment or renewals.

7. ***Governing Law.*** This Promissory Note is governed and should be interpreted in accordance with the laws of the State of Michigan, without regard to choice of law principles. The Parties agree that the Circuit Court for the County of Wayne, State of Michigan, shall have jurisdiction over any dispute arising out of, in connection with, or related to this Note. Venue shall be in Wayne County, Michigan.

8. ***Assignment.*** Borrower shall not be entitled to assign its obligations under this Note without Lender's prior written consent.

9. **_Successors._** This Note shall be binding on Borrower and its successors and permitted assigns, and the benefits of this Note shall inure to Lender and its successors and assigns.

10. **_Amendments._** Any amendment or modification of the terms of this Note must be set forth in a writing signed by Lender.

      **IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed as of the date written below and duly authorized.

**BORROWER:**

DocuSigned by:

*Robert Super*

AA34A2EB823548A...

By: Robert Super
Its: Member

Dated: 5/13/2022

**LENDER:**

DocuSigned by:

*Calvin Hines*

69034624A3DD4C4...

By: Calvin Hines
Its: CEO

Dated: 5/13/2022

# Exhibit N

DocuSign Envelope ID: 7C9F5C4D-D51B-449A-95CC-A567C48F3001

# PROMISSORY NOTE

**Amount**: $ $67,200.00 **("Principal Amount")**

## LENDER:

Genesis Alternative Finance V, LLC
100 Crescent Court, Suite 450
Dallas, TX 75201

## BORROWER:

DIAGNOSTIC CHIROPRACTIC, PC
ROBERT SUPER, DC
PRESIDENT

**Commencement Date:** _____ MARCH 18 _____ **, 2022**

1. ***Obligation.*** For value received, the undersigned, DIAGNOSTIC CHIROPRACTIC _____, ("Borrower"), admits to owing and agrees to pay to the order of GENESIS ALTERNATIVE FINANCE V, LLC ("Lender"), the Principal Amount set forth above in accordance to the terms outlined herein. The Return Amount of this Note shall be paid in full within eighteen (18) months from Commencement Date.

2. ***Purpose.*** Borrower and Lender acknowledge and understand that the indebtedness represented by this Note is for the advancement of funds made by Borrower to Lender pursuant to the No-Fault Advance Security Agreement, dated DECEMBER 9, 2021 , 2022 ("Advance Agreement").

3. ***Place of Payment.*** Each payment on this note shall be made at Lender's address (set forth above) or any other place that Lender directs in writing and shall be made directly to Lender.

4. ***Payment.*** In consideration of the advance made by Lender, the Borrower promises to pay the Lender in a manner negotiated as follows:

   i. <u>Return Amount:</u> Principal Amount x 1.8 ("Return Amount")
   ii. <u>Term:</u> 18-months
   iii. <u>Payments:</u> Borrower agrees to make three (3) payments to Lender every six (6) months a minimum payment equal to thirty-three percent (33%) of Return Amount, ("Payments").

5. ***Default.*** If an Event of Default occurs in the payment of any Payments, or in the payment of any other indebtedness or obligation now or in the future owing by Borrower to Lender, and if the default continues for ten (10) days after Lender gives Borrower written notice, or if a voluntary or involuntary case in bankruptcy, receivership, or insolvency is at any time begun by or against Borrower, the indebtedness evidenced by this note shall, at the option of Lender, become immediately due and payable, without notice or demand.

DocuSign Envelope ID: 7C9F5C4D-D51B-449A-95CC-A567C48F3001

For purposes of this Note, the term "Event of Default" means that:

    a. Borrower has failed to pay a single quarterly payment;

    b. Borrower has breached any non-monetary provision of this Note or the Advance Agreement;

    c. pursuant to any bankruptcy law, then: (1) commenced a voluntary case or proceeding; (2) consented to the entry of an order for relief against it in an involuntary case or proceeding; (3) consented to the appointment of a custodian of it or for all or substantially all of its assets; (4) made a general assignment for the benefit of its Lenders; or (5) admitted in writing its inability to pay its debts generally;

    d. Borrower becomes insolvent or makes an assignment for the benefit of creditors;

    e. At any time, the Lender of this Note, for any reason in good faith, believes that the prospect of payment or performance of this Note or any other indebtedness or obligation of the Borrower to Lender is impaired.

6. **Legal Fees and Waiver.** Borrower shall reimburse Lender for all expenses, including reasonable attorney fees and legal expenses that Lender pays or incurs in attempting to enforce or collect on this Note. The waiver of any of the terms and conditions of this Note shall not be construed as a waiver of any subsequent breach of the same or any other terms and conditions hereof.

Borrower and any guarantors and all persons liable, or to become liable under this Note, or any agreement securing this Note, severally waive demand, presentment for payment, and any and all notices of protest, default, nonpayment, or dishonor of this Note and consent to any and all extensions of time for the payment or renewals.

7. **Governing Law.** This Agreement is governed and should be interpreted in accordance with the laws of the State of Michigan, without regard to choice of law principles. The Parties agree that the Circuit Court for the County of Wayne, State of Michigan, shall have jurisdiction over any dispute arising out of, in connection with, or related to, this Note. Venue shall be in Wayne County, Michigan.

8. **Assignment.** Borrower shall not be entitled to assign its obligations under this Note without Lender's prior written consent.

9. **Successors.** This Note shall be binding on Borrower and its successors and permitted assigns, and the benefits of this Note shall inure to Lender and its successors and assigns.

10. **Amendments.** Any amendment or modification of the terms of this Note must be set forth in a writing signed by Lender.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed as of the date written below and duly authorized.

**BORROWER:**

*Rob Super*

By: ROBERT SUPER DC

Its: PRESIDENT

Dated: 3/18/2022

**LENDER:**

*Calvin L. Hines*

By: Calvin Hines

Its: CEO

Dated: 3/18/2022

# Exhibit O

## PROMISSORY NOTE

**Amount: $206,520.00 ("Principal Amount")**

**LENDER:**

Genesis Alternative Finance V, LLC
100 Crescent Court, Suite 450
Dallas, TX 75201

**BORROWER:**

Diagnostic Chiropractic, PC
Robert Super, DC
36700 Woodward Avenue, Suite 202
Bloomfield Hills, MI 48034

**Commencement Date: June 14, 2022**

1. *Obligation.* For value received, the undersigned, Diagnostic Chiropractic, PC, ("Borrower"), admits to owing and agrees to pay to the order of GENESIS ALTERNATIVE FINANCE V, LLC ("Lender"), the Principal Amount set forth above in accordance to the terms outlined herein. The Return Amount of this Note shall be paid in full within eighteen (18) months from Commencement Date.

2. *Purpose.* Borrower and Lender acknowledge and understand that the indebtedness represented by this Note is for the advancement of funds made by Borrower to Lender pursuant to the No-Fault Advance Security Agreement, dated December 9, 2021 ("Advance Agreement").

3. *Place of Payment.* Each payment on this note shall be made at Lender's address (set forth above) or any other place that Lender directs in writing and shall be made directly to Lender.

4. *Payment.* In consideration of the advance made by Lender, the Borrower promises to pay the Lender in a manner negotiated as follows:

   i. Return Amount: Principal Amount x 1.8 ("Return Amount")
   ii. Term: 18-months
   iii. Payments: Borrower agrees to make three (3) payments to Lender every six (6) months a minimum payment equal to thirty-three percent (33%) of Return Amounts, ("Payments").

5. *Default.* If an Event of Default occurs in the payment of any Payments, or in the payment of any other indebtedness or obligation now or in the future owing by Borrower to Lender,

and if the default continues for ten (10) days after Lender gives Borrower written notice, or if a voluntary or involuntary case in bankruptcy, receivership, or insolvency is at any time begun by or against Borrower, the indebtedness evidenced by this note shall, at the option of Lender, become immediately due and payable, without notice or demand.

For purposes of this Note, the term "Event of Default" means that:

a. Borrower has failed to pay a single quarterly payment;

b. Borrower has breached any non-monetary provision of this Note or the Advance Agreement;

c. pursuant to any bankruptcy law, then: (1) commenced a voluntary case or proceeding; (2) consented to the entry of an order for relief against it in an involuntary case or proceeding; (3) consented to the appointment of a custodian of it or for all or substantially all of its assets; (4) made a general assignment for the benefit of its Lenders; or (5) admitted in writing its inability to pay its debts generally;

d. Borrower becomes insolvent or makes an assignment for the benefit of creditors;

e. At any time, the Lender of this Note, for any reason in good faith, believes that the prospect of payment or performance of this Note or any other indebtedness or obligation of the Borrower to Lender is impaired.

6. *Legal Fees and Waiver.* Borrower shall reimburse Lender for all expenses, including reasonable attorney fees and legal expenses that Lender pays or incurs in attempting to enforce or collect on this Note. The waiver of any of the terms and conditions of this Note shall not be construed as a waiver of any subsequent breach of the same or any other terms and conditions hereof.

Borrower and any guarantors and all persons liable, or to become liable under this Note, or any agreement securing this Note, severally waive demand, presentment for payment, and any and all notices of protest, default, nonpayment, or dishonor of this Note and consent to any and all extensions of time for the payment or renewals.

7. *Governing Law.* This Promissory Note is governed and should be interpreted in accordance with the laws of the State of Michigan, without regard to choice of law principles. The Parties agree that the Circuit Court for the County of Wayne, State of Michigan, shall have jurisdiction over any dispute arising out of, in connection with, or related to this Note. Venue shall be in Wayne County, Michigan.

8. *Assignment.* Borrower shall not be entitled to assign its obligations under this Note without Lender's prior written consent.

DocuSign Envelope ID: C5943F87-6EDB-481F-B41F-F7B7999767F4

9. **_Successors._** This Note shall be binding on Borrower and its successors and permitted assigns, and the benefits of this Note shall inure to Lender and its successors and assigns.

10. **_Amendments._** Any amendment or modification of the terms of this Note must be set forth in a writing signed by Lender.

      **IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed as of the date written below and duly authorized.

**BORROWER:**

DocuSigned by:

*Robert Super*

AA34A2EB823548A

By: Robert Super
Its: President

Dated: 6/14/2022

**LENDER:**

DocuSigned by:

*Calvin Hines*

B4602E732012427

By: Calvin Hines
Its: CEO

Dated: 6/14/2022

# Exhibit P

## STATE OF MICHIGAN
## IN THE BUSINESS COURT
## FOR THE COUNTY OF WAYNE

GENESIS ALTERNATIVE FINANCE IV LLC, and GENESIS ALTERNATIVE FINANCE V LLC,

Plaintiffs,

v.

LINT CHIROPRACTIC P.C., DIAGNOSTIC CHIROPRACTIC MI, P.C., SUPPLIES PLUS MI, LLC., ROBERT SUPER, and RICHARD GELLER,

Defendants.

Case No. 24-010404-CB

Hon. Annette J. Berry

| | |
|---|---|
| Michael Leo Pomeranz (P84908)<br>Kenneth I. Nelson (P87217)<br>Taft Stettinius & Hollister LLP<br>Attorneys for Plaintiffs<br>27777 Franklin Rd., Ste. 2500<br>Southfield MI 48034<br>(248) 351-3000<br>mpomeranz@taftlaw.com<br>knelson@taftlaw.com | Gregory J. Rohl (P39185)<br>The Law Offices of Gregory J. Rohl, P.C.<br>Attorney for Defendants<br>4051 Haggerty Road<br>West Bloomfield, MI 48323<br>(248) 380 9404<br>greg@rohllaw.com |

## AFFIDAVIT OF MICHAEL LEO POMERANZ

STATE OF MICHIGAN )
                     )ss
COUNTY OF OAKLAND )

Michael Leo Pomeranz, being duly sworn, deposes and says as follows:

1. I make this Affidavit under the penalty of perjury.

2. I am over the age of 18 years old.

3. I am a Partner at Taft Stettinius & Hollister LLP ("Taft"), counsel of record for Plaintiffs, in this matter.

4. I submit this Affidavit to evidence attorney fees accrued in this matter.

5. The total attorney fees incurred by Plaintiffs in this matter is no less than $233,788.13.

6. In particular, Plaintiffs have incurred no less than $233,788.13 in attorneys' fees by exercising their rights and remedies under the parties' Agreements (and in prosecuting this lawsuit, including statutory claims entitling Plaintiffs to attorneys' fees).

7. I graduated from Yale Law School in 2014 and was admitted to the New York Bar in 2015. For the first two years of my legal career, I served as term clerk in two federal judicial chambers. From 2016 to 2020, I served as a Complex Litigation and Trials associate in the New York City office of the global law firm Skadden, Arps, Slate, Meagher, and Flom. In 2020, I began work for what was then called Jaffe, Raitt, Heuer, and Weiss, based in Southfield. In 2022, Jaffe merged with Taft.

8. I am and have been at all material times the partner responsible for managing the above-captioned litigation for Taft's clients.

9. My responsibilities included obtaining assistance with litigating this matter from my partners, associates, paralegals, and other service providers whom I chose because, in my judgment, that service provider is best suited for the particular task or work.

10. I selected or approved of all Taft timekeepers who worked on this matter, and I am familiar with each timekeeper's experience, abilities and qualifications.

11. I am familiar with Taft's electronic billing software to the extent that I understand how attorney and paralegal time and Taft's expenses paid on behalf of each client are inputted and tracked.

12. This information is generated for my review on a monthly basis.

13. As billing partner on this matter, I review and, as I deem appropriate, edit the pre-bill, then return it to Taft's Billing department.

14. Taft's Billing department transmits bills to clients.

15. Taft's billing software creates, tracks, maintains, and stores bill and time and cost entries.

16. The information inputted and stored in Taft's billing software are kept and maintained as Taft's billing records in the regular course of Taft's business as a law firm representing its clients.

17. I am familiar and experienced in downloading or importing such reports in an Excel file or other format directly from Taft's billing software in order to reflect actual time and costs charged, billed and paid in any given matter.

18. It is the regular course of business for Taft to create such records. Taft's billing software accurately records time and cost entries when properly operated.

19. In support of and to prepare this affidavit, I generated and reviewed such files.

20. The legal services performed in this matter were reasonable, necessary, and proper.

21. This matter has been pending since July 2024.

22. In this matter, Plaintiffs have filed a Motion for Preliminary Injunction and Appointment of a Receiver, Emergency Motion for Temporary Restraining Order, Motion for Sanctions, Motions to Extend Discovery, Motion to Amend Plaintiffs' Complaint, and a Motion for Summary Disposition.

23. Further, Plaintiffs conducted extensive discovery, including multiple depositions, and the parties attended a mediation.

24. Recently, Plaintiffs have incurred significant fees as Plaintiffs' counsel prepare for trial.

25. Thus, due to the extensive amount of work Plaintiffs' counsel have done in this matter, the total cost and fees incurred by Plaintiffs' is reasonable.

26. I have billed the clients for approximately 176 hours of my time on this matter.

27. That reflects (i.e., does not include) time "written off" both formally and informally (the latter by not recording it in the first place). Just for example, I have not billed for any time spent conferring on the telephone with my client.

28. In addition, I significantly discounted my standard rate, even before writing off time.

29. The approximately $103,000 I have billed for my personal time represents an effective hourly rate of no more than $586. (In reality, my effective hourly rate has been much lower, because I have not recorded much of my time spent in this matter.)

30. The timekeeper whose time has been responsible for most of the attorney fees so far is my associate Kenny Nelson.

31. Mr. Nelson graduated from the University of Detroit Mercy School of Law in 2023.

32. Mr. Nelson has diaried no less than 326.7 hours on this matter, for which I have billed the clients no less than $109,618.43. This represents an effective hourly rate of $335.53, a considerable discount off of Mr. Nelson's standard rate.

33. In addition to Mr. Nelson, several other current and former associates have assisted with this matter, dairying no less than 87.30 hours. For their time, I have billed the client $21,169.70. This represents an hourly rate of approximately $242.50.

34.     In addition, I have billed the client another $6,143 for work performed by other timekeepers. However, my client has directed me not to seek reimbursement for that time.

35.     The billing rates of all timekeepers are reasonable and competitive rates for lawyers with similar expertise and experience in southeastern Michigan for the type of work required in this matter and who work for firms of similar rank and size.

36.     The State Bar of Michigan's 2023 Economics of Law Survey results report that 5% of attorneys with 6 to 15 years of experience had an hourly rate at or above $575 (11 to 15 years) or $585 (6 to 10 years). I respectfully contend that my experience make it appropriate for my effectively hourly rate to be at that level.

37.     In addition, only 21% of the Survey respondents were equity partners, and only 11% were in offices of 50 or more lawyers. I am an equity partner in Taft's Southfield office, which has nearly 150 lawyers.

38.     Finally, the data from the 2023 Survey represent 2022 billing rates. these numbers are from 2023. Inflation has been at least 15% since that time.

39.     Mr. Nelson is a third-year associate. His effective rate is below what the 2023 Survey indicates is the 75th percentile for 2022 hourly billing rates for associates of 3 to 5 years of experience, and less than the mean 2022 hourly billing rate for attorneys in the field of civil litigation. Similarly, although the other associates ranged in experience up to twice as much experience, their effective rates were less.

40.     Plaintiffs have also incurred costs, including those related to mediation, depositions (e.g., payment for court reporter), and filings. Those costs total no less than $7,063.30, itemized as follows:

  a. Deposition / Transcript:    $3,305.70

  b. Westlaw research:           $1,455.00

  c. Service of subpoenas:       $1,109.70

  d. Copying & printing:         $960.90

  e. Filing and recording:       $232.00

41.     My clients have incurred additional attorneys fees related to the allegations pled in the complaint, including those incurred by Michigan counsel in prior litigation as well as by other counsel not based in Michigan.  However, my clients have directed me not to seek reimbursement for those fees at this time.

42.     If called as a witness, I would be able to testify to the matters stated in this Affidavit.

_____
Michael Leo Pomeranz, Plaintiffs' Counsel

Subscribed and sworn to before me

this 7th day of April , 2026.


_____
SECRET S. WASHINGTON, Notary Public

State of Michigan, County of Wayne

My commission expires: 12-08-2029

Acting in the County of Oakland

SECRET S. WASHINGTON
NOTARY PUBLIC, STATE OF MI
COUNTY OF WAYNE
MY COMMISSION EXPIRES Dec 8, 2029
ACTING IN COUNTY OF Oakland

# Exhibit Q

| Fund | Defendant | GAF Advances (Exhibit I) | | Detailed Schedules (Exhibits D & E) | | Difference | | Reference |
|---|---|---|---|---|---|---|---|---|
| GAF V | Lint | $ | 1,515,197.47 | $ | 1,514,900.31 | $ | 297.16 | Exhibit D |
| GAF V | Supplies | | 277,200.00 | | 277,200.00 | | - | Exhibit D |
| GAF V | Diagnostic | | 273,720.00 | | 273,720.00 | | - | Exhibit D |
| Subtotal GAF V Advances | | $ | 2,066,117.47 | $ | 2,065,820.31 | $ | 297.16 | |
| GAF IV | Lint | $ | 316,540.63 | | 316,540.63 | | - | Exhibit E |
| **Total GAF IV & V Advances** | | **$** | **2,382,658.10** | **$** | **2,382,360.94** | **$** | **297.16** | |

| Fund | Defendant | Defendant Collections | | GAF Repayments | | Collections Retained by Defendants | | Reference |
|---|---|---|---|---|---|---|---|---|
| GAF V | Lint | $ | 819,059.08 | $ | 506,798.72 | $ | 312,260.36 | Exhibit D |
| GAF V | Supplies | | 299,441.33 | | 200,212.95 | | 99,228.38 | Exhibit D |
| GAF V | Diagnostic | | 196,564.22 | | 97,431.74 | | 99,132.48 | Exhibit D |
| Subtotal GAF V | | $ | 1,315,064.63 | $ | 804,443.41 | $ | 510,621.22 | |
| GAF IV | Lint | $ | 129,941.88 | $ | 67,811.53 | $ | 62,130.35 | Exhibit E |
| **Total GAF IV & V Amounts** | | **$** | **1,445,006.51** | **$** | **872,254.94** | **$** | **572,751.57** | |

*Remaining amount owed to GAF V - excluding agreed upon interest/return*    $    *1,261,674.06*

*Remaining amount owed to GAF IV - excluding agreed upon interest/return*    *248,729.10*

***Total amount owed to GAF - excluding agreed upon interest/return***    *$*    *1,510,403.16*

Document received by the MI Wayne 3rd Circuit Court

# Exhibit R

GENESIS ALTERNATIVE FINANCE LLC,
and GENESIS ALTERNATIVE FINANCE V LLC,

Case No. 24-010404-CB
Hon. Annette J. Berry

        Plaintiffs,

v.

LINT CHIROPRACTIC P.C., DIAGNOSTIC
CHIROPRACTIC MI, P.C., and SUPPLIES
PLUS MI, LLC,

        Defendants.

| | |
|---|---|
| Taft Stettinius & Hollister, LLP<br>Michael Leo Pomeranz (P84908)<br>Kenneth I. Nelson (P87217)<br>Attorneys for Plaintiffs<br>27777 Franklin Road, Suite 2500<br>Southfield, MI 48034<br>(248) 351-3000<br>mpomeranz@taftlaw.com<br>knelson@taftlaw.com | Law Offices of Gregory J. Rohl PC<br>Gregory J. Rohl (P39185)<br>Attorneys for Defendants<br>4051 Haggerty Rd<br>West Bloomfield, MI 48323<br>(248) 380-9404<br>greg@rohllaw.com |
| Stevenson & Bullock, P.L.C<br>Charles D. Bullock (P55550)<br>*Receiver*<br>Elliot G. Crowder (P76137)<br>*Counsel for Receiver*<br>26100 American Drive, Suite 500<br>Southfield, MI 48034<br>Phone: (248) 354-7906<br>Facsimile: (248) 354-7907<br>Email: cbullock@sbplclaw.com<br>Email: ecrowder@sbplclaw.com | |

## RECEIVER'S REPORT AND RECOMMENDATION

NOW COMES Charles D. Bullock, the Court-appointed Receiver in the above captioned matter (the "Receiver"), who submits the following as his Report and Recommendation (the "Report"). This Report shall serve as an overview and update of the matters that the Receiver has

1

Document received by the MI Wayne 3rd Circuit Court.

been appointed by the Court to address his findings and his recommended course of action going forward. This Report is furnished pursuant to the *Order for Receivership and Other Relief* dated January 8, 2025 (the "Receivership Order"). See, **Exhibit A**.

## Introduction

The Receiver has faithfully discharged his duties since the commencement of the instant receivership. The Receivership Order appointed the Receiver to, *inter alia,* prepare and file this Report and Recommendation in order to provide guidance and clarity to the Court. In some instances, the Receiver's efforts were fruitful. In others, the Defendants and their principal impaired the Receiver's efforts and thereby, the ability to provide clarity. What is clear, however, is:

➢ There is approximately $1.5 million due and owing to the Genesis Alternative Finance, LLC and Genesis Alternative Finance V LLC (collectively, "Genesis" or the "Plaintiffs");

➢ There are avoidable transactions from the Defendants that need to be pursued. Indeed, at nearly every turn, following Plaintiffs' funding, the Defendants transferred funds to other entities owned and controlled by their principal, Dr. Robert Super ("Super"). These transfers total no less than $2.3 million and, in many circumstances, were made on the same day that funding was received. Below is a snapshot of just *some* of the banking activity for the days when loan proceeds were received by the Defendants:

| Date | Genesis Fund | Defendant Entity | Defendant Bank | Defendant Bank Account Ending | Genesis Advance Amount | Defendant Transfers | Timing of Defendant Transfers | Notes regarding Defendant transfers out of bank account |
|---|---|---|---|---|---|---|---|---|
| 3/28/2022 | GAF V | Lint | Fifth Third | 4807 | $ 124,675.00 | $ (124,000.00) | Same Day | On 3/28/22 $124,000 was transferred to Medical Capital Solutions labeled as "Management Services" expense. |
| 3/28/2022 | GAF V | Diagnostic | JP Morgan Chase | 6151 | $ 67,200.00 | $ (67,200.00) | Same Day | On 3/28/22 $67,200 was transferred to Medical Capital Solutions account ending '3028 labeled as "Management Fees" expense. |
| 5/19/2022 | GAF V | Lint | Fifth Third | 4807 | $ 337,622.95 | $ (335,000.00) | Same Day | On 5/19/22 $335,000 was transferred to Medical Capital Solutions labeled as "Management Services" expense. |
| 5/19/2022 | GAF V | Supplies | JP Morgan Chase | 5012 | $ 94,800.00 | $ (80,000.00) | Same Day | On 5/19/22 $80,000 was transferred to Medical Capital Solutions account ending '3028 labeled as "Management Fees" expense. |
| 6/21/2022 | GAF V | Diagnostic | JP Morgan Chase | 6151 | $ 206,520.00 | $ (206,000.00) | Same Day | On 6/21/22 $206,000 was transferred to Medical Capital Solutions account ending '3028 labeled as "Management Fees" expense. |
| 7/26/2022 | GAF V | Lint | Fifth Third | 4807 | $ 283,962.58 | $ (285,000.00) | Same Day | On 7/26/22 $200,000 was transferred to Medical Capital Solutions labeled as "Management Services" expense and $83,000 was transferred to Lint Chiropractic JP Morgan Chase account ending '0000. Three days later on 7/29/22 Lint Chiropractic JPMorgan Chase accounting ending '0000 transferred $100,000 to account ending '9899 which is M Medical Management. |

Document received by the MI Wayne 3rd Circuit Court.

➢ When the Receiver requested further detail and documentation from the Defendants and Super regarding such transfers, Super and the Defendants refused to cooperate;

➢ The prospects of recovery of Defendants' accounts receivable is speculative and, at best, still is insufficient to satisfy Plaintiffs' claim; and

➢ Defendants' financial records are unreliable, requiring the Receiver and his Professionals to rely on third-party records.

Based upon the Receiver's review, of the $2.38 million of loan proceeds advanced by Genesis, $2.35 million was transferred out from the Defendants to other Super related entities or to Dr. Super personally. The loan advances never remained in the Defendants' accounts for more than a few days. Rather, the Defendants made transfers out of their respective bank accounts, either the same day, or in close proximity to, the date Plaintiffs advanced the funds. When questioned regarding these transfers, Dr. Super identified the recipients all as entities he owned and controlled. Further, in support of the alleged "management fees," Dr. Super provided only two management service agreements – both of which lacked financial terms and both of which show Dr. Super on both sides of the transaction.

As set forth herein, the Receiver recommends an expansion of his powers in order to assume full financial control of the Defendants and to pursue significant avoidance actions available under MCL § 566.5431, et seq.

### Background

From May of 2021 through July of 2022 Genesis advanced Defendants approximately $2.4 million, secured by over 1,000 patient billings that were/are the subject of collection suits by various law firms. To date, Defendants (and other entities owned by Dr. Super) have returned approximately $870,000 to Genesis, leaving a balance owed of approximately $1.5 million,

Document received by the MI Wayne 3rd Circuit Court.

exclusive of any agreed upon interest or return.

In previous litigation, the parties settled their disputes with Defendants agreeing to substantial financial oversight afforded to the Plaintiffs. What followed was not what was envisioned. Indeed, the Defendants removing over $775,000 from a bank account without Plaintiffs' approval, thereby leading to the instant lawsuit. The Plaintiffs and Court were left with substantive questions regarding the viability of the Defendants' assets and the prospects for repayment. The Court appointed the Receiver in order to provide clarity and, pursuant to the Receivership Order, the Receiver furnishes this Report and Recommendation.

## Actions taken by Receiver

Since the acceptance of the Receivership on or about January 13, 2025, the Receiver has been faithfully discharging his duties pursuant to the Receivership Order. The Receiver, either individually or through counsel, has taken the following actions in furtherance of his duties including, without limitation:

1. The Receiver has met (virtually due to geographical reasons) and engaged in ongoing communication with the parties and/or their respective counsel regarding the subject matter of the receivership.

2. The Receiver received and reviewed documentation from the parties regarding the subject matter of the receivership. Substantially all of this documentation has been shared with counsel for the parties.

3. The Receiver requested documentation from the parties that would be customary to a dispute such as the present.

Document received by the MI Wayne 3rd Circuit Court.

4. Though not required, the Receiver consistently requested that Defendants comply with the Receivership Order and his requests for information, giving extraordinary latitude to the Defendants.

5. The Receiver evaluated the pleadings and positions of the parties. The Receiver has kept the parties and the Court advised of his efforts.

6. The Receiver has conducted his own, independent, analysis of the issues presented in the Receivership Order, including the same in this Report and Recommendation.

7. The Receiver has reviewed information in the public record regarding the Receivership Estate.

8. The Receiver has been in regular communication with the parties regarding the subject dispute and his ongoing findings.

9. The Receiver has ensured compliance with the Receivership Order, including preventing interference with his duties. When necessary, the Receiver has sought court intervention in order to ensure compliance with the Receivership Order.

10. On February 19, 2025, the Court entered the *Order Extending Deadline for Receiver's Report* because of Defendants' failure to cooperate and the outstanding documentation that was owed to the Receiver at that time. **Exhibit B.**

11. The Receiver has retained professionals to assist in the performance of his duties under the Receivership Order. The Receiver retained Stevenson & Bullock, P.L.C. to perform legal services on his behalf regarding the subject of the Receivership and Riveron to serve as financial advisor. The analysis of Riveron is attached hereto as **Exhibit C.**

5

Document received by the MI Wayne 3rd Circuit Court.

## FINDINGS OF THE RECEIVER

### a. *The Receivership Order*

12. On January 8, 2025, the Court entered the Receivership Order. The Receivership Order provides, *inter alia*, that the Receiver is authorized to investigate the financial affairs of the Defendants and to prepare a Report. The Report was to include detail regarding the following:

   a. Accounts receivable;

   b. Whether any Defendant has received payments on any Genesis-related account receivable that the Defendant did not pay over to Genesis and, if so, the details of those receipts, including whether the funds remain in the possession of any Defendant and, if not, when and to whom they were transferred;

   c. Status of any other amounts owed by one or more of Defendants to Genesis;

   d. Defendants' current assets;

   e. Whether Defendants have sufficient assets to satisfy debts to Genesis; and

   f. Any other information that, in the Receiver's reasonable business judgment, is relevant or necessary.

13. The Receivership Order also requires that an Accounting take place which includes the following: (i) the patient name, (ii) provider facility, (iii) dates of service, (iv) bill amount, (v) amount advanced by Genesis, (vi) whether the advance was from GAF IV or GAF V, (vii) the date of advance, (viii) case status, (ix) date when provider collected funds, (x) gross amount collected as returns, (xi) amount of returns paid to Genesis, and (xii) amount retained by provider (i.e., the difference between the previous two items) (collectively, the "Accounting Criteria").

14. This Report is furnished pursuant to the Receivership Order and addresses the above issues, in turn.

6

Document received by the MI Wayne 3rd Circuit Court.

***b.*** ***The Accounting – Agreement between the parties***

15. As an initial matter, it was imperative that the Receiver identify the amount in controversy. Remarkably, there was not disagreement between Genesis and the Defendants. Both sides operated from similar – though manipulatable – documentation regarding the Accounting Criteria.

16. The Receiver worked in concert with his Professionals, including Riveron, to assist in his analysis.

17. Pursuant to the Order, this analysis began by reviewing detailed schedules maintained by Quantum Outsourcing Group ("Quantum"), a servicer responsible for the collection and tracking of payments received from law firms upon resolution/settlement of the numerous suits (i.e., the accounts receivables identified as collateral for the Genesis loans).

18. The Receiver discussed each of the files with Dr. Super and representatives of Genesis, and both parties provided updates for certain cases through February 13, 2025. In general, both parties agreed as to the amounts advanced by Genesis and the remaining principal balance of the loan amounts outstanding.

19. Further, the Receiver understands that Genesis engaged in an underwriting process when advancing funds to confirm the existence of patients, dates of service, and the like.

20. The Receiver's analysis shows that GAF V advanced approximately $2.1 million to Defendants and GAF IV advanced approximately $300,000 solely to Lint Chiropractic, for a total of approximately $2.4 million. The amount of these advances were verified via a review of Defendants' bank statements and detailed general ledgers, as well as transaction dates and banking information provided by Genesis.[1]

---

[1] There was an immaterial difference of $297.16 between amounts reflected in the Defendants'

7

Document received by the MI Wayne 3rd Circuit Court.

21. To date, Defendants have collected approximately $1.4 million related to the subject suits, of which, approximately $870,000 has been remitted to Genesis and approximately $570,000 has been retained by the Defendants. Based on the forgoing, the remaining principal balance owed to Genesis, exclusive of any agreed upon returns, is approximately **$1.5 million.**

22. Next, the Receiver attempted to verify payments remitted to Genesis via the same review of Defendants' bank statements and general ledgers; however, the Receiver was unable to do so based on Defendants' general ledgers.

23. For example, the parties agree that Defendants made a lump sum payment of $400,000 to Genesis in April of 2024, yet there is no record of such a disbursement in the Defendants' bank accounts or general ledgers. According to Dr. Super, this lump sum payment was not made from Defendants' accounts, but rather, it came from MI Medical Management's account at JP Morgan Chase ending in 9899.

24. When the Receiver requested copies of bank statements to corroborate this position, Dr. Super refused to provide them, claiming that the request was outside of the purview of the instant litigation.

25. Notably, given the agreement of the parties, the Receiver is operating from the belief that such $400,000 was actually paid. The Receiver is of the firm belief that Dr. Super's refusal to provide the requested bank statements is to shield further discovery by the Receiver regarding the substantial transfers made from the Defendants to MI Medical Management.

26. The Receiver also attempted to verify the outstanding loan balance due to Genesis via a review of Defendants' books and records; however, there is no record of a loan amount due

---

bank statements and general ledgers as compared to the detailed schedules maintained by Quantum.

Document received by the MI Wayne 3rd Circuit Court.

to Genesis in either the Defendants' detailed general ledgers or tax returns. Rather (and remarkably), the Defendants' recorded Genesis' advances as "Business Income" in their books and records, rather than a loan.

27. In sum, it appears the parties are in agreement regarding the data included in the Accounting Criteria and that Genesis is owed no less than $1.5 million; however, the Receiver's efforts to surmise the same are telling when completing the other portions of this Report and Recommendation as required by the Receivership Order.

   c.   ***The Defendants are unlikely to satisfy the debts owed to Genesis from collections***

28. Next, the Receiver undertook an analysis regarding the Defendants' ability to repay the moneys owed to Genesis. The Defendants are not operating and have sold, abandoned, or otherwise dispossessed themselves of their tangible physical assets. The Defendants' principal, Dr. Super, resides in Florida and appears to attempt to manage matters remotely.

29. Defendants' collective cash balance in their respective checking and savings accounts totaled $3,776.70 as of January 31, 2025, and was deemed to be immaterial for purposes of assessing Defendants' ability to repay the subject Genesis loans.

30. The primary remaining assets held by the Defendants consist of a face value of approximately $5.1 million of active collection suits filed by various law firms; however, collectability is suspect. Indeed, numerous insurance companies have filed lawsuits against Defendant Lint Chiropractic alleging it submitted fraudulent, unlawful, and/or excessive insurance claims for services to Michigan auto accident victims.

31. Since the entry of the Receivership Order on January 8, 2025, Genesis has only received $17,535.00 in the lockbox account ordered pursuant to such order.

Document received by the MI Wayne 3rd Circuit Court.

32. Even assuming that the Defendants reached their previous collection rates and remitted 100% of the collected funds to Genesis, they still would be unable to repay Genesis. Historically, the collection rate was approximately 28% for GAF V suits and 22% for GAF IV suits. Extrapolating such numbers, the Defendants could potentially collect approximately $1.3 million from the remaining suits that are labeled as open/partial settlement/unknown, leaving approximately $200,000 unpaid without considering any interest, fees, or other charges that Genesis may assert due and owing.

33. Moreover, it is the Receiver's experience that temporal delays generally lead to worse collectability results in outstanding receivables.

34. Given the foregoing, the Defendants are unable to satisfy debts owed to Genesis from simply collection of outstanding receivables.

*d.* ***Defendants transferred nearly all of the Genesis loan proceeds to insiders***

35. Next, the Receiver attempted to trace the Genesis loan proceeds; however, such efforts were stonewalled by Defendants once the Receiver identified that such loan proceeds funneled in and out of the Defendants' coffers to other Super related entities.

36. **Based upon the Receiver's review, of the $2.38 million of loan proceeds advanced by Genesis, $2.35 million was transferred out from the Defendants to other Super related entities or to Dr. Super personally.**

37. The loan advances never remained in the Defendants' accounts for more than a few days. Rather, the Defendants made transfers out of their respective bank accounts, either the same day, or in close proximity to, the date Genesis advanced the funds. According to the Defendants' detailed general ledgers, the transfers out were recorded as an expense for "Management

Document received by the MI Wayne 3rd Circuit Court.

Fees/Services" and the funds were primarily sent to MI Medical Management and Medical Capital

Solutions accounts at JP Morgan Chase bank (accounts ending 7072/9899 and 3028, respectively).

38.     Below is a snapshot of just *some* of the banking activity for the days when loan

proceeds were received by the Defendants:

| Date | Genesis Fund | Defendant Entity | Defendant Bank | Defendant Bank Account Ending | Genesis Advance Amount | Defendant Transfers | Timing of Defendant Transfers | Notes regarding Defendant transfers out of bank account |
|------|--------------|------------------|----------------|------------------------------|------------------------|---------------------|-------------------------------|--------------------------------------------------------|
| 3/28/2022 | GAF V | Lint | Fifth Third | 4807 | $ 124,675.00 | $ (124,000.00) | Same Day | On 3/28/22 $124,000 was transferred to Medical Capital Solutions labeled as "Management Services" expense. |
| 3/28/2022 | GAF V | Diagnostic | JP Morgan Chase | 6151 | $ 67,200.00 | $ (67,200.00) | Same Day | On 3/28/22 $67,200 was transferred to Medical Capital Solutions account ending '3028 labeled as "Management Fees" expense. |
| 5/19/2022 | GAF V | Lint | Fifth Third | 4807 | $ 337,622.95 | $ (335,000.00) | Same Day | On 5/19/22 $335,000 was transferred to Medical Capital Solutions labeled as "Management Services" expense. |
| 5/19/2022 | GAF V | Supplies | JP Morgan Chase | 5012 | $ 94,800.00 | $ (80,000.00) | Same Day | On 5/19/22 $80,000 was transferred to Medical Capital Solutions account ending '3028 labeled as "Management Fees" expense. |
| 6/21/2022 | GAF V | Diagnostic | JP Morgan Chase | 6151 | $ 206,520.00 | $ (206,000.00) | Same Day | On 6/21/22 $206,000 was transferred to Medical Capital Solutions account ending '3028 labeled as "Management Fees" expense. |
| 7/26/2022 | GAF V | Lint | Fifth Third | 4807 | $ 283,962.58 | $ (283,000.00) | Same Day | On 7/26/22 $200,000 was transferred to Medical Capital Solutions labeled as "Management Services" expense and $83,000 was transferred to Lint Chiropractic JP Morgan Chase account ending '0000. Three days later on 7/29/22 Lint Chiropractic JPMorgan Chase accounting ending '0000 transferred $100,000 to account ending '9899 which is MI Medical Management. |

39.     When the Receiver requested Dr. Super produce copies of the bank statements for

the recipient entities, Dr. Super refused.

40.     It is clear from the Profit and Loss Statements that the Defendants transferred the

majority of amounts reported as income to other entities owned and/or controlled by Dr. Super and

recorded such transfers as an expense item labeled "Management Fees/Services."

41.     In support of the alleged "management fees," Dr. Super provided two management

service agreements.   The first agreement was between Lint Chiropractic, P.C., MI Medical

Management, LLC and Diagnostic Chiropractic, P.C.  The second agreement was between Lint

Chiropractic, P.C., MI Medical Management, LLC. and Lint Chiropractic II, P.C.   Both

agreements appeared to be identical and contained sections regarding management fees, however

the terms and amounts were blank.  In addition, Dr. Super executed both agreements on behalf of

all the entities involved and, when interviewed by the Receiver, confirmed that all of these entities

are owned and controlled by him and stated that the entities "were" him.

11

Document received by the MI Wayne 3rd Circuit Court.

42.  Notably, management services agreements were not provided to support management fees paid to Medical Capital Solutions, and no agreements were produced related to Supplies Plus MI, LLC.

43.  The Receiver identified the following accounts that were recipients of Genesis loan proceeds (following their brief shelf life with the Defendants); however, Dr. Super refused to provide the recipient bank account statements:

| Bank Account No. | Entity | Produced |
|---|---|---|
| 7072 | MI Medical Mgt | NO |
| 9899 | MI Medical Mgt | NO |
| 3028 | Medical Capital Solutions | NO |
| 9527 | Dr. Super Personal Account | NO |
| 3201 | Dr. Super Personal Account | NO |
| 6788 | Dr. Super Personal Account | NO |
| 8292 | Lint II, Professional Services | NO |

44.  Given all of the foregoing, it is the Receiver's opinion that there are significant avoidance actions available under MCL § 566.5431, *et seq.* that can and should be pursued.

## RECOMMENDATION AND CONCLUSION

The Receiver believes that it is appropriate that the Court order the expansion of his powers in order to assume full control of the Defendants' assets and to pursue claims against third parties in order to recover fraudulent transfers and/or any other claims in law or equity available. The Defendants simply have no hope of repaying the funds they readily admit owing to the Plaintiffs.

*[Signature on following page]*

Document received by the MI Wayne 3rd Circuit Court.

Respectfully submitted,
**STEVENSON & BULLOCK, P.L.C.**

By: /s/ Charles D. Bullock
Charles D. Bullock (P55550)
*Court Appointed Receiver*
Elliot G. Crowder (P76137)
*Counsel for Receiver*
26100 American Drive, Suite 500
Southfield, MI 48034
Phone: (248) 354-7906
Facsimile: (248) 354-7907
Email: cbullock@sbplclaw.com
Email: ecrowder@sbplclaw.com

Dated: March 28, 2025

13

Document received by the MI Wayne 3rd Circuit Court.

# Exhibit S

ℹ️ Emergency-related state tax relief available for taxpayers located in multiple counties of Michigan impacted by severe weather.

**Learn About Disaster Relief** >

---

ℹ️ Wholesale Marijuana Tax Update

A new Revenue Administrative Bulletin and payment information for the Wholesale Marijuana Tax are now available.

**Learn More** >

---



# Treasury Taxes

## Interest Rates for Money Judgments

**January 2, 2026**

Subsection 6 of Section 6013, and Subsection 2 of Section 6455 of Public Act No. 236 of 1961, as amended, (M.C.L. Sections 600.6013 and 600.6455) state the following:

Sec. 6013(6) Except as otherwise provided by subsection (5) and subject to subsection (11), for complaints filed on or after January 1, 1987, interest on a money judgment recovered in a civil action shall be calculated at 6-month intervals from the date of filing the complaint at a rate of interest which is equal to 1% plus the average interest rate paid at auctions of 5-year United States treasury notes during the 6 months immediately preceding July 1 and January 1, as certified by the state treasurer, and compounded annually, pursuant to this section.

Sec. 6455 (2) Except as otherwise provided in this subsection, for complaints filed on or after January 1, 1987, interest on a money judgment recovered in a civil action shall be

calculated from the date of filing the complaint at a rate of interest which is equal to 1% plus the average interest rate paid at auctions of 5-year United States treasury notes during the 6 months immediately preceding July 1 and January 1, as certified by the state treasurer, and compounded annually, pursuant to this section.

> *Pursuant to the above requirements, the State Treasurer of the State of Michigan, hereby certify that **3.725%** was the average high yield paid at auctions of 5-year U.S. Treasury Notes during the six months preceding January 1, 2026.*

## HISTORICAL INTEREST RATES

| TIME PERIOD | INTEREST RATE |
| --- | --- |
| 1/1/2026 | 3.725% |
| 7/1/2025 | 4.083% |
| 1/1/2025 | 4.016% |
| 7/1/2024 | 4.359% |
| 1/1/2024 | 4.392% |
| 7/1/2023 | 3.762% |
| 1/1/2023 | 3.743% |
| 7/1/2022 | 2.458% |
| 1/1/2022 | 1.045% |
| 7/1/2021 | 0.739% |
| 1/1/2021 | 0.330% |
| 7/1/2020 | 0.699% |
| 1/1/2020 | 1.617% |
| 7/1/2019 | 2.235% |

| | |
|---|---|
| 1/1/2019 | 2.848% |
| 7/1/2018 | 2.687% |
| 1/1/2018 | 1.984% |
| 7/1/2017 | 1.902% |
| 1/1/2017 | 1.426% |
| 7/1/2016 | 1.337% |
| 1/1/2016 | 1.571% |
| 7/1/2015 | 1.468% |
| 1/1/2015 | 1.678% |
| 7/1/2014 | 1.622% |
| 1/1/2014 | 1.452% |
| 7/1/2013 | 0.944% |
| 1/1/2013 | 0.687% |
| 7/1/2012 | 0.871% |
| 1/1/2012 | 1.083% |
| 7/1/2011 | 2.007% |
| 1/1/2011 | 1.553% |
| 7/1/2010 | 2.339% |
| 1/1/2010 | 2.480% |
| 7/1/2009 | 2.101% |

| | |
|---|---|
| 1/1/2009 | 2.695% |
| 7/1/2008 | 3.063% |
| 1/1/2008 | 4.033% |
| 7/1/2007 | 4.741% |
| 1/1/2007 | 4.701% |
| 7/1/2006 | 4.815% |
| 1/1/2006 | 4.221% |
| 7/1/2005 | 3.845% |
| 1/1/2005 | 3.529% |
| 7/1/2004 | 3.357% |
| 1/1/2004 | 3.295% |
| 7/1/2003 | 2.603% |
| 1/1/2003 | 3.189% |
| 7/1/2002 | 4.360% |
| 1/1/2002 | 4.140% |
| 7/1/2001 | 4.782% |
| 1/1/2001 | 5.965% |
| 7/1/2000 | 6.473% |
| 1/1/2000 | 5.756% |
| 7/1/1999 | 5.067% |

| | |
|---|---|
| 1/1/1999 | 4.834% |
| 7/1/1998 | 5.601% |
| 1/1/1998 | 5.920% |
| 7/1/1997 | 6.497% |
| 1/1/1997 | 6.340% |
| 7/1/1996 | 6.162% |
| 1/1/1996 | 5.953% |
| 7/1/1995 | 6.813% |
| 1/1/1995 | 7.380% |
| 7/1/1994 | 6.128% |
| 1/1/1994 | 5.025% |
| 7/1/1993 | 5.313% |
| 1/1/1993 | 5.797% |
| 7/1/1992 | 6.680% |
| 1/1/1992 | 7.002% |
| 7/1/1991 | 7.715% |
| 1/1/1991 | 8.260% |
| 7/1/1990 | 8.535% |
| 1/1/1990 | 8.015% |
| 7/1/1989 | 9.105% |

| 1/1/1989 | 9.005% |
|----------|--------|
| 7/1/1988 | 8.210% |
| 1/1/1988 | 8.390% |
| 7/1/1987 | 7.500% |
| 1/1/1987 | 6.660% |



Michigan Department of
**TREASURY**

# Interest Rates for Money Judgments

Copyright State of Michigan

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

_____ District of _____

Case number (if known): _____

Chapter you are filing under:

☐ Chapter 11
☐ Chapter 12
☒ Chapter 13

**EXHIBIT F**

FILED TPA INTAKE USBC
13 APR 2026 PM 12:55

☐ Check if this is an amended filing

Official Form 101

# Voluntary Petition for Individuals Filing for Bankruptcy    06/24

The bankruptcy forms use *you* and *Debtor 1* to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use *you* to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be *yes* if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as *Debtor 1* and the other as *Debtor 2*. The same person must be *Debtor 1* in all of the forms.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

| Part 1: | Identify Yourself |
| --- | --- |

*No Fee*

|  | **About Debtor 1:** | **About Debtor 2 (Spouse Only in a Joint Case):** |
| --- | --- | --- |
| **1. Your full name** <br> Write the name that is on your government-issued picture identification (for example, your driver's license or passport). <br> Bring your picture identification to your meeting with the trustee. | Robert <br> First name <br> Scott <br> Middle name <br> Super <br> Last name <br> _____ <br> Suffix (Sr., Jr., II, III) | First name <br> Middle name <br> Last name <br> Suffix (Sr., Jr., II, III) |
| **2. All other names you have used in the last 8 years** <br> Include your married or maiden names and any assumed, trade names and *doing business as* names. <br> Do NOT list the name of any separate legal entity such as a corporation, partnership, or LLC that is not filing this petition. | First name <br> Middle name <br> Last name <br> First name <br> Middle name <br> Last name <br> Business name (if applicable) <br> Business name (if applicable) | First name <br> Middle name <br> Last name <br> First name <br> Middle name <br> Last name <br> Business name (if applicable) <br> Business name (if applicable) |
| **3. Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN)** | xxx – xx – 4 1 6 2 <br> OR <br> 9xx – xx – ____ ____ ____ ____ | xxx – xx – ____ ____ ____ ____ <br> OR <br> 9xx – xx – ____ ____ ____ ____ |

Debtor 1 _____  Case number (*if known*)_____

First Name      Middle Name      Last Name

|                                                                 | About Debtor 1:                                                                                                                                                                                                                                                          | About Debtor 2 (Spouse Only in a Joint Case):                                                                                                                                                                                                          |
|-----------------------------------------------------------------|------------------------------------------------------------------------|----------------------------------------------------------------|

**4. Your Employer Identification Number (EIN), if any.**

About Debtor 1:

EIN __ __ – __ __ __ __ __ __ __

EIN __ __ – __ __ __ __ __ __ __

About Debtor 2 (Spouse Only in a Joint Case):

EIN __ __ – __ __ __ __ __ __ __

EIN __ __ – __ __ __ __ __ __ __

**5. Where you live**

602 Viento De Avila
Number      Street

Tampa                          FL      33613
City                          State      ZIP Code

Hillsborough
County

If your mailing address is different from the one above, fill it in here. Note that the court will send any notices to you at this mailing address.

Number      Street

P.O. Box

City                          State      ZIP Code

If Debtor 2 lives at a different address:

Number      Street

City                          State      ZIP Code

County

If Debtor 2's mailing address is different from yours, fill it in here. Note that the court will send any notices to this mailing address.

Number      Street

P.O. Box

City                          State      ZIP Code

**6. Why you are choosing *this district* to file for bankruptcy**

Check one:

☑ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason. Explain. (See 28 U.S.C. § 1408.)

Check one:

☐ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason. Explain. (See 28 U.S.C. § 1408.)

Debtor 1 _____   Case number (if known)_____
First Name        Middle Name        Last Name

## Part 2:   Tell the Court About Your Bankruptcy Case

**7. The chapter of the Bankruptcy Code you are choosing to file under**

*Check one.* (For a brief description of each, see *Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy* (Form 2010)). Also, go to the top of page 1 and check the appropriate box.

☑ Chapter 7

❑ Chapter 11

❑ Chapter 12

❑ Chapter 13

**8. How you will pay the fee**

☑ **I will pay the entire fee when I file my petition.** Please check with the clerk's office in your local court for more details about how you may pay. Typically, if you are paying the fee yourself, you may pay with cash, cashier's check, or money order. If your attorney is submitting your payment on your behalf, your attorney may pay with a credit card or check with a pre-printed address.

❑ **I need to pay the fee in installments.** If you choose this option, sign and attach the *Application for Individuals to Pay The Filing Fee in Installments* (Official Form 103A).

❑ **I request that my fee be waived** (You may request this option only if you are filing for Chapter 7. By law, a judge may, but is not required to, waive your fee, and may do so only if your income is less than 150% of the official poverty line that applies to your family size and you are unable to pay the fee in installments). If you choose this option, you must fill out the *Application to Have the Chapter 7 Filing Fee Waived* (Official Form 103B) and file it with your petition.

**9. Have you filed for bankruptcy within the last 8 years?**

☑ No

❑ Yes.  District _____ When _____ Case number _____
                                              MM / DD / YYYY

          District _____ When _____ Case number _____
                                              MM / DD / YYYY

          District _____ When _____ Case number _____
                                              MM / DD / YYYY

**10. Are any bankruptcy cases pending or being filed by a spouse who is not filing this case with you, or by a business partner, or by an affiliate?**

☑ No

❑ Yes.  Debtor _____ Relationship to you _____

          District _____ When _____ Case number, if known_____
                                              MM / DD / YYYY

          Debtor _____ Relationship to you _____

          District _____ When _____ Case number, if known_____
                                              MM / DD / YYYY

**11. Do you rent your residence?**

☑ No.  Go to line 12.
❑ Yes.  Has your landlord obtained an eviction judgment against you?

          ❑ No. Go to line 12.

          ❑ Yes. Fill out *Initial Statement About an Eviction Judgment Against You* (Form 101A) and file it as part of this bankruptcy petition.

Debtor 1 _____     Case number (if known)_____
                First Name      Middle Name         Last Name

## Part 3:    Report About Any Businesses You Own as a Sole Proprietor

**12. Are you a sole proprietor of any full- or part-time business?**

A sole proprietorship is a business you operate as an individual, and is not a separate legal entity such as a corporation, partnership, or LLC.

If you have more than one sole proprietorship, use a separate sheet and attach it to this petition.

☑ No. Go to Part 4.

☐ Yes. Name and location of business

_____
Name of business, if any

_____
Number        Street

_____

_____
City                                              State        ZIP Code

Check the appropriate box to describe your business:

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☑ None of the above

**13. Are you filing under Chapter 11 of the Bankruptcy Code, and are you a *small business debtor*?**

For a definition of *small business debtor*, see 11 U.S.C. § 101(51D).

*If you are filing under Chapter 11, the court must know whether you are a small business debtor so that it can set appropriate deadlines.* If you indicate that you are a small business debtor, you must attach your most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☑ No. I am not filing under Chapter 11.

☐ No. I am filing under Chapter 11, but I am NOT a small business debtor according to the definition in the Bankruptcy Code.

☐ Yes. I am filing under Chapter 11, I am a small business debtor according to the definition in the Bankruptcy Code, and I do not choose to proceed under Subchapter V of Chapter 11.

☐ Yes. I am filing under Chapter 11, I am a small business debtor according to the definition in the Bankruptcy Code, and I choose to proceed under Subchapter V of Chapter 11.

Debtor 1 _____     Case number (if known)_____
First Name        Middle Name        Last Name

| Part 4: | Report if You Own or Have Any Hazardous Property or Any Property That Needs Immediate Attention |

14. **Do you own or have any property that poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety? Or do you own any property that needs immediate attention?**

☑ No

☐ Yes.  What is the hazard?     _____

_____

*For example, do you own perishable goods, or livestock that must be fed, or a building that needs urgent repairs?*

If immediate attention is needed, why is it needed?_____

_____

Where is the property?  _____
                        Number    Street

_____

City _____    State    ZIP Code

Debtor 1 _____     Case number (if known)_____
            First Name      Middle Name      Last Name

## Part 5:   Explain Your Efforts to Receive a Briefing About Credit Counseling

15. **Tell the court whether you have received a briefing about credit counseling.**

The law requires that you receive a briefing about credit counseling before you file for bankruptcy. You must truthfully check one of the following choices. If you cannot do so, you are not eligible to file.

If you file anyway, the court can dismiss your case, you will lose whatever filing fee you paid, and your creditors can begin collection activities again.

**About Debtor 1:**

*You must check one:*

❑ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

❑ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

❑ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.

If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

❑ **I am not required to receive a briefing about credit counseling because of:**

❑ **Incapacity.**  I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

❑ **Disability.**  My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

❑ **Active duty.** I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court.

**About Debtor 2 (Spouse Only in a Joint Case):**

*You must check one:*

❑ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

❑ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

❑ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.

If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

❑ **I am not required to receive a briefing about credit counseling because of:**

❑ **Incapacity.**  I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

❑ **Disability.**  My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

❑ **Active duty.** I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court.

Debtor 1 _____     Case number (if known)_____
         First Name      Middle Name      Last Name

---

### Part 6:  Answer These Questions for Reporting Purposes

**16. What kind of debts do you have?**

**16a. Are your debts primarily consumer debts?** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

☑ No. Go to line 16b.
☐ Yes. Go to line 17.

**16b. Are your debts primarily business debts?** *Business debts* are debts that you incurred to obtain money for a business or investment or through the operation of the business or investment.

☐ No. Go to line 16c.
☑ Yes. Go to line 17.

16c. State the type of debts you owe that are not consumer debts or business debts.

_____

---

**17. Are you filing under Chapter 7?**

**Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available for distribution to unsecured creditors?**

☐ No. I am not filing under Chapter 7. Go to line 18.

☑ Yes. I am filing under Chapter 7. Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available to distribute to unsecured creditors?

☑ No
☐ Yes

---

**18. How many creditors do you estimate that you owe?**

☑ 1-49
☐ 50-99
☐ 100-199
☐ 200-999

☐ 1,000-5,000
☐ 5,001-10,000
☐ 10,001-25,000

☐ 25,001-50,000
☐ 50,001-100,000
☐ More than 100,000

---

**19. How much do you estimate your assets to be worth?**

☑ $0-$50,000
☐ $50,001-$100,000
☐ $100,001-$500,000
☐ $500,001-$1 million

☐ $1,000,001-$10 million
☐ $10,000,001-$50 million
☐ $50,000,001-$100 million
☐ $100,000,001-$500 million

☐ $500,000,001-$1 billion
☐ $1,000,000,001-$10 billion
☐ $10,000,000,001-$50 billion
☐ More than $50 billion

---

**20. How much do you estimate your liabilities to be?**

☐ $0-$50,000
☐ $50,001-$100,000
☐ $100,001-$500,000
☐ $500,001-$1 million

☑ $1,000,001-$10 million
☐ $10,000,001-$50 million
☐ $50,000,001-$100 million
☐ $100,000,001-$500 million

☐ $500,000,001-$1 billion
☐ $1,000,000,001-$10 billion
☐ $10,000,000,001-$50 billion
☐ More than $50 billion

---

### Part 7:  Sign Below

**For you**

I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct.

If I have chosen to file under Chapter 7, I am aware that I may proceed, if eligible, under Chapter 7, 11,12, or 13 of title 11, United States Code. I understand the relief available under each chapter, and I choose to proceed under Chapter 7.

If no attorney represents me and I did not pay or agree to pay someone who is not an attorney to help me fill out this document, I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I understand making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

X _____         X _____
Signature of Debtor 1                        Signature of Debtor 2

Executed on  04/13/2026                       Executed on _____
            MM  /  DD  / YYYY                                MM / DD / YYYY

---

Official Form 101             **Voluntary Petition for Individuals Filing for Bankruptcy**             page 7

Debtor 1 _____    Case number (if known)_____
First Name        Middle Name        Last Name

**For your attorney, if you are represented by one**

**If you are not represented by an attorney, you do not need to file this page.**

I, the attorney for the debtor(s) named in this petition, declare that I have informed the debtor(s) about eligibility to proceed under Chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each chapter for which the person is eligible. I also certify that I have delivered to the debtor(s) the notice required by 11 U.S.C. § 342(b) and, in a case in which § 707(b)(4)(D) applies, certify that I have no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect.

**✗** _____    Date _____

Signature of Attorney for Debtor                                            MM   /   DD  / YYYY


_____
Printed name

_____
Firm name

_____
Number    Street

_____

_____
City                                              State        ZIP Code


Contact phone _____    Email address _____


_____
Bar number                                        State

Debtor 1 _____     Case number *(if known)*_____
First Name     Middle Name     Last Name

**For you if you are filing this bankruptcy without an attorney**

**If you are represented by an attorney, you do not need to file this page.**

The law allows you, as an individual, to represent yourself in bankruptcy court, but **you should understand that many people find it extremely difficult to represent themselves successfully. Because bankruptcy has long-term financial and legal consequences, you are strongly urged to hire a qualified attorney.**

To be successful, you must correctly file and handle your bankruptcy case. The rules are very technical, and a mistake or inaction may affect your rights. For example, your case may be dismissed because you did not file a required document, pay a fee on time, attend a meeting or hearing, or cooperate with the court, case trustee, U.S. trustee, bankruptcy administrator, or audit firm if your case is selected for audit. If that happens, you could lose your right to file another case, or you may lose protections, including the benefit of the automatic stay.

You must list all your property and debts in the schedules that you are required to file with the court. Even if you plan to pay a particular debt outside of your bankruptcy, you must list that debt in your schedules. If you do not list a debt, the debt may not be discharged. If you do not list property or properly claim it as exempt, you may not be able to keep the property. The judge can also deny you a discharge of all your debts if you do something dishonest in your bankruptcy case, such as destroying or hiding property, falsifying records, or lying. Individual bankruptcy cases are randomly audited to determine if debtors have been accurate, truthful, and complete. **Bankruptcy fraud is a serious crime; you could be fined and imprisoned.**

If you decide to file without an attorney, the court expects you to follow the rules as if you had hired an attorney. The court will not treat you differently because you are filing for yourself. To be successful, you must be familiar with the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the local rules of the court in which your case is filed. You must also be familiar with any state exemption laws that apply.

Are you aware that filing for bankruptcy is a serious action with long-term financial and legal consequences?

☐ No
☑ Yes

Are you aware that bankruptcy fraud is a serious crime and that if your bankruptcy forms are inaccurate or incomplete, you could be fined or imprisoned?

☐ No
☑ Yes

Did you pay or agree to pay someone who is not an attorney to help you fill out your bankruptcy forms?
☑ No
☐ Yes. Name of Person_____.
Attach *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

By signing here, I acknowledge that I understand the risks involved in filing without an attorney. I have read and understood this notice, and I am aware that filing a bankruptcy case without an attorney may cause me to lose my rights or property if I do not properly handle the case.

✗ _____     ✗ _____
Signature of Debtor 1                             Signature of Debtor 2

Date    04/13/2026_____     Date    _____
       MM / DD / YYYY                                      MM / DD / YYYY

Contact phone   (917) 449-7582_____     Contact phone _____

Cell phone   (917) 449-7582_____     Cell phone _____

Email address   rsuper@allcaremgt.com_____     Email address _____

**EXHIBIT**

**G**

**Robert Super**
602 Viento De Avila
Tampa, FL 33613
(917) 449-7582
rsuper@allcaremgt.com

FILED TPA INTAKE USBC
30 APR 2026 PM 12:12

April 17, 2026

*Motion to dissmiss voluntarilary*

US Bankruptcy Court
Middle District of Florida
Tampa Federal Court House
801 N Florida Ave
Tampa, FL 33602

Re: Index/case # 8:26-bk-03006-CPM

To whom it may concern;

Please be advised the above captioned petition is being withdrawn.

Thank you in advance for your prompt attention with this matter.

Additionally please find my payment of $313.00 for the initial filing.

Cordially

Robert Super

**EXHIBIT H**

FILED TPA INTAKE USBC
19 MAY 2026 AM11:40

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

_____ District of _____

Case number (*If known*): _____

Chapter you are filing under:
- ☐ Chapter 7
- ☐ Chapter 11
- ☐ Chapter 12
- ☑ Chapter 13

☐ Check if this is an amended filing

Official Form 101

# Voluntary Petition for Individuals Filing for Bankruptcy    06/24

The bankruptcy forms use *you* and *Debtor 1* to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use *you* to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be *yes* if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as *Debtor 1* and the other as *Debtor 2*. The same person must be *Debtor 1* in all of the forms.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

N|F

## Part 1:   Identify Yourself

| | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|
| **1. Your full name**<br><br>Write the name that is on your government-issued picture identification (for example, your driver's license or passport).<br><br>Bring your picture identification to your meeting with the trustee. | Robert<br>First name<br>Scott<br>Middle name<br>Super<br>Last name<br><br>Suffix (Sr., Jr., II, III) | First name<br><br>Middle name<br><br>Last name<br><br>Suffix (Sr., Jr., II, III) |
| **2. All other names you have used in the last 8 years**<br><br>Include your married or maiden names and any assumed, trade names and *doing business as* names.<br><br>Do NOT list the name of any separate legal entity such as a corporation, partnership, or LLC that is not filing this petition. | First name<br><br>Middle name<br><br>Last name<br><br>First name<br><br>Middle name<br><br>Last name<br><br>Business name (if applicable)<br><br>Business name (if applicable) | First name<br><br>Middle name<br><br>Last name<br><br>First name<br><br>Middle name<br><br>Last name<br><br>Business name (if applicable)<br><br>Business name (if applicable) |
| **3. Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN)** | xxx – xx – 4 1 6 2<br>OR<br>9 xx – xx – ___ ___ ___ ___ | xxx – xx – ___ ___ ___ ___<br>OR<br>9 xx – xx – ___ ___ ___ ___ |

Debtor 1   **Robert**      **Super**      Case number *(if known)*_____
         First Name    Middle Name    Last Name

| | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|
| **4. Your Employer Identification Number (EIN), if any.** | EIN — — — — — — — — <br><br> EIN — — — — — — — — | EIN — — — — — — — — <br><br> EIN — — — — — — — — |

**5. Where you live**

602 Viento De Avila
_____
Number      Street

_____

Tampa                    FL    33613
_____
City               State   ZIP Code

Hillsborough
_____
County

**If your mailing address is different from the one above, fill it in here.** Note that the court will send any notices to you at this mailing address.

_____
Number      Street

_____
P.O. Box

_____
City               State   ZIP Code

**If Debtor 2 lives at a different address:**

_____
Number      Street

_____

_____
City               State   ZIP Code

_____
County

**If Debtor 2's mailing address is different from yours, fill it in here.** Note that the court will send any notices to this mailing address.

_____
Number      Street

_____
P.O. Box

_____
City               State   ZIP Code

**6. Why you are choosing *this district* to file for bankruptcy**

*Check one:*

☑ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason. Explain. (See 28 U.S.C. § 1408.)

_____
_____
_____
_____

*Check one:*

☐ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason. Explain. (See 28 U.S.C. § 1408.)

_____
_____
_____
_____

Debtor 1    **Robert**                **Super**
     First Name    Middle Name    Last Name        Case number *(if known)*_____

---

### Part 2:   Tell the Court About Your Bankruptcy Case

**7. The chapter of the Bankruptcy Code you are choosing to file under**

*Check one.* (For a brief description of each, see *Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy* (Form 2010)). Also, go to the top of page 1 and check the appropriate box.

❑ Chapter 7

❑ Chapter 11

❑ Chapter 12

☑ Chapter 13

---

**8. How you will pay the fee**

☑ **I will pay the entire fee when I file my petition.** Please check with the clerk's office in your local court for more details about how you may pay. Typically, if you are paying the fee yourself, you may pay with cash, cashier's check, or money order. If your attorney is submitting your payment on your behalf, your attorney may pay with a credit card or check with a pre-printed address.

❑ **I need to pay the fee in installments.** If you choose this option, sign and attach the *Application for Individuals to Pay The Filing Fee in Installments* (Official Form 103A).

❑ **I request that my fee be waived** (You may request this option only if you are filing for Chapter 7. By law, a judge may, but is not required to, waive your fee, and may do so only if your income is less than 150% of the official poverty line that applies to your family size and you are unable to pay the fee in installments). If you choose this option, you must fill out the *Application to Have the Chapter 7 Filing Fee Waived* (Official Form 103B) and file it with your petition.

---

**9. Have you filed for bankruptcy within the last 8 years?**

☑ No

❑ Yes.   District _____ When _____ Case number _____
                                   MM / DD / YYYY

            District _____ When _____ Case number _____
                                     MM / DD / YYYY

            District _____ When _____ Case number _____
                                     MM / DD / YYYY

---

**10. Are any bankruptcy cases pending or being filed by a spouse who is not filing this case with you, or by a business partner, or by an affiliate?**

☑ No

❑ Yes.   Debtor _____ Relationship to you _____

           District _____ When _____ Case number, if known_____
                                    MM / DD / YYYY

            Debtor _____ Relationship to you _____

           District _____ When _____ Case number, if known_____
                                      MM / DD / YYYY

---

**11. Do you rent your residence?**

☑ No.   Go to line 12.

❑ Yes.   Has your landlord obtained an eviction judgment against you?

       ❑ No. Go to line 12.

       ❑ Yes. Fill out *Initial Statement About an Eviction Judgment Against You* (Form 101A) and file it as part of this bankruptcy petition.

---

Debtor 1    __Robert_____    __Super_____    Case number (if known)_____
            First Name    Middle Name        Last Name

---

## Part 3:    Report About Any Businesses You Own as a Sole Proprietor

**12. Are you a sole proprietor of any full- or part-time business?**

A sole proprietorship is a business you operate as an individual, and is not a separate legal entity such as a corporation, partnership, or LLC.

If you have more than one sole proprietorship, use a separate sheet and attach it to this petition.

☑ No. Go to Part 4.

☐ Yes. Name and location of business

_____
Name of business, if any

_____
Number        Street

_____

_____
City                                State      ZIP Code

*Check the appropriate box to describe your business:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☑ None of the above

**13. Are you filing under Chapter 11 of the Bankruptcy Code, and are you a *small business debtor*?**

For a definition of *small business debtor*, see 11 U.S.C. § 101(51D).

*If you are filing under Chapter 11, the court must know whether you are a small business debtor so that it can set appropriate deadlines. If you indicate that you are a small business debtor, you must attach your most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).*

☑ No.  I am not filing under Chapter 11.

☐ No.  I am filing under Chapter 11, but I am NOT a small business debtor according to the definition in the Bankruptcy Code.

☐ Yes. I am filing under Chapter 11, I am a small business debtor according to the definition in the Bankruptcy Code, and I do not choose to proceed under Subchapter V of Chapter 11.

☐ Yes. I am filing under Chapter 11, I am a small business debtor according to the definition in the Bankruptcy Code, and I choose to proceed under Subchapter V of Chapter 11.

---

Debtor 1    <u>Robert</u>        <u>Super</u>        Case number *(if known)*_____
         <sub>First Name</sub>    <sub>Middle Name</sub>      <sub>Last Name</sub>

### Part 4:   Report if You Own or Have Any Hazardous Property or Any Property That Needs Immediate Attention

14. **Do you own or have any property that poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety? Or do you own any property that needs immediate attention?**

    *For example, do you own perishable goods, or livestock that must be fed, or a building that needs urgent repairs?*

    ☑ No

    ☐ Yes.   What is the hazard? _____

    _____

    If immediate attention is needed, why is it needed? _____

    _____

    Where is the property? _____
                             Number      Street

    _____
    City                   State    ZIP Code

Debtor 1    **Robert**                    **Super**                              Case number *(if known)*_____
First Name    Middle Name    Last Name

| Part 5: | Explain Your Efforts to Receive a Briefing About Credit Counseling |
|---|---|

**15. Tell the court whether you have received a briefing about credit counseling.**

The law requires that you receive a briefing about credit counseling before you file for bankruptcy. You must truthfully check one of the following choices. If you cannot do so, you are not eligible to file.

If you file anyway, the court can dismiss your case, you will lose whatever filing fee you paid, and your creditors can begin collection activities again.

**About Debtor 1:**

*You must check one:*

❑ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**
Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

❑ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**
Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

❑ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.
If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.
Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

❑ **I am not required to receive a briefing about credit counseling because of:**

❑ **Incapacity.** I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

❑ **Disability.** My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

❑ **Active duty.** I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court.

**About Debtor 2 (Spouse Only in a Joint Case):**

*You must check one:*

❑ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**
Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

❑ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**
Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

❑ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.
If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.
Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

❑ **I am not required to receive a briefing about credit counseling because of:**

❑ **Incapacity.** I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

❑ **Disability.** My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

❑ **Active duty.** I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court.

Debtor 1    __Robert__      __Super__        Case number (if known)_____
       First Name    Middle Name    Last Name

---

## Part 6:   Answer These Questions for Reporting Purposes

**16. What kind of debts do you have?**

**16a. Are your debts primarily consumer debts?** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

☑ No. Go to line 16b.
☐ Yes. Go to line 17.

**16b. Are your debts primarily business debts?** *Business debts* are debts that you incurred to obtain money for a business or investment or through the operation of the business or investment.

☐ No. Go to line 16c.
☑ Yes. Go to line 17.

16c. State the type of debts you owe that are not consumer debts or business debts.

---

**17. Are you filing under Chapter 7?**

**Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available for distribution to unsecured creditors?**

☐ No. I am not filing under Chapter 7. Go to line 18.

☑ Yes. I am filing under Chapter 7. Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available to distribute to unsecured creditors?

     ☑ No

     ☐ Yes

---

**18. How many creditors do you estimate that you owe?**

| | | |
|---|---|---|
| ☑ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5,001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| ☐ 200-999 | | |

---

**19. How much do you estimate your assets to be worth?**

| | | |
|---|---|---|
| ☑ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

---

**20. How much do you estimate your liabilities to be?**

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☑ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

## Part 7:   Sign Below

**For you**

I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct.

If I have chosen to file under Chapter 7, I am aware that I may proceed, if eligible, under Chapter 7, 11,12, or 13 of title 11, United States Code. I understand the relief available under each chapter, and I choose to proceed under Chapter 7.

If no attorney represents me and I did not pay or agree to pay someone who is not an attorney to help me fill out this document, I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I understand making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**✗** _____      **✗** _____
Signature of Debtor 1             Signature of Debtor 2

Executed on __05/19/2026__          Executed on _____
        MM / DD / YYYY                 MM / DD / YYYY

---

Debtor 1    <u>Robert</u>      <u>Super</u>          Case number *(if known)*_____

First Name      Middle Name      Last Name

---

**For your attorney, if you are represented by one**

**If you are not represented by an attorney, you do not need to file this page.**

I, the attorney for the debtor(s) named in this petition, declare that I have informed the debtor(s) about eligibility to proceed under Chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each chapter for which the person is eligible. I also certify that I have delivered to the debtor(s) the notice required by 11 U.S.C. § 342(b) and, in a case in which § 707(b)(4)(D) applies, certify that I have no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect.

**✗** _____    Date _____
     Signature of Attorney for Debtor                 MM / DD / YYYY

_____
Printed name

_____
Firm name

_____
Number   Street

_____

_____
City                      State      ZIP Code

Contact phone _____      Email address _____

_____
Bar number                      State

---

Debtor 1   __Robert_____   ____Super_____   Case number (if known)_____
          First Name     Middle Name      Last Name

**For you if you are filing this bankruptcy without an attorney**

**If you are represented by an attorney, you do not need to file this page.**

The law allows you, as an individual, to represent yourself in bankruptcy court, but **you should understand that many people find it extremely difficult to represent themselves successfully. Because bankruptcy has long-term financial and legal consequences, you are strongly urged to hire a qualified attorney.**

To be successful, you must correctly file and handle your bankruptcy case. The rules are very technical, and a mistake or inaction may affect your rights. For example, your case may be dismissed because you did not file a required document, pay a fee on time, attend a meeting or hearing, or cooperate with the court, case trustee, U.S. trustee, bankruptcy administrator, or audit firm if your case is selected for audit. If that happens, you could lose your right to file another case, or you may lose protections, including the benefit of the automatic stay.

You must list all your property and debts in the schedules that you are required to file with the court. Even if you plan to pay a particular debt outside of your bankruptcy, you must list that debt in your schedules. If you do not list a debt, the debt may not be discharged. If you do not list property or properly claim it as exempt, you may not be able to keep the property. The judge can also deny you a discharge of all your debts if you do something dishonest in your bankruptcy case, such as destroying or hiding property, falsifying records, or lying. Individual bankruptcy cases are randomly audited to determine if debtors have been accurate, truthful, and complete. **Bankruptcy fraud is a serious crime; you could be fined and imprisoned.**

If you decide to file without an attorney, the court expects you to follow the rules as if you had hired an attorney. The court will not treat you differently because you are filing for yourself. To be successful, you must be familiar with the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the local rules of the court in which your case is filed. You must also be familiar with any state exemption laws that apply.

Are you aware that filing for bankruptcy is a serious action with long-term financial and legal consequences?

☐ No
☑ Yes

Are you aware that bankruptcy fraud is a serious crime and that if your bankruptcy forms are inaccurate or incomplete, you could be fined or imprisoned?

☐ No
☑ Yes

Did you pay or agree to pay someone who is not an attorney to help you fill out your bankruptcy forms?
☑ No
☐ Yes. Name of Person_____.
        Attach *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

By signing here, I acknowledge that I understand the risks involved in filing without an attorney. I have read and understood this notice, and I am aware that filing a bankruptcy case without an attorney may cause me to lose my rights or property if I do not properly handle the case.

**X** _____          **X** _____
Signature of Debtor 1                              Signature of Debtor 2

Date    __05/19/2026__                             Date    _____
        MM / DD  / YYYY                                    MM /  DD / YYYY

Contact phone _(917) 449-7582_____               Contact phone _____

Cell phone    _(917) 449-7582_____               Cell phone    _____

Email address rsuper@allcaremgt.com               Email address _____

EXHIBIT

I

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

GENESIS ALTERNATIVE FINANCE IV LLC,      Case No. 24-010404-CB
and GENESIS ALTERNATIVE FINANCE V LLC,      Hon. Annette J. Berry

    Plaintiffs,

v.

LINT CHIROPRACTIC P.C., DIAGNOSTIC
CHIROPRACTIC MI, P.C., and SUPPLIES
PLUS MI, LLC., ROBERT SUPER AND
RICHARD GELLER,

    Defendants.

| TAFT STETTINIUS & HOLLISTER LLP | LAW OFFICES OF GREGORY ROHL |
|---|---|
| Michael Leo Pomeranz (P84908) | Gregory J. Rohl (P39185) |
| Kenneth I. Nelson (P87217) | Attorneys for Defendants |
| Attorneys for Plaintiffs | 4051 Haggerty Rd. |
| 27777 Franklin Rd., Ste. 2500 | West Bloomfield, MI 48323 |
| Southfield, MI 48034 | (248) 380-9404 |
| (248) 351-3000 | greg@rohllaw.com |
| mpomeranz@taftlaw.com | |
| knelson@taftlaw.com | |

**[Proposed] FINAL PRE-TRIAL ORDER**

Under the Court's Joint Final Pre-Trial Order dated October 28, 2025, the parties were required to submit a Joint Final Pre-Trial Order for trial previously scheduled on February 10, 2026. Defendants' counsel was supposed to provide Plaintiffs' counsel with information concerning their defenses by January 2, 2026. However, notwithstanding a reminder from Plaintiffs' counsel, Defendants' counsel did not provide that information at all. Accordingly, on January 16, 2026, this Court entered a Pre-Trial Order that was filed on Plaintiff's behalf only.

Trial in this matter has since been adjourned to April 14, 2026. Pursuant to the Court's February 12, 2026, Joint Final Pre-Trial Order, the parties were required to submit another Joint Final Pre-Trial Order. Defendants' counsel was again required to provide Plaintiff's counsel with

1

Document received by the MI Wayne 3rd Circuit Court.

information concerning their defenses by March 6, 2026. However, Defendants' counsel has not provided Plaintiffs' counsel with any information. Accordingly, Plaintiffs (through counsel) submit this proposed final pre-trial order on their own behalf only.

1) **PLAINTIFFS' CLAIMS: A concise statement of Plaintiffs' claims, including legal theories.**

As judgment has been entered finding that Defendants Lint Chirpractic, P.C., Diagnostic Chiropractic MI, P.C., Supplies Plus MI, LLC and Robert Super are all liable for breach of contract (Counts I and IX) and common-law and statutory conversion (Counts III and IV), in an amount to be determined through additional briefing, a trial is only necessary to determine if Defendant Richard Geller should also be held to be personally liable for the damages sought and the amount of attorneys' fees Plaintiffs may recover.

On October 24, 2025, Plaintiffs filed a Motion for Summary Disposition for each of the claims against Defendants. The Court granted Plaintiffs' Motion in part, finding Defendants liable for breach of contract (Counts I and IX), and common-law and statutory conversion (Counts III and IV) while denying summary disposition on the remainder of its claims. The Court also found that Defendant Robert Super should be held personally liable for the damages sought but did not find Richard Geller to be personally liable. Additionally, the Court ordered the parties to submit additional briefing on damages by April 8, 2026..

- Piercing the Corporate Veil
  Defendants Robert Super and Richard Geller have abused the corporate form and used funds advanced to the Defendant Entities for their own benefit. Robert Super and Richard Geller had complete control over the Defendant Entities which did not follow any corporate formalities. Further, Robert Super moved funds that were advanced to the Defendant Entities to various other entities that Plaintiffs did not have a contractual relationship with. Some of these funds were provided to Robert Super personally. Some were provided to Richard Geller personally. Because of their abuse of the corporate form, this pierced the corporate veil and found Robert Super personally liable for the damages sought. However, a final determination as to Richard Geller's personal liability has not been made.

- Count VII – Indemnification and Attorney Fees (Underlying Agreements):
  Defendants are liable for Plaintiffs' attorneys' fees pursuant to the Underlying Agreements. To date, Plaintiffs have incurred at least $241,517.57 in attorneys' fees on this matter. Attorneys' fees continue to accrue.

2) **DEFENDANTS' DEFENSES/CLAIMS: A concise statement of Defendants' defenses and counterclaims, including legal theories.**

Pursuant to this Court's Joint Final Pre-Trial Order dated February 12, 2026, Defendants' counsel was required to provide Plaintiffs' counsel with information for Defendants' defenses by March 6, 2026. However, Defendants' counsel has failed to provide the requisite information. Defendants' counsel also failed to provide Plaintiffs' counsel with

2

Document received by the MI Wayne 3rd Circuit Court.

information concerning its defenses for the Joint Final Pre-Trial Order that this Court entered on January 16, 2026.

3)   <u>**STIPULATION OR ADMISSION OF FACTS:** **A recitation of any facts or other matters to which the parties have stipulated or admitted. The parties shall state, in separately numbered paragraphs, all uncontested facts.**</u>

The following facts are uncontested by Defendants and based on the following facts, this Court found judgment in Plaintiffs' favor on the following claims: (a) breach of contract (Counts I and IX), (b) and common-law and statutory conversion (Counts III and IV). The Court also found Defendant Robert Super personally liable for damages on these claims.

(a)   Plaintiffs provided Defendant Entities funding under certain agreements: (1) No-Fault Auto Advance Security Agreement between Genesis and Lint, dated May 18, 2021 and September 14, 2021; (2) No-Fault Auto Advance Security Agreement between Genesis and SPM, dated December 9, 2021; and (3) No-Fault Auto Advance Security Agreement between Genesis and DCM, dated December 9, 2021 (hereinafter the "Underlying Agreements").

(b)   The Underlying Agreements document the financing arrangements between Plaintiffs and Defendant Entities.

(c)   Under the Underlying Agreements, Plaintiffs provided Defendant Entities with an advance of capital and, in exchange for the capital advance, Defendant Entities assigned to Plaintiffs property rights in certain medical receivables.

(d)   In particular, Defendant Entities assigned to Plaintiffs certain proceeds derived from the collection by Defendant Entities of specific accounts corresponding to medical bills incurred by patients of Defendants, and payable by insurance companies under Michigan's No-Fault Statute.

(e)   The Underlying Agreements contained account addenda specifying and identifying each collection account by patient name, date of service, and charges billed.

(f)   Defendant Entities provided Plaintiffs with a first priority security interest on specific receivables which were collected on accounts identified in certain addenda, and UCC-1s have been filed by Plaintiffs to reflect those security interests.

(g)   Defendant Entities executed the following Promissory Notes in favor of Plaintiffs: (1) Lint Promissory Note dated September 15, 2021; (2) Lint Promissory Note dated October 18, 2021; (3) Lint Promissory Note dated December 1, 2021; (4) Lint Promissory Note dated December 16, 2021; (5) Lint Promissory Note dated January 15, 2022; (6) Lint Promissory Note dated March 18, 2022; (7) Lint Promissory Note dated May 13, 2022; (8) Lint Promissory Note dated July 15, 2022; (9) Supplies Plus Promissory Note dated December 30, 2021; (10   ) Supplies Plus Promissory Note dated March 1, 2022; (11   ) Supplies Plus Promissory Note dated May 13, 2022; (12

3

Document received by the MI Wayne 3rd Circuit Court.

) Diagnostic Promissory Note dated March 18, 2022; and (13     ) Diagnostic Promissory Note dated June 14, 2022.

(h) Defendant Entities executed a contract with Plaintiffs' hired servicer of the underlying secured assets ("Quantum"). That contract, the 2023     Agreement Regarding Servicing, explicitly indicated that the parties intended Plaintiffs to be a third-party beneficiary of it.

(i) The Agreement Regarding Servicing required Defendant Entities to deposit proceeds into a specific bank account ("Bank Account") that the secured party, *i.e.*, Plaintiffs, were entitled to collect. Withdrawals could only be made from the Bank Account with Plaintiffs or Quantum's approval.

(j) In July 2023, Plaintiffs executed an agreement with Quantum ("Genesis-Quantum Agreement").

(k) Pursuant to this Genesis-Quantum Agreement, Quantum began to work with Defendant Entities to service, administer, and collect on the accounts.

(l) Plaintiffs have an interest in the funds held in the Bank Account under the Agreement Regarding Servicing and by the admission of Defendants.

(m) Plaintiffs are secured creditors of Defendant Entities.

(n) Plaintiffs have on numerous occasions (including through Quantum or other representatives), demanded that Defendant Entities replace the funds.

(o) Defendants promised to perform monthly reconciliation statements identifying all collections received during the prior month in respect to the applicable medical receivables. However, Defendant Entities refused to comply with this obligation.

(p) Defendants transferred $777,698.23 from the Bank Account without approval. Eventually, Defendants returned $400,000 to the Bank Account but kept the remaining $377,698.23   .

(q) Defendant Entities have only paid Plaintiffs $892,893.77 under the Promissory Notes. $3,211,221.73 remains owing to Plaintiffs.

(r) The court-appointed receiver determined that Defendant Entities collected and retained at least $572,751.57 due to Plaintiffs.

(s) The court-appointed receiver determined that Defendant Entities owe Plaintiffs $1,510,403.16 excluding any interest or return based on a calculation of the amount advanced to Defendant Entities minus the amount paid back to Plaintiffs.

4)     <u>**ISSUES OF FACT:**</u> **Issues of fact remaining to be litigated.**

4

Document received by the MI Wayne 3rd Circuit Court.

Plaintiffs:
- Defendant Richard Geller's abuse of the Defendant Entities' corporate form and non-compliance with corporate formalities.
- Amount of Plaintiffs' damages (if the Court has not already made a determination as to damages following the parties' supplemental briefing on damages due on April 8, 2026.)
- Plaintiffs' attorneys' fees incurred.

Defendants: Defendants failed to provide Plaintiffs' counsel with information for Defendants' defenses by March 6, 2026 as required by this Court's Joint Final Pre-Trial Order dated February 12, 2026. Defendants' counsel also failed to provide Plaintiffs' counsel with information concerning its defenses for the Joint Final Pre-Trial Order that this Court entered on January 16, 2026.

5) **ISSUES OF LAW: Issues of law to be litigated**.

Plaintiffs:

(a) Is Richard Geller personally liable for Plaintiffs' damages?
(b) What damages can Plaintiffs establish with reasonable certainty? (If the Court has not already made a determination as to damages following the parties' supplemental briefing on damages due on April 8, 2026.)
(c) What is the amount of reasonable attorneys' fees that Defendants are liable for?

Defendants: Defendants failed to provide Plaintiffs' counsel with information for Defendants' defenses by March 6, 2026 as required by this Court's Joint Final Pre-Trial Order dated February 12, 2026. Defendants' counsel also failed to provide Plaintiffs' counsel with information concerning its defenses for the Joint Final Pre-Trial Order that this Court entered on January 16, 2026.

6) **EVIDENCE PROBLEMS LIKELY TO ARISE AT TRIAL: Evidence problems likely to arise at trial including any remaining objections to exhibits. All motions in limine of which counsel or a party without counsel should reasonably be aware of at the time of preparation of the pre-trial order shall be listed in the joint final pre-trial order.**

Defendants requested no discovery during this matter. In addition, Defendants failed to provide Plaintiffs' counsel with information for Defendants' defenses by March 6, 2026 as required by this Court's Joint Final Pre-Trial Order dated February 12, 2026. Further, this Court previously entered a Joint Final Pre-Trial Order dated January 16, 2026 where Defendants' counsel also failed to provide Plaintiffs' counsel with information concerning their defenses. Accordingly, Plaintiffs expect to take the position that Defendants may not introduce any documentary evidence at trial. Plaintiffs have also filed a Motion in Limine seeking to preclude Defendants from introducing any documentary evidence at trial and the January 16, 2026 Joint Final Pre-Trial Order entered by this Court also precludes

Document received by the MI Wayne 3rd Circuit Court.

Defendants from introducing any documentary evidence at trial.

7) **WITNESS AND EXHBIT LISTS: Each party will indicate which witnesses <u>will</u> be called in the absence of reasonable notice to opposing counsel to the contrary, and which witnesses <u>may</u> be called. Generic listing of witnesses is <u>not</u> acceptable. Failure to list witnesses may bar their production at trial. No witnesses shall be listed who have not been included on any written list submitted pursuant to prior order of the Court except for good cause shown. When listing witnesses, the parties should identify, include and list the names of all witnesses whose deposition testimony is reasonably expected to be offered as evidence. Counsel shall, to the extent possible, resolve disputes and purge extraneous and inadmissible material from the transcripts in advance of trial. Video depositions must be transcribed. When listing witnesses, the parties should identify, include and list all expert witnesses and designate whether they are testifying in person or by deposition. Each party shall number and list, with a short identifying description, each exhibit they intend to introduce at trial. Only listed exhibits will be considered admissible at trial, except for rebuttal exhibits which could not be reasonable anticipated before trial or except for good cause shown.**

 (a) **Witnesses for Plaintiffs, listed by category, as follows:**

  i) **Lay Witnesses that <u>will</u> be called:**

  ii) **Lay Witnesses that <u>may</u> be called:**

   (1) Rob Holmes
   (2) Garrett Ordower
   (3) Robert Super
   (4) Bianca Dhall
   (5) Richard Geller
   (6) Gary Smith
   (7) Charles Bullock

  iii) **Lay Deposition Witnesses:**

  iv) **List of Plaintiffs' Exhibits. Note: Exhibits are to be listed by Exhibit number with short identifying description.**

   (1) **Exhibit 1**: No-Fault Auto Advance Security Agreement between Genesis and Lint, dated May 18, 2021 and September 14, 2021. This No-Fault Auto Advance Security Agreement outlines the financial arrangement between Plaintiffs and Defendant Lint. Specifically, the agreement provides that in exchange for an advance of funds

Document received by the MI Wayne 3rd Circuit Court.

from Plaintiffs, Lint would provide Plaintiffs with a secured interest in various account receivables relating to claims under the Michigan No-Fault Act.

(2)   **Exhibit 2**: No-Fault Auto Advance Security Agreement between Genesis and Supplies Plus, dated December 9, 2021. This No-Fault Auto Advance Security Agreement outlines the financial arrangement between Plaintiffs and Defendant Supplies Plus. Specifically, the agreement provides that in exchange for an advance of funds from Plaintiffs, Supplied Plus would provide Plaintiffs with a secured interest in various account receivables relating to claims under the Michigan No-Fault Act.

(3)   **Exhibit 3:** No-Fault Auto Advance Security Agreement between Genesis and Diagnostic, dated December 9, 2021. This No-Fault Auto Advance Security Agreement outlines the financial arrangement between Plaintiffs and Defendant Diagnostic. Specifically, the agreement provides that in exchange for an advance of funds from Plaintiffs, Diagnostic would provide Plaintiffs with a secured interest in various account receivables relating to claims under the Michigan No-Fault Act.

(4)   **Exhibit 4**: Lint Promissory Note dated September 15, 2021. This promissory note is an unconditional promise by Lint to repay Plaintiffs certain advanced funds subject to a return rate agreed by the parties.

(5)   **Exhibit 5**: Lint Promissory Note dated October 18, 2021. This promissory note is an unconditional promise by Lint to repay Plaintiffs certain advanced funds subject to a return rate agreed to by the parties.

(6)   **Exhibit 6**: Lint Promissory Note dated December 1, 2021. This promissory note is an unconditional promise by Lint to repay Plaintiffs certain advanced funds subject to a return rate agreed to by the parties.

(7)   **Exhibit 7**: Lint Promissory Note dated December 16, 2021. This promissory note is an unconditional promise by Lint to repay Plaintiffs certain advanced funds subject to a return rate agreed to by the parties.

7

Document received by the MI Wayne 3rd Circuit Court.

(8)     **Exhibit 8**: Lint Promissory Note dated January 15, 2022. This promissory note is an unconditional promise by Lint to repay Plaintiffs certain advanced funds subject to a return rate agreed to by the parties.

(9)     **Exhibit 9**: Lint Promissory Note dated March 18, 2022. This promissory note is an unconditional promise by Lint to repay Plaintiffs certain advanced funds subject to a return rate agreed to by the parties.

(10)    **Exhibit 10**: Lint Promissory Note dated May 13, 2022. This promissory note is an unconditional promise by Lint to repay Plaintiffs certain advanced funds subject to a return rate agreed to by the parties.

(11)    **Exhibit 11**: Lint Promissory Note dated July 15, 2022. This promissory note is an unconditional promise by Lint to repay Plaintiffs certain advanced funds subject to a return rate agreed to by the parties.

(12)    **Exhibit 12**: Supplies Plus Promissory Note dated December 30, 2021. This promissory note is an unconditional promise by Supplies Plus to repay Plaintiffs certain advanced funds subject to a return rate agreed to by the parties.

(13)    **Exhibit 13**: Supplies Plus Promissory Note dated March 1, 2022. This promissory note is an unconditional promise by Supplies Plus to repay Plaintiffs certain advanced funds subject to a return rate agreed to by the parties.

(14)    **Exhibit 14**: Supplies Plus Promissory Note dated May 13, 2022. This promissory note is an unconditional promise by Supplies Plus to repay Plaintiffs certain advanced funds subject to a return rate agreed to by the parties.

(15)    **Exhibit 15**: Diagnostic Promissory Note dated March 18, 2022. This promissory note is an unconditional promise by Diagnostic to repay Plaintiffs certain advanced funds subject to a return rate agreed to by the parties.

Document received by the MI Wayne 3rd Circuit Court.

(16)     **Exhibit 16**: Diagnostic Promissory Note dated June 14, 2022. This promissory note is an unconditional promise by Diagnostic to repay Plaintiffs certain advanced funds subject to a return rate agreed to by the parties.

(17)     **Exhibit 17**: Order for Receivership and Other Relief (01/08/2024). The Order for Receivership and Other Relief appointed Charles D. Bullock as Receiver over the Defendants Lint, Supplies Plus, and Diagnostic.

(18)     **Exhibit 18:** Stipulated Order Approving Receiver's Report and Recommendation and Expanding Receiver's Powers Over Lint, Diagnostic, and Supplies Plus (04/18/2025).

(19)     **Exhibit 19**: Order Granting Plaintiffs' Motion to Hold Defendants in Contempt of Court and for Sanctions (04/07/2025). On April 7, 2025, this Court found Defendants Lint, Supplies Plus, and Diagnostic in contempt of court and awarded $10,000 in sanctions to Plaintiffs. To date, Plaintiffs have not received any of the sanctioned amount.

(20)     **Exhibit 20**: Defendants' Chase Bank Account Statements (2021-2025). Defendants' Chase Bank Account Statements reflect various transfers made from Plaintiffs, transfers made from Defendants Lint, Supplies Plus, and Diagnostic to other related entities, and to Defendant Dr. Super.

(21)     **Exhibit 21**: Receiver's Report and Recommendation dated March 28, 2025. The Report drafted by the Receiver, Charles D. Bullock, which provides an overview and update on Defendants Lint, Supplies Plus, and Diagnostic's financial status and their compliance with their financial arrangement with Plaintiffs.

(22)     **Exhibit 22**: Stipulated Order Approving Receiver's Report. The parties stipulated to approve the findings in the Receiver's Report.

(23)     **Exhibit 23**: Robert Super's Deposition Transcript dated June 6, 2025. Robert Super's deposition testimony regarding the parties' relationship, agreements, and his management of the Defendant Entities.

Document received by the MI Wayne 3rd Circuit Court.

(24) **Exhibit 24**: Bianca Dhall's Deposition Transcript dated June 6, 2025. Bianca Dhall's deposition testimony regarding her knowledge of the parties' relationship, agreements, and operation of the Defendant Entities.

(25) **Exhibit 25**: Lint Chiropractic, P.C. Trust Account Report from Receiver Charles Bullock.

**(b)** **Witnesses for Defendants, listed by category, as follows:** Defendants failed to provide Plaintiffs' counsel with information for Defendants' defenses and witnesses by March 6, 2026 as required by this Court's Joint Final Pre-Trial Order dated February 12, 2026. Defendants' counsel also failed to provide Plaintiffs' counsel with information concerning its defenses for the Joint Final Pre-Trial Order that this Court entered on January 16, 2026. Plaintiffs contend that Defendants therefore are not permitted to call any witnesses at trial. Defendants have not made Plaintiffs aware of any witnesses they intend to call at trial.

8) <u>**DAMAGES:**</u> **An itemized statement of damages. Plaintiffs shall specify all those claimed damages that can be calculated from objective data. To the extent possible, counsel will be requested to stipulate to those items not in dispute.**

Plaintiffs are entitled to damages in an amount no less than $3,211,221.73, exclusive of attorneys' fees and interest, resulting from Defendant Entities' breach of the Underlying Agreements, the supporting Promissory Notes, and the 2023 Agreement Regarding Servicing. Pursuant to the Court's Opinion and Order granting Plaintiff's Motion for Summary Disposition in part, the Defendant Entities and Robert Super are liable for Plaintiffs' damages. As required by the Court, the parties will submit briefing on damages no later than April 8, 2026 to determine the exact amount of Plaintiffs' damages. If damages are not determined through the parties' briefing, damages will be determined at trial along with a determination of Richard Geller's liability for such damages.

- <u>Count I and IX – Breach of Contract (2023 Agreement Regarding Servicing and Underlying Agreements)</u>:
  Pursuant to the Promissory Notes, Defendant Entities agreed to pay Plaintiffs $4,104,115.50 for the funds Plaintiffs advanced pursuant to the Underlying Agreements. To date, Defendant Entities have only paid $892,893.77. Defendant Entities owe Plaintiffs $3,211,221.73, plus accruing interests, costs and attorneys' fees.

- <u>Count III – Statutory Conversion</u>:
  Defendant Entities converted a total of $572,751.57 from Plaintiffs by wrongfully retaining collections owed to Plaintiffs pursuant to the Underlying Agreements and withdrawing funds from the Bank Account that was established for Plaintiffs' benefit. For a statutory conversion claim, Plaintiffs are also entitled to treble damages.

10

Document received by the MI Wayne 3rd Circuit Court.

Plaintiffs' damages for statutory conversion total $1,718,254.71.

- Count IV – Common Law Conversion:
  Defendant Entities converted a total of $572,751.57 from Plaintiffs by wrongfully retaining collections owed to Plaintiffs pursuant to the Underlying Agreements and withdrawing funds from the Bank Account that was established for Plaintiffs' benefit. Plaintiffs' damages for common law conversion total $572,751.57, exclusive of prejudgment interest from the date of conversion (April 18, 2024).

- Count VII – Indemnification and Attorney Fees (Underlying Agreements):
  Defendants are liable for Plaintiffs' attorneys' fees pursuant to the Underlying Agreements. To date, Plaintiffs have incurred at least $241,517.57 in attorneys' fees on this matter. Attorneys' fees continue to accrue.

**9)    ESTIMATED LENGTH OF TRIAL**

**(a)    Time for Plaintiffs' proofs.**

Less than one day.

**(b)    Time for Defendants' proofs.**

As Defendants failed to provide Plaintiffs' counsel with information for Defendants' defenses, evidence and witnesses, by March 6, 2026 as required by this Court's Joint Final Pre-Trial Order dated February 12, 2026, Defendants are not permitted to put forth any evidence. Defendants have not made Plaintiffs aware of any evidence they intend to call at trial.

**(c)    Indicate whether it is a jury or non-jury trial.**

Non-jury trial.

**(d)    If a jury trial, do you stipulate to a unanimous verdict of not less than five (5) if jurors must be excused during the course of the trial?**

Not applicable.

**10)    ARBITRATION: Please advise whether the parties will agree to binding or non-binding arbitration.**

Plaintiffs do not agree to non-binding arbitration.

**13)    SETTLEMENT: A statement that counsel, a party without counsel, or parties have met, conferred and considered the possibility of settlement, giving the most recent**

Document received by the MI Wayne 3rd Circuit Court.

**place, time and date and the current status of these negotiations as well as any plans for further negotiations.**

Plaintiffs repeatedly have offered terms of settlement. Counsel for plaintiffs have met and conferred with current as well as with previous counsel for defendants regarding the possibility of settlement. Most recently, Plaintiffs' counsel offered terms of settlement via email on December 19, 2025. Plaintiffs do not anticipate the possibility of settlement in this matter.

14) **JURY INSTRUCTIONS: Per MCR 2.516, please provide the Court with a list of all requested standard jury instructions. Written copies of standard jury instructions are not required. If any party is requesting a special jury instruction please include in the Final Pre-Trial Order a written copy of any special jury instruction and supporting citation of authority for each special jury instruction.**

Not applicable.

TAFT STETTINIUS & HOLLISTER LLP

*/s/ Michael Leo Pomeranz*
Michael Leo Pomeranz (P84908)
Kenneth I. Nelson (P87217)
Attorneys for Plaintiffs

This Order constitutes a duly entered order of this court. Failure of counsel or a party without counsel to cooperate in the preparation of, or failure to submit the joint final pretrial statement by the given due date, will result in the parties being fined $500.00 for each day the Joint Final Pre-Trial Order is late. Failure to comply strictly with all the terms of the Joint Final Pre-Trial Order may also result in refusal to let witnesses testify or to admit exhibits, dismissal of claims, striking of answers and affirmative defenses, default and entry of default judgment, or other action, including the assessment of special costs and expenses, including actual attorney fees.

Document received by the MI Wayne 3rd Circuit Court.

This Order does not resolve the last pending claim and does not close the case.


DATED: _____

                                   _____
                                   Annette J. Berry
                                   Circuit Court Judge

Document received by the MI Wayne 3rd Circuit Court.